**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| Empower Clinic Services, L.L.C., | |
|     Plaintiff, | |
| | |
| v. | Case No. 4:23-cv-4123 |
| | |
| Bio Filling Solutions Inc. f/k/a/ Bio42 | **Jury Trial Demanded** |
| Clinical Filling Solutions, Inc., Hanson | |
| Irwin Group LLC, David Teer, Lisa | |
| Hudanich, Matthew Ludowig, Marc | |
| Hanson, Jerry Irwin, and Michael Lambert | |
| | |
|     Defendants. | |

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

Plaintiff Empower Clinic Services, L.L.C., doing business as Empower Pharmacy, ("Empower Pharmacy" or "Plaintiff") hereby files this First Amended Complaint against Defendants Bio Filling Solutions Inc. (formerly Bio42 Clinical Filling Solutions Inc.) ("BFS"), Hanson Irwin Group LLC ("HIG"), David Teer, Lisa Hudanich, Matthew Ludowig, Marc Hanson, Jerry Irwin, and Michael Lambert ("Defendants"), and alleges as follows:

## I.    NATURE OF THE ACTION

1.    Plaintiff brings this action against Defendants for theft of trade secrets, breach of contract, unjust enrichment, tortious interference, breach of fiduciary duties, aiding and abetting breach of fiduciary duties, and civil conspiracy.

2.    Plaintiff seeks interim and permanent injunctive relief, including  because of Defendants' misconduct. Plaintiff seeks a temporary restraining order and a preliminary injunction to protect Empower Pharmacy's trade secrets and confidential information pursuant to its contractual rights, as well as state and federal law.

3.      Plaintiff seeks injunctive relief to (1) enjoin Defendants from establishing their business relationship using Empower Pharmacy's trade secrets, confidential information, and proprietary information in defiance of Plaintiff's former employees' express contractual obligations; and (2) prevent Defendants' further misappropriation, disclosure, or misuse of Plaintiff's trade secrets and confidential information.

4.      In light of the Agreed Preliminary Injunction Order (Dkt. 13) and Agreed Expedited Discovery Scheduling Order (Dkt. 18) with Defendants BFS, Teer, and Hudanich, if necessary, Plaintiff shall file a motion to modify its preliminary injunction (Dkt. 13) and expedited discovery (Dkt. 18) as against Defendants HIG, Hanson, Irwin, and Ludowig.

5.      As to all Defendants, the Plaintiff brings this suit to obtain actual, consequential, and punitive damages, fees, costs, a permanent injunction, as well as other relief.

## II.      PARTIES

6.      Plaintiff Empower Clinic Services, L.L.C. ("Empower Pharmacy") is a Texas limited liability company with its principal place of business in Texas. Empower Pharmacy's headquarters is located at 7601 North Sam Houston Parkway, Suite 100, Houston, Texas 77064.

7.      Defendant Bio Filling Solutions Inc. (formerly Bio42 Clinical Filling Solutions Inc.) ("BFS") is a Texas organization with its principal place of business in Texas. BFS has appeared in this case.

8.      Defendant Hanson Irwin Group LLC ("HIG") is a Texas organization with its principal place of business in Texas.  HIG has appeared in this case.

9.      Defendant David Teer is an individual residing in Houston, Texas.  Mr. Teer has appeared in this case.

10.     Defendant Lisa Hudanich is an individual residing in Pearland, Texas. Ms. Hudanich has appeared in this case.

11.     Defendant Matthew Ludowig is an individual residing in Cypress, Texas. Mr. Ludowig has appeared in this case.

12.     Defendant Marc Hanson is an individual residing in Elkhorn, Nebraska. Mr. Hanson has appeared in this case.

13.     Defendant Jerry Irwin is an individual residing in Katy, Texas. Mr. Irwin has appeared in this case.

14.     Upon information and belief, Defendant Michael Lambert is an individual residing in Harris County, Texas. He can be served at his residence at 1414 Texas St., Unit 833, Houston, Texas 77002-3684, or wherever he may be found.

### III.     JURISDICTION AND VENUE

15.     The Court has subject matter jurisdiction over the Defend Trade Secrets Act claim by virtue of a federal question under 28 U.S.C. § 1331. This Court has original subject matter jurisdiction over this action under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836(c), which expressly states that "the district courts of the United States shall have original jurisdiction of civil actions brought under [the DTSA]." The Court has subject matter jurisdiction over all other claims because the claims are part of the same case and controversy and derive from a common nucleus of operative fact.

16.     The Court has personal jurisdiction over the Defendants. Upon information and belief, Defendants Teer, Hudanich, Ludowig, Lambert, and Irwin reside in this District; Defendant BFS has its principal place of business in Texas and, on information and belief, has employees who reside in this District, including Defendants Teer, Hudanich, Lambert, and Ludowig;

Defendant HIG has its principal place of business in Texas, and, on information and belief, has at least one employee who resides in this district, Defendant Irwin. Furthermore, the Court has specific personal jurisdiction over all Defendants because Defendants: (i) have purposefully directed their activities at residents of the forum and (ii) this litigation results from alleged injuries that arise out of or relate to those activities. *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Defendants' purposefully directed activities in this forum are such that they could reasonably anticipate being haled into this Court. *See Burger King*, 471 U.S. at 474. The nexus between Defendants' connection to the forum and Empower Pharmacy's claims is such that the Court's exercise of jurisdiction over Defendants is fair and reasonable. For instance, Defendants conduct business in the State of Texas and colluded in the same civil conspiracy to accomplish a business venture through unlawful acts, including the misappropriation of Empower Pharmacy's trade secrets. Consequently, Defendants' actions were directed to Texas residents and form the basis of this litigation. Based on at least these contacts with the State of Texas, the Court has personal jurisdiction over Defendants.

17.    Venue is proper in this forum under 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the acts giving rise to Empower Pharmacy's claims occurred in Houston, Texas.

### IV.    FACTUAL BACKGROUND

**A.    Empower Pharmacy is a Leader of the Compounding Pharmacies Marketspace.**

18.    Founded in 2009, Empower Pharmacy is a Houston-based compounding pharmacy that has grown into the most advanced Pharmacy Compounding Accreditation Board (PCAB) accredited 503A compounding pharmacy in the country and a Food and Drug Administration (FDA) registered 503B outsourcing facility. 21 U.S.C. §§ 353a, 353b. The facilities comprising the Houston-based campus fill nearly 15,000 prescriptions daily for tens of thousands of clinics across the country. There are over 800 employees that facilitate Empower Pharmacy's operations.

19.     Former Empower Pharmacy employees that are pertinent to this complaint include David Teer, Lisa Hudanich, Matthew Ludowig, and Michael Lambert.

**B.     Former Empower Pharmacy employees agree to terms of employment.**

20.     Defendant Teer began his employment at Empower Pharmacy on March 21, 2022, as the Senior Director of Capital Expenditures. Defendant Teer made his employment conditional on the hiring of Defendant Hudanich, a co-worker from his previous place of employment. As a condition of Defendant Teer's employment, he executed and acknowledged receipt of a Confidentiality and Non-Compete Agreement and Empower Pharmacy's Employee Handbook. As the Senior Director of Capital Expenditures, Defendant Teer worked directly under Shaun Noorian, Chief Executive Officer. On August 8, 2022, Defendant Teer accepted the position of Senior Director of Facilities and Engineering and worked directly under Jonathan Abrarpour, Empower Pharmacy's Chief Operating Officer.

21.     Defendant Hudanich began her employment at Empower Pharmacy on June 27, 2022, as the Capital Expenditures Manager. As a condition of Defendant Hudanich's employment, she executed and acknowledged receipt of a Confidentiality and Non-Compete Agreement and Empower Pharmacy's Employee Handbook. As the Capital Expenditures Manager, Defendant Hudanich reported directly to Defendant Teer.

22.     Defendant Matthew Ludowig began his employment with Empower Pharmacy on August 31, 2020, as in-house counsel. In this role, Defendant Ludowig reported directly to Shaun Noorian, Empower Pharmacy's CEO. As a condition of Defendant Ludowig's employment, he executed an Employee Confidentiality, Nondisclosure and Non-Recruiting Agreement on or about July 31, 2020. On or about August 25, 2022, Ludowig executed the Empower Management Incentive Plan, including its Exhibit III, which was an agreement entitled "Confidentiality & Non-Compete" that contained restrictive covenants. The restrictive covenants were ancillary to an

otherwise enforceable agreement and contained reasonable limitations as to time, scope, and geographic reach. Defendant Ludowig was promoted to Senior General Counsel on February 7, 2022, and assumed the position of Vice President of Regulatory and Legislative Affairs on July 2, 2023, but he remained at all times bound by the terms of these confidentiality and non-compete agreements.

23.    Defendant Michael Lambert began his employment with Empower Pharmacy on March 31, 2021, as the Manager of Legislative and Government Affairs. Later, at the request of Defendant Ludowig, Mr. Lambert was promoted to the Director of Regulatory Affairs on December 27, 2021. As part of his responsibilities, Mr. Lambert worked directly under Defendant Ludowig.

**C.    Empower Pharmacy's Anticipated Expansion**

24.    In Spring of 2021, Empower Pharmacy initiated plans to expand into a new business opportunity based on regulatory changes it forecasted through its regular meetings and the efforts of Defendants Ludowig and Lambert (at Empower Pharmacy's direction).

25.    As part of this process, Empower Pharmacy generated confidential and proprietary material it considered and protected as trade secrets to secure new funding and investment for the expansion, which included acquisition of a new facility. Defendant Teer, as the then-Senior Director of Capital Expenditures, was tasked with spearheading the search for a suitable facility location.

26.    Between May and July of 2023, Empower Pharmacy identified two confidential, potential locations for its new business opportunity. Around July 7, 2023, Sanjay Samudre, Empower Pharmacy's Vice President of Manufacturing, identified a first potential facility ("Facility A"). Then, on July 10, 2023, Defendant Teer identified a second potential facility ("Facility B").

27.    To facilitate this new business opportunity, Empower Pharmacy also retained the services of CRB Consulting Engineers Inc. (a design, engineering, construction, and consulting group) ("CRB"), to provide user requirement specifications, risk assessments, and design-work for the new business opportunity. At a later point, CRB was directed to assess Facility B. CRB signed a Confidentiality Agreement with Empower Pharmacy on December 8, 2022. CRB was also approached by Empower Pharmacy to provide bids for the assessment of Facility A, but Empower Pharmacy ultimately decided to engage another consulting firm to assess that facility.

28.    Defendant Jerry Irwin, CRB's then-Senior Project Director, had been a close friend of Defendant Teer since Defendant Teer's work at a previous place of employment.

29.    Defendant Jerry Irwin scheduled a walk-through of Facility B for July 21, 2023. Those in attendance included Mr. Noorian (Empower Pharmacy's CEO), Mr. Abrarpour (Empower Pharmacy's COO), Cody Smith (Empower Pharmacy's Fractional CFO), Sanjay Samudre (Vice President of Manufacturing), Shawn Way (Empower Pharmacy's Director of Engineering), Defendant Teer, and Defendant Marc Hanson (CRB's then-Senior Director of Construction Operations Midwest), as well as a group of potential investors.

30.    In the process of assessing these properties, Empower Pharmacy expended significant work hours and over a million dollars with multiple investment banking entities and CRB generating or obtaining various secret and/or confidential documents, plans, and presentations belonging to Empower Pharmacy and relating to its new business opportunity, including, but not limited to the assessment of Facilities A and B.

31.    As a result of this process, and subject to protective confidentiality agreements, Defendants Teer, Hudanich, Ludowig, Lambert, Hanson, and Irwin had access to the confidential and proprietary trade secret protected information, which they illegally and clandestinely took

from Plaintiff as part of a Conspiracy with other named Defendants and began to use those materials for their own purposes in direct competition with Plaintiff.

**D.    Defendants Begin Misappropriating Empower Pharmacy's Confidential Information and Engaging in Additional Destructive and Malicious Behavior.**

32.    As early as July 7, 2023, Defendants Teer and Hudanich began misappropriating Empower Pharmacy's trade secrets and confidential information, as part of a conspiracy with Defendants Ludowig, Lambert, HIG, Hanson, and Irwin to facilitate the creation and funding of Defendant BFS.

33.    The misappropriated information included confidential information relating to Facilities A and B as well as other confidential and/or secret Empower Pharmacy information that included strategy and tactical implementation to a design-detail level that was intended for Empower Pharmacy's growth opportunities. The information was exchanged between the Defendants and also with CRB employees, Defendants Hanson and Irwin – who were secretly acting in non-CRB-affiliated capacities as founders and leadership of HIG.[1]

34.    This conspiracy coincided with multiple telephonic or videoconference meetings between the Defendants, which typically occurred on Friday mornings while a majority of the Defendants were employed by Empower and/or CRB, to include Defendant Ludowig (Empower Pharmacy's then-attorney and Vice President of Regulatory and Legislative Affairs). As a result,

---

[1] Empower Pharmacy conducted computer analysis after it was notified of a potential breach on the part of the Former Employees. That analysis revealed that, between the months of July and September 2023, Defendant Teer used his Empower Pharmacy account (dteer@empowerpharmacy.com) and his BFS account (david.teer@bio42cfs.com) to communicate with other Defendants including Defendants HIG, Hanson, and Irwin. Within that same date range, Defendant Hudanich used her Empower Pharmacy account (lhudanich@empowerpharmacy.com), her BFS account (lisa.hudanich@bio42cfs.com), and her HIG account (lisa.hudanich@hansonirwin.com) to communicate with other Defendants including Defendants HIG, Hanson, and Irwin. Between July and September, Defendants Hanson and Irwin likewise communicated with other Defendants via their HIG accounts (marc.hanson@hansonirwin.com; jerry.irwin@hansonirwin.com). As early as August 18, these meetings included Defendant Ludowig and Mr. Lambert via their personal email accounts (matthew.ludowig@yahoo.com; lambert.michael@gmail.com) and, as early as September 8, these communications also included Defendant Ludowig and Mr. Lambert at their BFS accounts (matthew.ludowig@bio42cfs.com; michael.lambert@bio42cfs.com).

Defendants HIG, BFS, and their leadership improperly gained access to trade secrets and confidential information of Empower Pharmacy, including information that allowed Defendant BFS to fast-track its business development efforts by capitalizing on the valuable misappropriated trade secrets and confidential information of Empower Pharmacy. Defendant HIG would similarly gain a pivotal client that would jump start its business and permit Defendants Hanson and Irwin to leave CRB for more lucrative positions.

35.     Over the next 4 weeks, and as a result of this conspiracy, Empower Pharmacy suffered an exodus of high-level employees. Defendant Ludowig, Vice President of Regulatory and Legislative Affairs, indicated he would resign around August 14, 2023, and formally submitted a letter of resignation on August 31, 2023, and completed his last day on September 1, 2023. Mr. Lambert resigned on August 21, and similarly completed his last day on September 1, 2023. Defendant Hudanich resigned on September 20, 2023 and gave two-days' notice, completing her last day on September 22, 2023. Defendant Teer resigned on September 21, 2023, and completed his last day on September 29, 2023, further misleading Empower Pharmacy by citing "family commitments" as a justification.

36.     On September 20, 2023, the day before he provided his notice of resignation, Defendant Teer deleted his Empower Pharmacy email inbox and a copy of the same in a failed attempt to conceal his communications. These actions were subsequently uncovered by an analysis of Defendant Teer's Empower Pharmacy computer and recovered by Empower Pharmacy's IT department.

37.     On September 22, 2023, Mr. Abrarpour unsuccessfully requested that Defendant Teer extend his last day of work and Defendant Teer provided cryptic replies, stating that "[his] team received confirmation of a substantial amount [o]f money that preclude[d him] for the

immediate future," also saying "[w]e will expedite **our** current plan to exceed expectations by 2yrs." (emphasis added).

38.    On September 26, 2023, Defendant Teer researched how to, and ultimately did, delete his printer cache. On this same date, Defendant Teer deleted a large number of Empower Pharmacy capital expenditure files from Empower Pharmacy's SharePoint.

39.    Defendant Teer also downloaded mass quantities of Empower Pharmacy's confidential and secret information to his personal external hard drives prior to his departure and without seeking or receiving consent from Empower Pharmacy. Defendant Teer utilized various hard drives in this process, including two separate SanDisk Extreme SSD's capable of holding two terabytes of data each, totaling a capacity of 4,000,000 megabytes. The documents he downloaded without seeking or receiving the consent of Empower Pharmacy between the months of May and September 2023 included existing business plans, new business opportunity plans, financial projections, product projections, capital expenditure forecasts, expense reports, investor slides, strategic plans, confidential documents pertaining to Facilities A and B, and many other confidential documents belonging to Empower Pharmacy.

40.    Defendant Teer not only misappropriated, but also improperly disseminated, Empower Pharmacy's trade secrets and confidential information. For example, on July 19, 2023, Defendant Teer surreptitiously and without authorization sent Defendant Irwin an email containing Empower Pharmacy's senior leadership strategic planning document and its product projections spreadsheet.

41.    Defendant Teer also improperly accessed Empower Pharmacy documents from his personal Dropbox, Box.com, and iCloud accounts. Various files contained in these cloud-based folders were also downloaded from either iCloud or Defendant Irwin's CRB SharePoint account.

42.     During her employment, the only time Defendant Hudanich connected external USB drives to her work computer was between the dates of September 13 and 19, 2023, the last week of her employment at Empower Pharmacy. Defendant Hudanich also deleted her email inbox prior to her departure.

43.     Defendant Hudanich utilized her work email to improperly provide Empower Pharmacy trade secret strategy meeting documents to Defendant Irwin, copying Defendant Teer, on August 8 and 10, 2023.

44.     Email traffic recovered from the work accounts of Defendants Teer and Hudanich revealed additional communications with Defendants Hanson and Irwin between the months of July and September wherein the Defendants had already begun converting Empower Pharmacy's confidential information for their own benefit and use.

45.     In one instance on July 20, 2023, where Empower Pharmacy trade secret plans relating to its new business opportunity were exchanged, Defendants Teer (from his @empowerpharmacy.com account), Hanson, and Irwin (from their @hansonirwin.com accounts) had the following conversation after discussing the financial data therein:

| | |
|---|---|
| Irwin: | Empower Data |
| Hanson: | Aren't we filling higher potency stuff? |
| Irwin: | yes in the equipment.  The three should match our normal form Bio42 Hand fill should be on Empower Data |
| Hanson: | We are not compounding but filling vials correct |
| Irwin: | Possibly day one to get revenue coming in to off set cost |
| Irwin: | Over time we will go to the same equipment we were using |
| Hanson: | Hard to tell from their sheet.  It isn't broken down by line or with volumes.  Just revenue |

46.    Less than a day later, Defendants Hanson and Irwin exchanged Empower Pharmacy's trade secret information that would later be used to generate their investor presentations in pursuit of funding for their competing business venture.

47.    On August 15, 2023, in continuance of the conspiracy and in implicit acknowledgement of their intentional misconduct, Defendant Irwin stated to Defendant Teer, "Remember I'm still with CRB. IF this gets back to them, I'm out of Job [sic]. … I would change the name on the other to Bio42 Filling Solution for your team to have one[.]"

48.    This email traffic further demonstrated that the Defendants were utilizing Empower Pharmacy contacts from its trade secret protected investor information to garner funding for Defendant BFS, while still employees of Empower Pharmacy.

**E.    Defendants Develop Their Startup Companies and Begin Soliciting Empower Pharmacy Employees.**

49.    The registration for Defendant HIG was filed on March 8, 2023, and identified Defendants Hanson and Irwin as Managing Members. Shortly after Facility B was identified, Defendant Irwin prompted Defendants Ludowig and Teer to create a new pharmaceutical company that would pursue a competing venture in the new regulatory business space that Empower Pharmacy had identified in the event that Empower Pharmacy did not pursue Facility B. On information and belief, and in conjunction with other named Defendants, Defendant HIG shortly thereafter converted the trade secret and confidential business data and plans that Empower Pharmacy had exchanged with CRB, along with the information gleaned from Defendants employed by Empower Pharmacy, to acquire financial values vital for the commencement of its funding.

50.    The registration for Defendant Bio42 Clinical Filling Solutions Inc. was filed on August 23, 2023, and identified Defendant Ludowig and Mr. Stephen Burrows as Directors of the

Texas Domestic For-Profit Corporation. In the months that followed, Defendant Ludowig played a key leadership role in the direction of Defendant BFS and acknowledged the overlapping responsibilities of Defendants still employed by Empower Pharmacy and CRB.

51.    Defendant BFS then began soliciting other Empower Pharmacy employees to join BFS via Defendants Teer and Hudanich, aided by a BFS investor slide deck, and in breach of their Empower Pharmacy confidentiality and non-disclosure agreements. This investor slide deck was based upon the trade secrets and confidential information Empower Pharmacy invested substantial funds into. Those attempts to solicit revealed that Defendant BFS would engage in the very same manufacturing venture that Empower Pharmacy was pursuing utilizing the trade secrets and confidential information gleaned from Empower Pharmacy.

52.    On September 26, 2023, Defendant Hudanich filed to have Bio42 Clinical Filling Solutions Inc.'s name changed to Bio Filling Solutions Inc.

53.    On October 16, 2023, promptly after Empower Pharmacy confirmed this breach and misappropriation, Empower Pharmacy sent notice letters to the Defendants now named in this Second Amended Complaint. The notice letters demanded the recipients cease using and disseminating misappropriated trade secrets and confidential information, sought the return of disseminated misappropriated trade secrets and confidential information, and included document preservation requests.

54.    In response, Hanszen Laporte LLP, a law firm where Defendant Ludowig was employed after leaving Empower and a firm that has previously represented Empower Pharmacy, responded that it had been retained to represent Defendants BFS, Teer, Hudanich, and HIG.

55.     After the filing of Empower Pharmacy's initial complaint, Defendants BFS, Hudanich, and Teer entered into an Agreed Preliminary Injunction (Dkt. 13), Agreed Expedited Discovery Scheduling Order (Dkt. 18), and an Agreed Stipulated Confidentiality Order (Dkt. 19).

56.     It was subsequently revealed that as early as June 28, 2023, and while Defendants Teer, Hudanich, Ludowig, and Lambert were still employed with Empower Pharmacy, some of the Defendants began meeting to discuss business plans for Defendant BFS. These meetings soon grew to include other named Defendants (*e.g.*, Defendants Hanson and Irwin) as well as Dr. William "Jay" Treat and took place on a recurring weekly basis during the work week and during work hours.

57.     The resulting discovery also revealed an assortment of investor decks that portrayed a joint-venture between HIG and BFS. These investor decks furthermore labeled Empower Pharmacy's attorney, Defendant Ludowig, as the BFS CEO, Mr. Burrows as the BFS COO, Defendant Teer as the BFS Senior Vice President of Operations, Defendant Hudanich as the BFS CFO, Mr. Lambert as the BFS Chief Policy Officer, and Dr. Jay Treat as the BFS Strategic Advisor. These slides also indicated that Defendant BFS had portrayed to investors that at least one current Empower Pharmacy employee held a leadership position on their staff. Likewise, equity documents indicated that the Defendants, including HIG, would share an ownership interest in the competing business venture of Defendant BFS.

58.     It was also verified that, in direct violation of the Agreed Preliminary Injunction (Dkt. 13), Defendant BFS is still using and disclosing Empower Pharmacy's trade secrets and confidential information in investor slide decks. Further, Defendant BFS was continuing its attempts to solicit Empower Pharmacy employees and destroy evidence in violation of existing contractual obligations and this Court's orders (*see* Dkt. 21).

59.     To date, Defendant HIG has numerous investment groups for funding utilizing trade secret and confidential information belonging to Empower Pharmacy and continues to do so. Likewise, Defendant BFS maintains that it will engage in its competing business venture as soon as able unless permanently enjoined from doing so.

## V.     CLAIMS

### Count I: Violation of the Defend Trade Secrets Act
### (Against All Defendants)

58.     Empower Pharmacy incorporates herein each of the paragraphs above by reference as though fully set forth herein.

59.     Plaintiff and Defendants are engaged in interstate commerce in the funding, development, marketing, and/or sale of their pharmaceutical products.

60.     Empower Pharmacy's trade secrets include, but are not limited to, financial data, customer information, investor information, capital expenditure forecasts, product projections, and strategic plans, including those associated with Empower Pharmacy's new business opportunity and Facilities A and B.  18 U.S.C. § 1839(3).

61.     Empower Pharmacy derives economic value and competitive advantage from this information not being known or used by its competitors.

62.     Empower Pharmacy uses these trade secrets a part of the production of pharmaceuticals and the servicing of clinics across the country. In particular, Empower Pharmacy uses these trade secrets in seeking investors, raising capital, the procurement of equipment, and the development and operation of facilities as part of its manufacture of pharmaceuticals.

63.     Empower Pharmacy has taken reasonable steps to ensure the confidentiality of its trade secrets, including: password protection and limitations on access to this information, the employment of information security personnel, non-disclosure and other agreements with

employees, and employee-signed policies restricting the use and handling of this information such as employee handbooks.

64.    Defendants have misappropriated Empower Pharmacy trade secrets in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 as described herein.

65.    While subject to Empower Pharmacy confidentiality and non-disclosure agreements, Defendants Teer and Hudanich, acting on behalf of Defendant BFS, printed, forwarded, disclosed, or otherwise copied without authorization Empower Pharmacy's trade secrets onto personal and/or other unauthorized external devices and cloud-based storage platforms.  Empower Pharmacy's trade secrets are highly confidential and include, but are not limited to existing business plans, new business opportunity plans, financial projections, product projections, capital expenditure forecasts, expense reports, investor slides, strategic plans, customer and investor information, and confidential documents pertaining to Facilities A and B. Empower Pharmacy shares these trade secrets with limited audiences having a need to know and who are subject to contractual confidentiality and non-disclosure agreements.

66.    Defendants are still in possession of Empower Pharmacy's trade secret information on external drives, personal devices, cloud-based storage accounts, or in hard copy format.

67.    Empower Pharmacy did not authorize Defendants to disclose, acquire, or use its trade secrets.

68.    On information and belief, Defendants BFS, HIG, Hanson, Irwin, Lambert and Ludowig knew, or should have known, that Defendants Teer and Hudanich had improperly acquired and were disclosing, without authorization, Empower Pharmacy's trade secrets.

69.    On information and belief, Defendants have used, are using, and/or are planning to use, Empower Pharmacy's misappropriated trade secrets to acquire funding and gain a competitive

advantage in the marketplace.  This was further substantiated by the "substantial amount [o]f money" that Defendant Teer referred to in his September 22, 2023 message, which followed a substantial misappropriation trade secrets belonging to Empower Pharmacy.  Similarly, Defendant Teer also acknowledged that Defendant BFS would be able to drastically "expedite our current plan to exceed expectations by 2yrs."

70.    Based on information and belief, "our current plan" as stated by Defendant Teer refers to confidential and/or secret plans belonging to Empower Pharmacy or, in the alternative, BFS plans derived therefrom.  Defendant BFS is thereby taking advantage of the labor, funds, and man hours expended by Empower Pharmacy on trade secrets to expedite the entry of Defendant BFS into the marketplace, reduce its cost of entry, and gain an unfair advantage over Empower Pharmacy.

71.    As a result of Defendants' DTSA violations, Empower Pharmacy has sustained, and will continue to sustain, irreparable harm.  Specifically, Defendants' use of trade secrets and confidential information, as developed and owned by Empower Pharmacy, to compete with Empower Pharmacy is unfair and will irreparably harm Empower Pharmacy with respect to market share and reputation.  Empower Pharmacy has accordingly suffered injury for which it is entitled to injunctive relief.

72.    As Defendants' misappropriation was willful and malicious, Empower Pharmacy is entitled to exemplary damages under 18 U.S.C. § 1836(b)(3)(C).

### Count II: Violation of the Texas Uniform Trade Secrets Act
### (Against All Defendants)

73.    Empower Pharmacy incorporates herein each of the paragraphs above by reference as though fully set forth herein.

74.    Empower Pharmacy's trade secrets are trade secrets within the meaning of Tex. Civ. Prac. & Rem. Code § 134A.002(6).

75.    Empower Pharmacy derives economic value and competitive advantage from this information not being known or used by its competitors.

76.    Empower Pharmacy has taken appropriate steps to ensure the confidentiality of this information.

77.    Defendants have misappropriated Empower Pharmacy's trade secrets in violation of the Texas Uniform Trade Secret Act ("TUTSA"), Tex. Civ. Prac. & Rem. Code § 134A.

78.    Defendants have wrongfully obtained, forwarded, disclosed, received, or otherwise used Empower Pharmacy's trade secrets.

79.    While subject to Empower Pharmacy confidentiality and non-disclosure agreements, Defendants Teer and Hudanich, acting on behalf of Defendant BFS, printed, forwarded, disclosed, or otherwise copied without authorization Empower Pharmacy's trade secrets onto personal and/or other unauthorized external devices and cloud-based storage platforms. Empower Pharmacy's trade secrets are highly confidential and include, but are not limited to existing business plans, new business opportunity plans, financial projections, product projections, capital expenditure forecasts, expense reports, investor slides, strategic plans, customer and investor information, and confidential documents pertaining to Facilities A and B. Empower Pharmacy shares these trade secrets with limited audiences having a need to know and who are subject to contractual confidentiality and non-disclosure agreements.

80.    Defendants are still in possession of Empower Pharmacy's trade secret information on external drives, personal devices, cloud-based storage accounts, or in hard copy format.

81.     Empower Pharmacy did not authorize Defendants to disclose, acquire, or use its trade secrets.

82.     Defendants BFS, HIG, Hanson, Irwin, Lambert and Ludowig knew, or should have known, that Defendants Teer and Hudanich had improperly acquired and were disclosing, without authorization, Empower Pharmacy's trade secrets.

83.     On information and belief, Defendants have used, are using, and/or are planning to use, Empower Pharmacy's misappropriated trade secrets to acquire funding and gain a competitive advantage in the marketplace. This was further substantiated by the "substantial amount [o]f money" that Defendant Teer referred to in his September 22, 2023 message, which followed a substantial misappropriation trade secrets belonging to Empower Pharmacy. Similarly, Defendant Teer also acknowledged that Defendant BFS would be able to drastically "expedite our current plan to exceed expectations by 2yrs."

84.     Based on information and belief, "our current plan" as stated by Defendant Teer refers to confidential and/or secret plans belonging to Empower Pharmacy or, in the alternative, BFS plans derived therefrom. Defendant BFS is thereby taking advantage of the labor, funds, and man hours expended by Empower Pharmacy on trade secrets to expedite the entry of Defendant BFS into the marketplace, reduce its cost of entry, and gain an unfair advantage over Empower Pharmacy.

85.     As a result of Defendants' TUTSA violations, Empower Pharmacy has sustained, and will continue to sustain, irreparable harm. Specifically, Defendants' use of trade secrets and confidential information, as developed and owned by Empower Pharmacy, to compete with Empower Pharmacy is unfair and will irreparably harm Empower Pharmacy with respect to market

share and reputation. Empower Pharmacy has accordingly suffered injury for which it is entitled to injunctive relief.

60.     As Defendants' misappropriation was willful and malicious, Empower Pharmacy is entitled to exemplary damages and attorney's fees under Tex. Civ. Prac. & Rem. Code §§ 134A.004(a)-(b) and 134A.005(3).

**Count III: Breach of Contract –**
**Contractual Confidentiality Obligations in Favor of Empower Pharmacy**
**(Against Defendants Teer, Hudanich, Lambert, and Ludowig)**

61.     Empower Pharmacy incorporates herein each of the paragraphs above by reference as though fully set forth herein.

62.     Defendants Teer, Hudanich, Lambert, and Ludowig entered into confidentiality and non-compete agreements as a condition of their employment by Empower Pharmacy.

63.

64.     These contracts were supported by valid consideration and Empower Pharmacy performed all of its obligations pursuant to the contracts.

65.     Pursuant to the Disclosure and Use Restrictions section of the Confidentiality and Non-Compete Agreements, Defendants Teer, Hudanich, Lambert, and Ludowig agreed not to:

> [D]irectly or indirectly disclose, publish, communicate, or make available Confidential Information, or allow it to be disclosed, published, communicated, or made available, in whole or in part, to any entity or person whatsoever, not having a need to know and authority to known and to use the Confidential Information in connection with the business of [Empower Pharmacy]….

Pursuant to that same section of their Agreements, Defendants Teer, Hudanich, Lambert, and Ludowig agreed not to:

> [A]ccess or use any Confidential Information, and not to copy any documents, records, files, media, or other resources containing any Confidential Information, or remove any such documents, records, files, media, or other resources from the premises or control of [Empower Pharmacy], except as required in the performance of any of the Employee's

authorized employment duties to [Empower Pharmacy].... The Employee understands and acknowledges that the Employee's obligations under this Agreement regarding any Particular Confidential Information begin immediately and shall continue during and after the Employee's employment by [Empower Pharmacy] until the Confidential Information has become public knowledge other than as a result of the Employee's breach.... (emphasis omitted).

66.     Ludowig also agreed in confidentiality agreement executed in 2020 that he "shall not, except as required in the conduct of [Empower Pharmacy's] business or as authorized in writing by [Empower Pharmacy], use publish, or disclose any of [Empower Pharmacy's] Trade Secrets or Confidential Information in any manner whatsoever."

67.     Defendants Teer and Hudanich printed, forwarded, disclosed, or otherwise saved for future use hundreds of confidential documents including, and in addition to, the trade secrets identified in Counts I and II above.

68.     Defendant Ludowig, as President and CEO of Defendant BFS, and Defendant Lambert further disclosed Empower Pharmacy's confidential information and trade secrets through investor slide decks for commercial purposes.

69.     This disclosure and use of confidential information was not for the benefit of Empower Pharmacy and was not authorized by Empower Pharmacy.

70.     Defendants Teer, Hudanich, Lambert, and Ludowig breached the confidentiality and non-disclosure sections of their contracts with Empower Pharmacy by sharing or copying Empower Pharmacy's confidential information while preparing to compete; using Empower Pharmacy's confidential information to gain employment with Defendant BFS; and using this confidential information to advantage competing third parties, including Defendant BFS.

71.     As a result of the breach by Defendants Teer, Hudanich, Lambert, and Ludowig, Empower Pharmacy has suffered damages for which it is entitled to immediate injunctive relief.

**Count IV: Breach of Contract – Non-Solicitation**
**(Against Defendants Teer and Hudanich)**

72.    Empower Pharmacy incorporates herein each of the paragraphs above by reference as though fully set forth herein.

73.    The confidentiality and non-compete agreements entered into by Defendants Teer and Hudanich also contained a non-solicitation clause.

74.    Pursuant to the Non-Solicitation of Employees section of the agreements, Defendants Teer and Hudanich agreed not to:

> [D]irectly or indirectly solicit, hire, recruit, or attempt to solicit, hire, or recruit, any employee of [Empower Pharmacy] in the twenty-four (24) months preceding the last day of the Employee's employment (collectively, "Covered Employee"), or induce the termination of employment of any Covered Employee for a period of three (3) years, beginning on the last day of the Employee's employment with [Empower Pharmacy], regardless of the reason for the employment termination during the Restricted Period. (emphasis omitted).

75.    Defendants Teer and Hudanich have breached the non-solicitation section of their contract by providing Empower Pharmacy employees with information about Defendant BFS and attempting to hire those employees away from Empower Pharmacy.  On information and belief, Defendants Teer and Hudanich also precipitated the exodus of other high level employees, such as Mr.  Lambert, with plans to employ those individuals in competition against Empower Pharmacy.

76.    As a result of the breach by Defendants Teer and Hudanich, Empower Pharmacy has suffered damages for which it is entitled to immediate injunctive relief.

**Count V: Breach of Contract – Non-Competition**
**(Against Defendants Teer, Lambert, and Ludowig)**

77.    Empower Pharmacy incorporates herein each of the paragraphs above by reference as though fully set forth herein.

78. The confidentiality and non-compete agreement entered into by Defendants Teer, Lambert, and Ludowig contained a non-compete clause.

79. Pursuant to the Non-Competition section of the agreement, Defendant Teer agreed that:

> [D]uring the term of the Employee's employment and for three (3) years following, to run consecutively, beginning on the last day of the Employee's employment with [Empower Pharmacy] … (the "Restricted Period"), the Employee agrees and covenants not to engage in the manufacture, sale, and/or distribution of the same or substantially similar pharmaceutical product lines, on behalf of any compounding pharmacy within "the Restricted Period", in Houston, Texas and its surrounding counties, (collectively referred to as "Restricted Territory"). (emphasis omitted).

80. Pursuant to the Non-Competition section of the agreement, Defendants Ludowig and Lambert agreed that:

> [D]uring the term of the Employee's employment and for three (3) years following, to run consecutively, beginning on the last day of the Employee's employment with [Empower Pharmacy] … (the "Restricted Period"), the Employee agrees and covenants not to engage in the manufacture, sale, and/or distribution, on behalf of the following entities, parent companies, subsidiaries, and/or affiliates thereof: . . . Revive Rx, LLC . . . within "the Restricted Period", in the United States of America . . . (collectively referred to as "Restricted Territory").

81. Ludowig and Lambert further agreed that "Prohibited Activity", for purposes of their non-compete, was:

> . . . activity in which [Ludowig or Lambert] contributes [Ludowig's or Lambert's] knowledge, directly or indirectly, in whole or in part, as an employee, employer, owner, operator, manager, advisor, consultant, contractor, agent, partner, director, stockholder, officer, volunteer, intern, or any other similar capacity to an entity engaged in the same or similar business as [Empower Pharmacy], including those engaged in the manufacture, sale and/or distribution of commercial or compounded pharmaceutical products within the "Restricted Territory". Prohibited Activity also includes activity that may require or inevitably require

disclosure of trade secrets, proprietary information, or Confidential Information.

82.    Defendant Teer, a highly trained Empower Pharmacy employee and Senior Director, breached the non-competition section of his contract by facilitating the formation of, and gaining employment with, Defendant BFS – a competing pharmaceutical company in the sale and distribution of similar pharmaceutical product lines within Texas, and including, Houston, Texas and its surrounding counties.

83.    Defendants Ludowig and Lambert breached the non-competition of their contracts by facilitating the formation of, and gaining employment with, Defendant BFS – a competing pharmaceutical company in the sale and distribution of similar pharmaceutical product lines within Texas, including Houston, Texas and its surrounding counties, by working for or performing services for other Empower competitors, including ReviveRx, as those competitors engaged in the manufacture, sale and/or distribution of similar pharmaceutical product lines as Empower Pharmacy, and by engaging in Prohibited Activity.

84.    As a result of the breach by Defendants Teer, Lambert, and Ludowig, Empower Pharmacy has suffered damages for which it is entitled to immediate injunctive relief.

### Count VI: Unjust Enrichment
### (Against All Defendants)

85.    Empower Pharmacy incorporates herein each of the paragraphs above by reference as though fully set forth herein.

86.    Defendants wrongly secured benefits by using, or planning to use, Empower Pharmacy's misappropriated trade secrets, along with other confidential information, to acquire funding and gain a competitive advantage in the marketplace.  This was further substantiated by the "substantial amount [o]f money" that Defendant Teer referred to in his September 22, 2023 message, which followed a substantial misappropriation of trade secrets and confidential

information belonging to Empower Pharmacy.  Similarly, Defendant Teer also acknowledged that Defendant BFS would be able to drastically "expedite our current plan to exceed expectations by 2yrs."

87.    Based on information and belief, "our current plan" as stated by Defendant Teer refers to confidential and/or secret plans belonging to Empower Pharmacy or, in the alternative, BFS plans derived therefrom.  Defendant BFS is thereby taking advantage of the labor, funds and man hours expended by Empower Pharmacy on trade secrets and additional confidential information to expedite the entry of Defendant BFS into the marketplace, reduce its cost of entry, and gain an unfair advantage over Empower Pharmacy.

88.    As a direct and proximate cause of Defendants' unfair competition, Empower Pharmacy has suffered and will continue to suffer injury, loss, harm, or damages that will continue to accrue, unless the defendants are enjoined from using Empower Pharmacy's trade secrets and other confidential information.

89.    It would be unconscionable to allow the Defendants to profit from the misappropriated information of Empower Pharmacy and retain any associated benefits. Accordingly, any income or revenue gained by the Defendants, or any person or entity acting in concert with Defendants, as a result of their unlawful conduct should be placed in a constructive trust and paid to Empower Pharmacy.

**Count VIII: Tortious Interference**
**(Against Defendants BFS, HIG, Hanson, and Irwin)**

90.    Empower Pharmacy incorporates herein each of the paragraphs above by reference as though fully set forth herein.

91.    Empower Pharmacy is a party to several valid and enforceable contracts with Defendants Teer, Hudanich, Lambert, and Ludowig, as well as other Empower Pharmacy

employees.  These contracts contain confidentiality, non-disclosure, non-competition, and non-solicitation covenants.

92.    Defendant BFS willfully and intentionally interfered with these contracts by hiring Defendant Teer (Empower Pharmacy's Senior Director of Facilities and Engineering) Defendant Hudanich (Empower Pharmacy's Capital Expenditures Manager), Defendant Michael Lambert (Empower Pharmacy's Director of Government Relations), and Defendant Ludowig (Empower Pharmacy's Vice President of Regulatory and Legislative Affairs) as employees while they were still employed by Empower Pharmacy.  Defendants BFS, HIG, Hanson, and Irwin further willfully and intentionally interfered with Empower Pharmacy's contracts by encouraging or inducing Defendants Teer, Hudanich, Lambert, and Ludowig to misappropriate, disclose, and or use Empower Pharmacy's confidential documents including, and in addition to, the trade secrets identified in Counts I and II above; and, also, by encouraging or inducing Defendants Teer and Hudanich to solicit current employees of Empower Pharmacy.

93.    Defendant BFS continues to employ Defendants Teer, Hudanich, and, on information and belief, Lambert and Ludowig, even though Defendant BFS knew or should have known that their employment, misappropriation, and solicitation breached their contractual obligations to Empower Pharmacy.  Alternatively, if not employees, they continue to seek to benefit the interests of BFS due to their anticipation of receiving equity stakes in the company.

94.    As a result of the past and ongoing interference of Defendants BFS, HIG, Hanson, and Irwin with Empower Pharmacy's valid contracts, Empower Pharmacy has suffered, and will continue to suffer, irreparable harm.  Specifically, Defendants' use of trade secrets and confidential information, as developed and owned by Empower Pharmacy, to compete with Empower

Pharmacy's new business plans is unfair and will irreparably harm Empower Pharmacy with respect to market share and reputation.

95.      As a result of the tortious interference by Defendants BFS, HIG, Hanson, and Irwin, Empower Pharmacy has suffered damages for which it is entitled to monetary relief.

**Count IX: Breach of Fiduciary Duty**
**(Against Defendants Teer and Ludowig)**

96.      Empower Pharmacy incorporates herein each of the paragraphs above by reference as though fully set forth herein.

97.      Empower Pharmacy has developed trade secrets and confidential information and has engaged in reasonable efforts to keep this information out of the hands of its competitors.

98.      Defendant Teer owed a fiduciary duty to Empower Pharmacy by virtue of his status as a Senior Director and employee of Empower Pharmacy, which provided Defendant Teer access to Empower Pharmacy's trade secrets and confidential information.

99.      Defendant Ludowig owed a fiduciary duty to Empower Pharmacy by virtue of his status as Empower's in-house lawyer and its Vice President of Regulatory and Legislative Affairs.

100.      Defendant Teer breached his fiduciary duty to Empower Pharmacy by, among other things:

    a.    Using his access to Empower Pharmacy's trade secrets and confidential information to usurp Empower Pharmacy's business opportunities for Defendants' gain;

    b.    Failing to act in good faith and fair dealing by taking and misappropriating Empower Pharmacy's trade secrets and confidential information to his new employer, Defendant BFS;

    c.    Disclosing Empower Pharmacy's trade secrets and confidential information to unauthorized recipients including Defendants BFS, HIG, Hanson, and Irwin;

    d.    Failing to act primarily for the benefit of Empower Pharmacy in matters connected with his employment by taking and

misappropriating Empower Pharmacy's trade secrets and confidential information to his new employer Defendant BFS; and

e.  Failing to deal openly and to fully disclose to Empower Pharmacy information about matters affecting Empower Pharmacy's business, including Defendants' plans to secretly take Empower Pharmacy's trade secrets and confidential information for the Defendants' own use and benefit and to the detriment of Empower Pharmacy.

101.  Defendant Teer further breached his fiduciary duty to Empower Pharmacy by soliciting and/or attempting to solicit Empower Pharmacy employees on behalf of Defendant BFS and by deleting a large number of Empower Pharmacy capital expenditure files from Empower Pharmacy's SharePoint.

102.  On information and belief, Defendant Ludowig breached his fiduciary duty to Empower Pharmacy by, among other things:

a.  Assuming the role of President at Defendant BFS while still employed at Empower Pharmacy;

b.  Disclosing Empower Pharmacy's trade secrets and confidential information to unauthorized recipients through investor slide decks of Defendant BFS;

c.  Failing to act primarily for the benefit of Empower Pharmacy in matters connected with his employment by using Empower Pharmacy's trade secrets and confidential information as the President of Defendant BFS; and

d.  Failing to deal openly and to fully disclose to Empower Pharmacy information about matters affecting Empower Pharmacy's business, including Defendants' plans to secretly take Empower Pharmacy's trade secrets and confidential information for the Defendants' own use and benefit and to the detriment of Empower Pharmacy.

103.  Defendants Teer and Ludowig's breach of their fiduciary duties have caused harm to Empower Pharmacy and generated unjust enrichment for the Defendants.

104.  As a result of this breach of fiduciary duties by Defendants Teer and Ludowig, Empower Pharmacy has suffered damages for which it is entitled to immediate injunctive relief and, also, monetary damages.

## Count X: Aiding and Abetting Breach of Fiduciary Duty
### (Against All Defendants)

105.    Empower Pharmacy incorporates herein each of the paragraphs above by reference as though fully set forth herein.

106.    Empower Pharmacy has developed trade secrets and confidential information and has engaged in reasonable efforts to keep this information out of the hands of its competitors.

107.    Defendant Teer owed a fiduciary duty to Empower Pharmacy by virtue of his status as a Senior Director and employee of Empower Pharmacy, which provided Defendant Teer access to Empower Pharmacy's trade secrets and confidential information.

108.    Defendants BFS, HIG, Hudanich, Ludowig, Lambert, Hanson, and Irwin knew of Defendant Teer's position as a Senior Director of Empower Pharmacy and likewise knew that he was breaching those duties by misappropriating and using Empower Pharmacy's trade secrets and confidential information for the Defendants' own use and benefit and to the detriment of Empower Pharmacy.

109.    On information and belief, Defendants BFS, HIG, Hudanich, Ludowig, Lambert, Hanson, and Irwin knowingly participated and substantially assisted Defendant Teer in the breach of his fiduciary duty by, among other things:

a.    Taking and misappropriating Empower Pharmacy's trade secrets and confidential information;

b.    Disclosing Empower Pharmacy's trade secrets and confidential information to unauthorized recipients;

c.    Deleting or otherwise destroying incriminating evidence;

d.    Soliciting Empower Pharmacy employees on behalf of Defendant BFS; and

e.    Converting Empower Pharmacy's trade secrets and confidential information to jump start market entry and funding of Defendant BFS.

110.    Defendant Ludowig owed a fiduciary duty to Empower Pharmacy by virtue of his status as Vice President of Regulatory and Legislative Affairs.

111.    Defendants BFS, HIG, Teer, Hudanich, Lambert, Hanson, and Irwin knew of Defendant Teer's position as a Senior Director of Empower Pharmacy and likewise knew that he was breaching those duties by misappropriating and using Empower Pharmacy's trade secrets and confidential information for the Defendants' own use and benefit and to the detriment of Empower Pharmacy.

112.    Defendants BFS, HIG, Teer, Hudanich, Lambert, Hanson, and Irwin knowingly participated and substantially assisted Defendant Ludowig in the breach of his fiduciary duty by, among other things:

a.    Taking and misappropriating Empower Pharmacy's trade secrets and confidential information;

b.    Disclosing Empower Pharmacy's trade secrets and confidential information to unauthorized recipients;

c.    Deleting or otherwise destroying incriminating evidence;

d.    Soliciting Empower Pharmacy employees on behalf of Defendant BFS; and

e.    Converting Empower Pharmacy's trade secrets and confidential information to jump start market entry and funding of Defendant BFS.

113.    The actions of Defendants in aiding and abetting the breach of Defendants Teer and Ludowig's fiduciary duties have caused harm to Empower Pharmacy and generated unjust enrichment for the Defendants.

114.    As a result of this, Empower Pharmacy has suffered damages for which it is entitled to immediate injunctive relief and, also, monetary relief.

**Count XI: Civil Conspiracy**
**(Against All Defendants)**

115.    Empower Pharmacy incorporates herein each of the paragraphs above by reference as though fully set forth herein.

116.    Defendants are a combination of two or more persons including Defendants BFS, HIG, Teer, Hudanich, Ludowig, Lambert, Hanson, and Irwin.

117.    Defendants sought, through a meeting of the minds, to accomplish a business venture through unlawful acts, including the misappropriation and disclosure of trade secrets and confidential information belonging to Empower Pharmacy.  Based on information and belief, the Defendants used this information to develop the business plans, financial projections, site acquisition objectives, and investor pitches for their use and financial gain.

118.    Accordingly, it is reasonable that, in light of their joint participation in the development of Defendant BFS, their email/chat exchanges, telephonic and video meetings, the deletion of files (including emails, printer caches, recycle bins, and Empower Pharmacy capital expenditure files), and their enjoyment of the fruits of the misappropriation, disclosure, and wrongful solicitation, Defendants had a meeting of the minds on an object or course of action; specifically, the wrongful misappropriation of Empower Pharmacy's trade secrets and confidential information in order to fast track a competing pharmaceutical company and to jointly profit therefrom.

119.    As a result of the civil conspiracy by Defendants, Empower Pharmacy has suffered damages as a proximate result of Defendants' actions.

120.    Accordingly, Empower Pharmacy has suffered damages for which it is entitled to immediate injunctive relief and, also, monetary damages.

121.    Because the harm to Empower Pharmacy was willful and malicious, Empower Pharmacy is also entitled to exemplary in an amount to be proven at trial.

## VI.    JURY

122.    Pursuant to FED. R. CIV. P. 38, Empower Pharmacy demands a trial by jury on any and all issues triable by a jury.

## VII.    ATTORNEY'S FEES

123.    Empower Pharmacy seeks its reasonable and necessary attorney's fees under Chapter 38 of the Texas Civil Practice & Remedies Code for each breach of contract claim.

## VIII.    PRAYER

Empower Pharmacy prays for injunctive relief and damages, including its attorneys' fees, pre and post-judgment interest, and costs, as supported by the foregoing allegations and such other relief in law or equity to which Plaintiff may show itself justly entitled.

**JACKSON WALKER L.L.P.**

*/s/ Michael H. Bernick*
Michael H. Bernick
State Bar No. 24078227
S.D. Tex. ID 1439062
mbernick@jw.com
Harris J. Huguenard
State Bar No. 24099615
S.D. Tex. ID 3007223
hhuguenard@jw.com
Michael A. Drab
State Bar No. 34115826
S.D. Tex ID 3665349
mdrab@jw.com
1401 McKinney, Suite 1900
Houston, Texas 77010
(713) 752-4200 – phone
(713) 752-4221 – fax

Benjamin A. Herbert
California State Bar No. 277356
Miller Barondess, LLP
2121 Avenue of the Stars, Suite 2600
Los Angeles, CA 90067
(310) 552-4400

***Pro Hac Application Pending***

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that service of a true and correct copy of the above and foregoing document will be automatically accomplished through notice of electronic filing and in accordance with the Federal Rules of Civil Procedure on December 16, 2024, to the following:

Anthony L. LaPorte
alaporte@hanszenlaporte.com
Alexandra E. Pierce
apierce@hanszenlaporte.com
Hanszen Laporte
14201 Memorial Drive
Houston, Texas 77079

**Attorneys for Defendants**

*/s/ Michael H. Bernick*
Michael H. Bernick