**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| Empower Clinic Services, L.L.C., | |
| Plaintiff, | |
| v. | Case No. 4:23-cv-4123 |
| Bio Filling Solutions Inc. f/k/a Bio42 Clinical Filling Solutions, Inc., Hanson Irwin Group LLC, David Teer, Lisa Hudanich, Matthew Ludowig, Marc Hanson, and Jerry Irwin, | |
| Defendants. | |

<u>**DEFENDANT MATTHEW LUDOWIG'S MOTION FOR CONTINUANCE**</u>

The Court issued the current Scheduling Order (ECF No. 78) by granting the Agreed Motion for Continuance (ECF No. 76) submitted by Plaintiff Empower Clinic Services, LLC d/b/a Empower Pharmacy ("Empower" or "Plaintiff"), which moved the trial date from December 2024 to August 2025 to, *inter alia*, allow Plaintiff's newly retained counsel time to get up to speed. For the same and substantial additional reasons, Defendant Matthew Ludowig ("Mr. Ludowig" and/or "Defendant"), respectfully requests an order extending the deadlines set in ¶¶ 2b-6 of the Scheduling Order by approximately 90 days and establishing a November 2025 trial setting. This Motion is Mr. Ludowig's first request for a continuance. Despite Mr. Ludowig's agreement to Plaintiff's prior request for a continuance, Plaintiff opposes Mr. Ludowig's Motion.

<u>**INTRODUCTION**</u>

For all of the same reasons asserted in Plaintiff's prior motion for continuance (ECF No. 76), which the Court granted, a 90-day continuance is warranted: This is a complex case in which the operative complaint (ECF No. 92), consisting of 123 paragraphs and 34 pages asserting 11 claims (including conspiracy) against 8 defendants, has been pending for less than 4 months. The

1

current discovery deadline of April 4 has proved too aggressive despite diligent efforts, as the parties have exchanged over 20,000 pages of documents, but are still scheduling fact depositions, expert depositions, and forensic examinations in May (and likely beyond). Additionally, like Plaintiff, Mr. Ludowig has elected to retain new counsel, Kabat Chapman and Ozmer LLP ("KCO"), to represent him in this matter, and KCO needs time just to receive the voluminous file (much of which is sealed and/or marked attorneys' eyes only) from prior counsel—who continues to ably and jointly represent the remaining 6 defendants—and review it so that KCO can develop and execute a litigation strategy unique to Mr. Ludowig as he has requested.

Importantly, Mr. Ludowig's need to retain new counsel did not blossom out of thin air as a tactical maneuver to delay these proceedings but was necessitated by recent developments in this case which were not (and only could have been) discovered or anticipated until after the current deadlines. As explained below, Mr. Ludowig discovered that Empower has not only secured seemingly manufactured testimony from one now-dismissed Defendant (Mr. Lambert), but also, on information and belief, has been aggressively bargaining for the same type of fabricated allegations from the other Defendants *while they were all jointly represented by the same counsel*, Hanszen Laporte. Thus, Empower's tactics forced Mr. Ludowig to identify and retain separate counsel, rather than continue the joint representation with his co-Defendants.

Shortly after Plaintiff added Michael Lambert as a defendant in the Second Amended Complaint, Plaintiff settled with Mr. Lambert, had him execute a declaration on February 26, 2025 that purports to point the finger at Mr. Ludowig, and dismissed its claims against Mr. Lambert the following week (ECF Nos. 125–126). Empower then listed Mr. Lambert as a witness in support of its spoliation motion heard on March 28, 2025. Mr. Lambert not only provided a declaration to Empower in support of Empower's spoliation motion, but also "voluntarily" appeared on March 28, 2025 prepared to testify against Mr. Ludowig—after he had been dismissed from the case and

without being subpoenaed as a witness by any party. When asked why Mr. Lambert "voluntarily" appeared on March 28, his counsel advised the undersigned "you are a good enough attorney to figure out why Mr. Lambert was there," implying that in exchange for his dismissal Mr. Lambert had agreed to appear and testify for Empower. Whether this agreement requires him to provide testimony favorable to Empower is a subject worthy of discovery, due to the ethical implications of such an arrangement and its impact on the credibility of Mr. Lambert's statements and his bias and prejudice in this matter.

Mr. Ludowig seeks an opportunity to take discovery of the circumstances surrounding the solicitation of Mr. Lambert's declaration and any request for the same from any other Defendant or witness, so Mr. Ludowig's counsel can properly cross-examine any adverse witnesses at trial. Mr. Lambert's Declaration also raises issues as to credibility and compliance with Disciplinary Rule 3.04.[1]  Given the recency of these discoveries, Mr. Ludowig could not explore these issues by the April 4 discovery deadline. Additionally, it appears Mr. Lambert is not the only witness that Empower is seeking to settle with in exchange for testimony against Mr. Ludowig, but Empower has not agreed to, and will likely decline to, produce its communications with these third-party individuals. This conduct potentially implicates serious ethical issues that could impugn the integrity of this proceeding, which may necessitate a motion to disqualify counsel for Plaintiff and/or sanction Empower. The undersigned would have preferred to explore these issues in discovery before mentioning them in a pleading, but there was no time left to do so.

Mr. Ludowig also needs time to take discovery pertaining to the recent breaches of the

---

[1] "A lawyer shall not: . . . offer to pay, or acquiesce in the offer or payment of compensation to a witness or other entity contingent upon the content of the testimony of the witness or the outcome of the case."  Texas Disciplinary Rule of Professional Conduct 3.04(b).

Protective Order in this case (ECF No. 19) and potential violations of Disciplinary Rule 3.07,[2] which governs extrajudicial statements that generate pretrial publicity and prejudice the right to a fair trial by impartial jurors. First, KCO recently became aware of an article published in the Texas Lawyer that directly quotes and discusses at length Empower's "SEALED MOTION" for sanctions (ECF No. 105). *See* **Exhibit B.** Upon information and belief, Empower leaked its motion to the Texas Lawyer in violation of the Protective Order (ECF No. 19). As a result of this improper publication, (i) Mr. Ludowig is hamstrung from rebutting Empower's one-sided version of the facts because his response to Empower's motion is sealed as required by the Protective Order, and (ii) Empower has breached the non-disparagement clause in its September 2023 severance agreement with Mr. Ludowig, which is the contract at issue in this case.

Second, it appears Plaintiff has engaged a public relations ("PR") firm not only to disclose the SEALED MOTION in violation of the Protective Order (ECF No. 19), but also for the purpose of achieving an unfair advantage for Empower, to Mr. Ludowig's prejudice. That PR firm, which is listed as the media "contact" in articles discussing Empower's allegations against Mr. Ludowig (*see, e.g.*, **Exhibit C**), makes no secret of its prejudice-imposing intent or tactics, as it openly boasts:

> Fortune magazine has called our founder and Chairman "*one of the most accomplished practitioners of the dark arts of public relations*." The Financial Times called him, "*The spin doctor's spin doctor*. The Editor of Los Angeles Magazine said, "Sitrick is a pure product of the 24-hour news cycle, of a culture

---

[2] Texas Disciplinary Rule of Professional Conduct 3.07(a) provides: "In the course of representing a client, a lawyer shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicatory proceeding. A lawyer shall not counsel or assist another person to make such a statement." "Paragraph (a) is premised on the idea that preserving the right to a fair trial necessarily entails some curtailment of the information that may be disseminated about a party prior to trial. This is particularly so where trial by jury or lay judge is involved. If there were no such limits, the results would be the practical nullification of the protective effect of the rules of forensic decorum and the exclusionary rules of evidence." *Id.* at cmt. 1.

dominated and defined by newspapers, magazines, TV, radio, the Internet of the never-ending noise streaming into our lives. Beyond his aggressiveness, beyond his toughness, ***what distinguishes Sitrick is his ability to play the media to his client's advantage***."

https://www.sitrick.com/ (last accessed April 4, 2025) (emphasis added). Discovery concerning whether Empower used this "spin doctor" to manipulate the media to its advantage is relevant to ethics compliance and Plaintiff's credibility, bias, and motive. We expect it will show that Plaintiff has spared no expense in attempting to distort reality and maliciously pursue this lawsuit, in a quest to paint Mr. Ludowig in a bad light without any regard for the true facts.

These ethical, credibility, motive, bias, and protective order concerns, independently and in combination with the factors previously cited by Plaintiff (complexity of the case, voluminous and sealed nature of the pleadings and document productions, retention of new counsel separate from the counsel jointly representing multiple co-defendants, and the inability to complete necessary discovery within the deadline), warrant modifying the Scheduling Order by continuing the deadlines and trial by approximately 90 days and as set forth in the Proposed Order attached as **Exhibit A.**

## PROCEDURAL HISTORY AND STATEMENT OF THE FACTS

### A.    Empower's Original Complaint

Plaintiff filed its complaint on October 30, 2023 solely against Bio Filling Solutions Inc., Lisa Hudanich, and David Teer. (ECF 1). The original defendants, represented by Hanszen Laporte, filed their answer on December 18, 2023. (ECF 23). Later, Plaintiff filed an amended complaint, which added defendants Hanson Irwin Group LLC, Matthew Ludowig, Marc Hanson, and Jerry Irwin, also represented by Hanszen Laporte. (ECF 24). Hansen Laporte filed an answer on behalf of all defendants to the amended complaint on January 22, 2024. (ECF 32).

**B. Empower Retains New Counsel Who Requests a Continuance to Come Up to Speed**

On June 5, 2024, Empower's current counsel entered their appearance. (ECF 71–72, 79).

The next week, Empower's new counsel requested a continuance of the Scheduling Order because:

- Empower elected to enlist new counsel, and new counsel needed time to analyze the voluminous production, discovery efforts, and prepare expert witnesses in anticipation of trying the case;

- Empower needed additional time to try to uncover evidence of the use of any alleged trade secrets; and

- The parties needed additional time to develop the case, including time to conduct forensic examinations of devices, as well as time for Empower to conduct depositions.

(ECF 76). Defendants' counsel did not oppose the requested continuance. (*Id.*)

**C. Empower's New Counsel Amends Its Complaint Four Months Ago**

Six months after Empower sought the continuance, on December 16, 2024, Empower's new counsel amended Empower's complaint, naming new defendant Matthew Lambert. (ECF 92). Defendant Michael Lambert ("Lambert"), represented by Quattlebaum, Groms & Tull, filed an answer on January 13, 2025. On February 26, 2025, Mr. Lambert signed a declaration testifying against Mr. Ludowig (the "Lambert Declaration"). Empower dismissed Mr. Lambert from the action by March 7, 2025. (ECF 125).

**D. Mr. Ludowig Elects to Retain New Counsel Due to Empower's Strategy to Turn His Jointly-Represented Co-Defendants Against Mr. Ludowig**

On February 26, 2025, Mr. Lambert signed a declaration, apparently part of the consideration for Empower dismissing him, that makes several false and defamatory statements about Mr. Ludowig, and points blame at Mr. Ludowig. Lambert purports to have "learned" several of these false allegations during this lawsuit. Mr. Ludowig was first advised of the Lambert declaration and its contents on March 26, 2025, when Empower listed Mr. Lambert as a witness for a hearing on March 28, 2025. Empower has yet to identify or produce communications

6

surrounding the declaration. Mr. Ludowig has learned that Empower is also targeting settlement with other defendants, who are represented by Hanszen Laporte, in exchange for providing testimony against Mr. Ludowig. In light of these new developments creating a potential ethical conundrum, Mr. Ludowig promptly elected to retain new counsel, who appeared first in this case at the hearing on March 28, 2025.

**E.      Recent Developments Give Rise to New Defenses and Counterclaims**

As additional grounds for the continuance, Mr. Ludowig is seeking leave to amend to add additional affirmative defenses and counterclaims related to Empower breaching a non-disparagement agreement by causing publication of disparaging articles about Mr. Ludowig; Empower's unfair business practices; and Empower's breaches of its agreement releasing its purported claims against Mr. Ludowig. Empower's actions in breach of the Release of Mr. Ludowig are clear, but recently Mr. Ludowig discovered that Empower's breach is part of a plan to target Mr. Ludowig, as Empower apparently limits enforcement of its confidentiality and noncompetition agreements to employees who confront Empower about its illegal compounding practices.

By way of example, in early 2023, Mr. Ludowig prepared a memorandum to Empower's CEO and COO explaining that Empower was illegally producing impure GLP-1s and distributing them to thousands of consumers. Less than two weeks later, Empower demoted Mr. Ludowig. A few months later, Mr. Ludowig objected to other illegal activities related to fundraising efforts spearheaded by Empower's CEO. Shortly, thereafter, Mr. Ludowig was essentially fired although the parties entered into a severance agreement. Despite this severance agreement clearly barring all claims, Empower has subsequently pursued this lawsuit. Mr. Ludowig is not the only employee who suffered this fate after confronting Empower about its illegal compounding practices. For instance, around the time that Empower initiated its media campaign against Mr. Ludowig, former

Empower employee Samuel Pray came forth with allegations that Empower retaliated against him because he reported illegal behavior by Empower. Empower similarly sued Mr. Pray and Mr. Pray's company, even though the company was merely Empower's vendor and was <u>not</u> subject to any confidentiality or noncompetition agreements. Meanwhile, Empower has not filed suit against other former Empower employees, including at least one identified in Empower's Operative Complaint in this case, who were subject to the same confidentiality and noncompetition agreements and are working with competitors—the difference being these employees never reported illegal activity. This discovery has given rise to viewing Empower's targeting of Mr. Ludowig in an entirely different light, suggesting that Empower is targeting him because he possesses information directly related to Empower's illegal activity and that he objected to the same, making him a risk. Indeed, on April 1, 2025, Eli Lilly sued Empower for many of the illegal activities objected to by Mr. Ludowig and Mr. Pray.[3]

Finally, Mr. Ludowig seeks leave to add a counterclaim for Empower's breach of contract given Empower's recent role in publishing disparaging statements about Mr. Ludowig—in blatant violation of the September 2023 severance agreement. Importantly, Empower does not deny that it is out to disparage Mr. Ludowig, punish him, and discredit him, yet it has obstructed discovery of those facts. On March 31, 2025, Empower responded to discovery issued by Mr. Ludowig and objected to providing any information about marketing campaigns designed to defame or discredit Ludowig, but did not deny engaging in those campaigns, such as the use of Sitrick and Company, "the most accomplished practitioners of the dark arts of public relations" who is routinely hired to manipulate the media to their clients' advantage. Accordingly, in addition to seeking an extension permitting discovery of these matters, Mr. Ludowig is contemporaneously seeking leave to amend

---

[3] *See* https://www.cnbc.com/2025/04/01/eli-lilly-sues-strive-and-empower-over-compounded-tirzepatide.html (last visited April 7, 2025)

his answer and assert counterclaims, which show Empower is disparaging and defaming him in violation of the severance agreement at issue in this lawsuit.

**F.      Posture of Case:  The Parties' Discovery Is Ongoing**

Importantly, the Parties have not completed discovery. For instance, forensic examinations of numerous devices have not taken place, and no expert depositions have been taken. Mr. Ludowig is also conferring with Empower on deficient discovery responses, and Mr. Ludowig is awaiting responses to Mr. Ludowig's recently served discovery, as well as dates parties and witnesses are available for depositions. At this point, there are depositions scheduled into May on several dates, some of which were agreed to by Empower and prior counsel before KCO entered this case, and others already agreed to by counsel for co-defendants and non-parties such as Greg Nicholas and Michael Lambert.

**G.      Conferral Efforts**

One day after Mr. Ludowig's counsel substituted his appearance in the case, Mr. Ludowig's counsel asked Empower's counsel to confer on the discovery extension and deficient discovery responses that Empower served the day prior. *See* Exhibit D. Empower's counsel responded two days later and proposed conferring via videoconference the next day, which was the last day of discovery. (*Id.*) In the conference, Empower's counsel asked Mr. Ludowig to share the proposed amended scheduling order, which Mr. Ludowig did within minutes of the videoconference ending, and Mr. Ludowig specifically asked counsel to explain, if opposed to the amendment, how Empower would be prejudiced by a continuance, so the parties could look at adjustments to make it workable for everyone. (*Id.*)

In response to Mr. Ludowig's counsel's suggestion that he would note Empower had not consented to an extension, but a motion needed to be filed that day (the last day of discovery), Empower's counsel expressly instructed Mr. Ludowig's counsel NOT to mark Empower as

opposed but instead wait for a response from Empower as to this request. Accordingly, Mr. Ludowig's counsel stood down on filing this Motion to try to resolve the continuance without involvement of the Court. The next business day, Mr. Ludowig's counsel followed up with Empower, but Empower did not respond until the following day, when it provided a blanket rejection of the amendments to the Scheduling Order, without identifying any alleged prejudice to Empower. (*Id.*)

<h2 style="text-align:center"><u>ARGUMENT</u></h2>

**A.    Legal Standard**

According to Plaintiff:

> A district court has "exceedingly wide" discretion for "handling its calendar and determining when matters should be considered" and "must consider not only the facts of the particular case but also all of the demands on counsel's time and the court's." *HC Gun & Knife Shows, Inc. v. City of Houston*, 201 F.3d 544, 549–50 (5th Cir. 2000). A decision granting a continuance will not be disturbed "unless the complaining party demonstrates that it was prejudiced." *Id.* at 450.

(ECF No. 76 at 2, Plaintiff's Agreed Motion for Continuance).

As also pertinent here, Federal Rule of Civil Procedure 16 allows the district court to modify a scheduling order "for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). To meet the Rule 16(b) good cause standard, the movant must "show that the deadlines [could not have] reasonably be[en] met despite the diligence of the party needing the extension." *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003) (quoting 6A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1522.1 (2d ed. 1990)). The Fifth Circuit considers four factors when determining whether the movant has shown good cause under Fed. R. Civ. P. 16(b)(4): "(1) the explanation for the failure to timely comply with the scheduling order; (2) the importance of the modification; (3) potential prejudice in allowing the modification; and (4) the availability of a continuance to cure such prejudice." *Grant v. City of Houston*, 625 F.App'x 670, 679 (5th Cir. Sept. 10, 2015) (alterations omitted) (quoting *Squyres v.*

*Heico Cos.*, 782 F.3d 224, 237 (5th Cir. 2015)). Mr. Ludowig satisfies this standard, as all four factors weigh in favor of allowing him a full and fair opportunity to take discovery and present his claims and defenses.

**B.      Good Cause Exists to Continue Discovery**

       *1.  Mr. Ludowig's need for new counsel and his counsel's need to get up to speed*

Mr. Ludowig has retained new counsel because he could no longer be represented by Mr. Laporte. Although Mr. Laporte is a fully capable attorney, the revelation that Empower was aggressively seeking to compensate defendants for their testimony, like they did with Mr. Lambert, created an untenable situation for Mr. Ludowig and Mr. Laporte. For some of Mr. Laporte's clients, taking the deal might have been good.  But in doing so, they may have hurt Mr. Ludowig, which placed Mr. Laporte in an ethical conundrum. Moreover, Empower's offers to co-defendants made it apparent that Mr. Ludowig would need a different strategy to defend himself and assert his rights. This situation culminated in the days leading up to the March 28 hearing, when Mr. Ludowig elected to retain new counsel. Mr. Laporte balanced the competing interests for as long as possible, but the presentation of Lambert's Declaration and his eagerness to fabricate and testify for Empower ultimately tipped the balance to require new counsel. Now, just as Empower's current counsel received even when there were not landscape-shifting events occurring, Mr. Ludowig needs time for his new counsel to get up to speed on the history of the case, investigate the recent developments, and execute Mr. Ludowig's defense, strategy, and presentation of the case.

       *2.  Ongoing Discovery by the Parties*

Good cause exists, because the Parties have worked diligently but have been unable to complete discovery. Specifically, the Parties are still working on the scope of forensic examinations of devices, where information will be extracted from cell phones of witnesses for Plaintiff and Defendants. The Parties also are still preparing to take expert depositions. Moreover,

Mr. Ludowig's counsel is conferring with Empower on several deficient discovery responses, and Mr. Ludowig's counsel recently sent additional interrogatories and requests for production to which Empower has yet to respond. As of this filing, there are also 10 outstanding subpoenas for the production of documents and depositions related to Mr. Ludowig's claims and defenses. Mr. Ludowig's counsel is in the process of working with all parties' counsel and witnesses to take these additional depositions, which include both Empower witnesses and non-party witnesses.

### 3. *The Lambert developments*

The discovery of the Lambert declaration alone is good cause to grant this Motion. Importantly, not only did Mr. Lambert provide Empower a declaration in exchange for his dismissal from this case, but he also voluntarily appeared at a hearing on March 28, 2025 and, according to Empower, was ready to testify against Mr. Ludowig. Mr. Lambert's declaration, and anticipated testimony consistent therewith, is laced with admittedly "learned" facts—none of which he provided before his settlement with Empower—as well as blatant falsities. Yet, Empower secured this testimony under questionable circumstances that Mr. Ludowig must be permitted to investigate, if for no other reason than to assess Mr. Lambert's bias and the circumstances related to his sudden "education."

Obviously, this information could not have been secured within the few days of discovery available after the March 28 hearing. A discovery extension permitting Mr. Ludowig time to secure discovery from Mr. Lambert and Empower is necessary due to this new evidence. *See Sustainable Modular Mgmt., Inc. v. Travelers Lloyds Ins. Co.,* No. 3:20-CV-1883-D, 2021 WL 4822017, at *12 (N.D. Tex. Oct. 15, 2021) (allowing modification to scheduling order where new facts learned even after close of discovery deadline); *Eagle Railcar Servs.-Roscoe, Inc. v. NGL Crude Logistics, LLC,* No. 1:16-CV-0153-BL, 2017 WL 11634816, at *5 (N.D. Tex. Oct. 26, 2017) (extending

discovery deadline where plaintiff recently learned about reassignment rights and created need for 10 additional depositions).

### 4. Recently discovered selective enforcement and manipulation of media and witnesses

Moreover, Mr. Ludowig has recently discovered that Empower selectively enforces its non-competition and confidentiality agreements with former executives, and Empower has gone as far here as to disparage, discredit, and harm Mr. Ludowig.[4] And it has—substantially. Mr. Ludowig could not proceed with his counterclaims, or properly prepare his defense with his prior counsel, Hanszen Laporte, given Empower's relentless pursuit of Mr. Laporte's other clients—Mr. Ludowig's co-defendants. Instead, Mr. Ludowig is uniquely situated as Empower's only true target, and has recently discovered that the defamation of him by Empower is not an accident, but rather part of a calculated plan carried out by self-professed spin doctors Sitrick and Company. Given that no other entity aside from Empower would benefit from the discrediting of Matthew Ludowig, it stands to reason that Sitrick's true client is the Plaintiff in this case, and that Empower has violated the Protective Order in this case and may have transgressed ethical rules on pretrial publicity and compensation of witnesses.

### a.    The Media Campaign Violates the Protective Order

On November 29, 2023, this Court entered a protective order prohibiting the disclosure of any confidential information to unauthorized persons. (ECF No. 19, ¶ C.1.) Yet, one day after Plaintiff filed its "SEALED MOTION" for sanctions (ECF No. 105), direct quotes from that

---

[4] The Court is familiar with the image of Mr. Ludowig, as "learned counsel," who was "caught" in the act of surreptitiously destroying evidence of some heinous crime by secretly drilling holes in a hard drive and taking a hammer to the same. But Mr. Ludowig was never "caught" doing this—he freely admitted to disposing of the hard drive in this manner at his deposition. He could have lied about it or attempted to conceal it—but he didn't, because his actions were, and are, irrelevant to any issue in this case. Yet, his honesty regarding the matter has been turned against him. This situation, like the PR-driven online and newspaper publications masquerading as media reporting, is simply part of the well designed and paid for strategy of defamation employed by Empower to discredit Mr. Ludowig and shield its own illicit behavior.

motion appeared in the media: "Ludowig's spoilation cuts to the very heart of this trade secrets case . . . Ludowig, a self-proclaimed seasoned litigator with over 10 years experience, repeatedly destroyed crucial evidence while he was aware of the important of the evidence to imminent and active litigation."[5] That Plaintiff would move to seal a motion, and then turn around and leak it to media—which quoted it verbatim—causes grave concerns regarding violations of the Protective Order and Empower's credibility, bias, and motive in pursuing this case. Justice requires time for Mr. Ludowig to investigate these serious matters.

### b. Ethical Considerations, including Texas Disciplinary Rules of Professional Conduct 3.04 and 3.07(A)

Mr. Ludowig's suspicions regarding the circumstances of the Lambert Declaration are not unfounded. Upon information and belief, a separate former Empower executive, Greg Nicholas, and his counsel will testify that counsel for Empower blatantly encouraged him to give false testimony against Mr. Ludowig in exchange for a favorable settlement of Mr. Nicholas's claims for compensation. Mr. Nicholas has sued Empower for failing to properly pay him monies to which he was entitled when he left Empower. That matter is currently pending in arbitration. According to Mr. Nicholas's counsel, what should be a simple executive compensation matter has devolved into a witch hunt for dirt on Mr. Ludowig. The matter has been draped in threats of future litigation against Mr. Nicholas if he refuses to cooperate with Empower by providing false testimony against Mr. Ludowig. Empower has also attempted to use the Lambert Declaration to compel Mr. Nicholas to change his mind and agree to provide the testimony in exchange for a settlement. To his credit, Mr. Nicholas has refused to provide the false testimony demanded by Empower. So, the arbitration with Mr. Nicholas has not resolved, and Empower continues to suggest that if Mr. Nicholas does

---

[5] *See* General Counsel Accused of Destroying Evidence, TEXAS LAWYER, (January 31, 2025 at 1:33 PM) https://www.law.com/texaslawyer/2025/01/31/general-counsel-accused-of-destroying-evidence/ (last accessed April 9, 2025).

not cooperate with Empower he is "going to get himself sued" and that signing the false declaration suggested by Empower would "serve him well," or words to that effect. These attempts at coercion and the direct offer to acquiesce to Mr. Nicholas's demands for payment, in exchange for certain testimony, would be in direct violation of Rule 3.04(b).

Additionally, it is clear that Empower has financed a smear campaign and hired well-known media consultant and hit man, Micheal Sitrick, to carry it out.[6] Indeed, in discovery Empower has not actually denied the orchestration of and responsibility for the defamation of Matthew Ludowig. Instead, they have just refused to produce discovery, claiming that the information is "irrelevant."

Similarly, and as discussed above, KCO recently discovered that portions of a motion which was "SEALED" by Empower (ECF No. 105) was actually quoted by a news source. In addition to implicating potential violations of the Protective Order, this conduct causes serious ethical concerns. Clearly, the quoted portions of the Motion were not provided by Ludowig, but instead apparently by Empower. This is directly in violation Rule 3.07(a)[7] and is extremely unfair to Mr. Ludowig—who, because the motion is SEALED, cannot publicly rebut the defamation that Empower is orchestrating to discredit him and impact this lawsuit.

The matter of Empower's refusal to respond to discovery on this topic is currently the subject of attempts to meet and confer, but the need for discovery and Mr. Ludowig's need to present this information to the jury creates good cause for an alteration of the current scheduling order and trial date.

---

[6] *See Empower Pharmacy Accuses Former Executives of Conspiring to Steal Company Secrets,* BUSINESSWIRE (Dec. 20, 2024, 1:57 PM ET) https://www.businesswire.com/news/home/20241220851784/en/Empower-Pharmacy-Accuses-Former-Executives-of-Conspiring-to-Steal-Company-Secrets (Dec. 20, 2024, 1:57 PM ET) (listing Sitrick and Company as contacts on the article).
[7] Tex. Rule 3.07(a): "(a) In the course of representing a client, a lawyer shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding."

**C.** **If the Court Employs the "Excusable Neglect" Standard, Mr. Ludowig Has Demonstrated Same and Thus the Court Should Exercise Its Discretion in Granting this Motion**

Mr. Ludowig recognizes this Court has held that, in addition to showing "good cause," a party must show that it failed to act because of "excusable neglect" if a deadline has passed. *E.g.*, *Gray v. Killick Grp., LLC*, No. 4:21-CV-01673, 2022 WL 20688810, at *1 (S.D. Tex. Aug. 4, 2022) (Bennett, J.) (granting discovery extension due to new counsel). (citing Fed. R. Civ. P. 6(b)(1)). To determine whether an extension is justified by excusable neglect, the Court considers four factors: (1) the danger of prejudice to the non-movant; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the movant's reasonable control; and (4) whether the movant acted in good faith. *See Blake v. Peake*, No. H-04-1068, 2008 WL 5114655, at *1–2 (S.D. Tex. Dec. 3, 2008). Courts "enjoy[ ] broad discretion to grant or deny an extension, and the excusable neglect standard is intended and has proven to be quite elastic in its application." *Id.* (citing *Salts v. Epps*, 676 F.3d 468, 474 (5th Cir. 2012). Here, Mr. Ludowig should not be required to show "excusable neglect," because (i) the good cause standard under Fed. R. Civ. P. 16 controls, and (ii) Mr. Ludowig avoided prematurely filing this Motion as Mr. Ludowig anticipated that Empower would agree to a reciprocal extension that Mr. Ludowig had agreed to only months prior. Nevertheless, all four factors which the Court should consider for finding excusable neglect favor granting this request.

*1.* ***There is no prejudice to Plaintiff in granting this request.***

Plaintiff has not articulated any unfair prejudice, nor can it, particularly because there is a preliminary injunction (ECF No. 68) in place pending trial. Moreover, Plaintiff sought and was granted the same relief sought by Mr. Ludowig herein—an adjustment to the scheduling order to permit counsel to get up to speed. Importantly, when asked to articulate any prejudice, so that Mr. Ludowig could attempt to ameliorate it in their proposed scheduling order, Empower refused.

Instead, Plaintiff's counsel stood on its conclusory claims that the continuance would result "unnecessary expense" and "undue burden." **Exhibit D**. Having refused to confer on prejudice, Empower should be estopped from claiming that it will suffer any unfair prejudice that could overcome the good cause discussed herein.

### 2. *The Requested Continuance Presents a Minimal Impact on Judicial Proceedings.*

Here, the extension is only 90 days, which is much shorter than the eight (8) month extension Empower's new counsel requested and received. The parties are already continuing past the currently expired April 4, 2025 deadline, attempting to complete discovery, including several depositions, and so the minimal extension requested serves a minimal delay.

### 3. *The Reason for the Delay Was Outside of Mr. Ludowig's control.*

The reason for the delay was due to no fault of Mr. Ludowig, who relied on capable counsel to jointly represent him with the other co-defendants and diligently pursue discovery as to his claims and defenses. Recent discoveries have necessitated both the change of counsel as well as the need for new and important discovery.

### 4. *Mr. Ludowig has Acted in Good-Faith.*

As noted above, Mr. Ludowig is responding to circumstances outside of his control. He should not be prejudiced by his decision to hire new counsel, or his desire to fully discover matters which are vital to his defense of Empower's claims or advance his right to recover. At all times, he and his counsel have acted in good-faith. The good-faith nature of this request is illustrated by the prejudice he will suffer if he is not permitted time to discover the facts need to defend himself, as well as his diligence prior to the discovery of recent events.

### a. *Mr. Ludowig Will Be Prejudiced If No Continuance Is Granted*

If no extension is granted, Mr. Ludowig will be severely prejudiced in his ability to prepare his case, defend against Empower's claims, and present important matters to the jury, including

17

his own claims for damages. Until recently, he was unaware of the targeted campaign by Empower to secure testimony against him from his co-defendants and others and the coordinated campaign to defame him publicity. Those are serious issues which have huge implications in this case. Empower's refusal to provide basic answers to standard confidentiality, non-competition, and trade secret discovery requests, as well as respond to discovery regarding the public relations campaign is telling. Mr. Ludowig must be allowed to complete the discovery that he issued prior to the close of the April 4, 2025 deadline, as well as the opportunity to fully discovery the other issues identified herein which will dramatically impact a trial on the issues before this Court. He must be able to present a complete defense and should not be prejudiced by the fact that he had to find new counsel when Mr. Laporte's ethical conundrum could no longer be abated. His counsel needs time to prepare, investigate and develop his case, and candidly to ensure that any and all defenses, including any that Mr. Laporte could not ethically explore, are fully developed and presented.

**b.** ***Mr. Ludowig Did Not Create the Issues surrounding Lambert or The Need to Hire New Counsel.***

As a threshold matter, it has been only three (3) months since Mr. Ludowig's Answer to the Second Amended Complaint was filed (ECF 99) and less than four (4) months since Plaintiff's own Motion to Amend the Scheduling was granted (ECF 78). Mr. Ludowig had no control over (nor could he have anticipated) when and/or how he would discover the efforts by Empower to secure false and misleading testimony from his co-defendants in exchange for dismissal from this lawsuit. He only realized the extent of those efforts and implications for his own defense when Mr. Lambert—a fellow co-defendant—was listed as a witness for the hearing on March 28, 2025 and apparently had agreed to testify against Mr. Ludowig. It was only at this point that the realty set in for Mr. Ludowig, that his current counsel, Mr. Laporte, could no longer represent Mr. Ludowig in light of the revelation that Empower was seeking to secure the same type of false testimony from his other co-defendants around that same time. Mr. Laporte represented Mr. Ludowig for as long

as he ethically could. It was at this point, that KCO was retained and appeared in this case for the first time on March 28, 2025.

Additionally, despite Mr. Ludowig's and his prior counsel's diligence in participating in this litigation, it was only recently discovered that Ludowig is being singled out and targeted not only by this lawsuit and the extorted testimony from his co-defendants herein, but also by a well-orchestrated media campaign designed to discredit, defame, and harm him. And Empower's recent refusal to deny that they are responsible for the campaign against Mr. Ludowig in their discovery responses, combined with his prior objections to Empower's illegal conduct, have transformed what was only feared into something actionable in the form of counterclaims. Diligently pursuing these facts is what has uncovered them and given rise to the need for a relatively modest 90-day extension of discovery to explore critical issues.

## **CONCLUSION**

In sum, good cause exists for the Court to grant Mr. Ludowig's Motion:

- For the same reasons that Plaintiff sought to continue the deadlines in the Scheduling Order after Plaintiff's new counsel entered their appearance—Mr. Ludowig's new counsel needs time to review the voluminous file, confirm its strategy and defense, including development and filing of any counterclaims which are appropriate, and finish discovery;

- The operative complaint is a mere four months old;

- The recent developments related to Lambert (and attempts by Empower to coerce other co-defendants), as well as Empower's media campaign, demands an extension of discovery to permit Mr. Ludowig to investigate these interactions;

- There will be no prejudice to Empower because Empower received an extension for the same reasons, Empower created the circumstances necessitating the extension, and a host

of discovery, such as expert discovery and forensic examinations, has yet to be conducted; and

- Mr. Ludowig's forthcoming counterclaims arise from a contract at issue in this litigation and can be developed and brought within the same case within the continued discovery period and date proposed for new trial.

For these reasons, Defendant respectfully requests that the Court grant this Motion and enter the proposed order submitted herewith, which extends the deadlines set in ¶¶ 2b-6 of the Scheduling Order by approximately 90 days and establishes a November 2025 trial setting.

Dated: April 11, 2025.

**KABAT CHAPMAN & OZMER LLP**

*/s/ Aaron A. Wagner*
Aaron A. Wagner
Texas Bar No. 24037655
S.D. Texas Bar No. 3813191
KABAT CHAPMAN & OZMER, LLP
171 17th Street NW, Suite 1550
Atlanta, Georgia 30363
Tel: (404) 370-7300
Fax: (404) 400-7333
Email: awagner@kcozlaw.com

*Attorneys for Defendant,*
*Matthew Ludowig*

**<u>CERTIFICATE OF CONFERENCE</u>**

As detailed herein and demonstrated by exhibits attached hereto, counsel for Defendant conferred with Plaintiff's counsel by email regarding this motion on April 1, 2025 and April 3, 2025, and again on April 8, 2025. The Parties also met in person via Teams Meeting on April 4, 2025. Despite these attempts to reach agreement on the relief sought in this Motion, the Parties were unable to come to an agreement as evidenced by the email exchanges on April 8, 2025.


*/s/ Aaron A. Wagner*
Aaron A. Wagner


**<u>CERTIFICATE OF SERVICE</u>**

This certifies that on April 11, 2025, I filed the foregoing **DEFENDANT MATTHEW LUDOWIG'S MOTION FOR CONTINUANCE** with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to all attorneys of record.


*/s/ Aaron A. Wagner*
Aaron A. Wagner