# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| Empower Clinic Services, L.L.C., | |
| Plaintiff, | |
| v. | Case No. 4:23-cv-4123 |
| Bio Filling Solutions Inc. f/k/a Bio42 Clinical Filling Solutions, Inc., Hanson Irwin Group LLC, David Teer, Lisa Hudanich, Matthew Ludowig, Marc Hanson, Jerry Irwin, | |
| Defendants. | |

**DEFENDANT/COUNTERCLAIM PLAINTIFF MATTHEW LUDOWIG'S AMENDED ANSWER TO SECOND AMENDED COMPALINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

Defendant/Counterclaim Plaintiff Matthew Ludowig ("Ludowig") hereby submits the following Amended Answer to the Second Amended Complaint and Affirmative Defenses and Counterclaims against Plaintiff/Counterclaim Defendant Empower Clinical Services, L.L.C. ("Plaintiff" or "Empower Pharmacy").

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now, Defendant Matthew Ludowig ("Ludowig") and serves his Amended Answer and Affirmative Defenses in response to Plaintiff Empower Clinic Services, L.L.C.'s Second Amended Complaint and would show the Court as follows:

1

## RESPONSIVE PARAGRAPHS TO PLAINTIFF'S PLEADINGS

### I.    NATURE OF THE ACTION

1.    Ludowig admits that Plaintiff brings this action; Ludowig denies all other allegations contained in Paragraph 1 of the Second Amended Complaint.

2.    Ludowig denies the allegations of misconduct contained in Paragraph 2 of the Second Amended Complaint and denies Plaintiff is entitled to the relief sought. Ludowig admits that Plaintiff is seeking the relief it desires.

3.    Ludowig denies the allegations contained in Paragraph 3 of the Second Amended Complaint and denies Plaintiff is entitled to the relief sought. Ludowig admits that Plaintiff is seeking the relief it desires.

4.    Ludowig admits that there is an Agreed Preliminary Injunction Order (Dkt. 13) and Agreed Expedited Discovery Order (Dkt. 18). Ludowig denies that these Orders apply to him. Further, Ludowig denies that these Orders need modification.

5.    Ludowig denies generally the allegations contained in Paragraph 5 of the Second Amended Complaint and denies Plaintiff is entitled to the relief sought.

### II.    PARTIES

6.    Ludowig admits the allegations in Paragraph 6 of the Second Amended Complaint.

7.    Ludowig admits that Defendant BFS is already before the Court but notes that Defendant Bio Filling Solutions Inc. is no longer an active entity and has been wound down in accordance with Texas law.

8.    Ludowig admits that Defendant HIG is already before the Court but notes that Defendant Hanson Irwin Group LLC ("HIG") is no longer an active entity and has been wound down in accordance with Texas law.

9.      Ludowig admits the allegations in Paragraph 9 of the Second Amended Complaint.

10.     Ludowig admits the allegations in Paragraph 10 of the Second Amended Complaint.

11.     Ludowig admits the allegations in Paragraph 11 of the Second Amended Complaint.

12.     Ludowig admits the allegations in Paragraph 12 of the Second Amended Complaint.

13.     Ludowig admits the allegations in Paragraph 13 of the Second Amended Complaint.

14.     Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14 of the Second Amended Complaint, and, on that basis, denies the allegations.

### III.    JURISDICTION AND VENUE

15.     Ludowig admits the allegations in Paragraph 15 of the Second Amended Complaint.

16.     Ludowig admits that the Court has personal jurisdiction over Ludowig. Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 16 of the Second Amended Complaint, and, on that basis, denies the allegations.

17.     Ludowig admits that venue is proper in this forum but denies that Plaintiff has any causes of action against Ludowig or is entitled to any relief whatsoever against Ludowig.

## IV.    FACTUAL BACKGROUND

**A.    Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in heading "A" of the Second Amended Complaint, and, on that basis, denies the allegations.**

18.    Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18 of the Second Amended Complaint, and, on that basis, denies the allegations.

19.    Ludowig admits that David Teer, Lisa Hudanich, Matthew Ludowig, and Michael Lambert were employees of Empower at one time; otherwise, Ludowig denies the remainder of the allegations in Paragraph 19.

**B.    Ludowig admits that David Teer, Lisa Hudanich, Matthew Ludowig, and Michael Lambert were employees of Empower at one time, but otherwise denies that these Defendants agreed to terms of employment.**

20.    Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20 of the Second Amended Complaint, and, on that basis, denies the allegations.

21.    Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21 of the Second Amended Complaint, and, on that basis, denies the allegations.

22.    Ludowig admits that he began his employment with Empower on August 31, 2020 as in-house counsel. Ludowig admits that he reported to Shaun Noorian, Empower's CEO. Ludowig denies the remaining allegations in Paragraph 22 of the Second Amended Complaint.

23.    Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23 of the Second Amended Complaint, and, on that basis, denies the allegations.

**C.** **Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in heading "C" of the Second Amended Complaint, and, on that basis, denies the allegations.**

24.     Ludowig denies the allegations contained in Paragraph 24 of the Second Amended Complaint.

25.     Ludowig denies the allegations contained in Paragraph 25 of the Second Amended Complaint.

26.     Ludowig denies the allegations in Paragraph 26 of the Second Amended Complaint.

27.     Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27 of the Second Amended Complaint, and, on that basis, denies the allegations.

28.     Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28 of the Second Amended Complaint, and, on that basis, denies the allegations.

29.     Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29 of the Second Amended Complaint, and, on that basis, denies the allegations.

30.     Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30 of the Second Amended Complaint, and, on that basis, denies the allegations.

31.     Ludowig denies the allegations in Paragraph 31 of the Second Amended Complaint.

**D.** **Ludowig denies the allegations contained in heading "D" of the Second Amended Complaint.**

32.     Ludowig denies the allegations contained in Paragraph 32 of the Second Amended Complaint.

33.     Ludowig admits to communicating with the other defendants but denies the allegations in Paragraph 33 of the Second Amended Complaint.[1]

34.     Ludowig admits to meeting telephonically and via videoconference with defendants but denies the remaining allegations in Paragraph 34 of the Second Amended Complaint.

35.     Ludowig denies the allegations in Paragraph 35 of the Complaint.

36.     Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36 of the Second Amended Complaint, and, on that basis, denies the allegations.

37.     Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 37 of the Second Amended Complaint, and, on that basis, denies the allegations.

38.     Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 38 of the Second Amended Complaint, and, on that basis, denies the allegations.

39.     Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 39 of the Second Amended Complaint, and, on that basis, denies the allegations.

---

[1] Mr. Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in footnote 1 of the Second Amended Complaint, and, on that basis, denies the allegations.

40.     Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 40 of the Second Amended Complaint, and, on that basis, denies the allegations.

41.     Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41 of the Second Amended Complaint, and, on that basis, denies the allegations.

42.     Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42 of the Second Amended Complaint, and, on that basis, denies the allegations.

43.     Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43 of the Second Amended Complaint, and, on that basis, denies the allegations.

44.     Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 44 of the Second Amended Complaint, and, on that basis, denies the allegations.

45.     Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 45 of the Second Amended Complaint, and, on that basis, denies the allegations.

46.     Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 46 of the Second Amended Complaint, and, on that basis, denies the allegations.

47.     Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 47 of the Second Amended Complaint, and, on that basis, denies the allegations.

48.     Defendants deny the allegations contained in Paragraph 48 of the Second Amended Complaint.

**E.     Ludowig denies the allegations contained in heading "E."**

49.     Ludowig denies the allegations contained in Paragraph 49 of the Second Amended Complaint.

50.     Ludowig admits the registration for Bio42 Clinical Filling Solutions Inc. was filed on August 23, 2023, and identified Defendant Ludowig and Mr. Stephen Burrows as Directors. Ludowig further admits that Ludowig was involved in the leadership of Defendant BFS. Ludowig denies the remaining allegations contained in Paragraph 50 of the Second Amended Complaint.

51.     Ludowig denies the allegations contained in Paragraph 51 of the Second Amended Complaint.

52.     Ludowig admits the allegations contained in Paragraph 52 of the Second Amended Complaint and note that Defendant Bio Filling Solutions Inc. has been dissolved.

53.     Ludowig admits that Empower sent notice letters to Defendants. Ludowig denies the remaining allegations in Paragraph 53 of the Second Amended Complaint.

54.     Ludowig admits that Hanszen Laporte LLP was retained to represent defendants and that Hanszen Laporte had previously represented Empower. Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54 of the Second Amended Complaint, and, on that basis, denies the allegations.

55.    Ludowig admits the allegations contained in Paragraph 55 of the Second Amended Complaint.

56.    Ludowig admits to exploring other employment or business options in the summer of 2023. Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 56 of the Second Amended Complaint, and, on that basis, denies the allegations.

57.    Ludowig admits that draft investor decks exist, which speak for themselves. Ludowig denies the remaining allegations in Paragraph 57 of the Second Amended Complaint.

58.    Ludowig denies the allegations contained in Paragraph 58 of the Second Amended Complaint.

59.    Ludowig denies the allegations contained in Paragraph 59 of the Amended Complaint.

## V.    CLAIMS

### Count I: Violation of the Defend Trade Secrets Act

58.[2]    Ludowig incorporates his responses to the above paragraphs of the Second Amended Complaint as if fully restated herein.

59.    Ludowig denies that defendants are engaged in interstate commerce in the funding, development, marketing, and/or sale of their pharmaceutical products. Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the whether Empower engages in interstate commerce, and, on that basis, denies the allegations.

---

[2] Ludowig notes that this is the second paragraph 58, and the off numbering continues for twenty-seven more paragraphs and then reverts back to a third paragraph 60. For consistency, Ludowig is following Plaintiff's numbering in its Second Amended Complaint.

60.    Ludowig denies the allegations contained in Paragraph 60 of the Second Amended Complaint.

61.    Ludowig denies the allegations contained in Paragraph 61 of the Second Amended Complaint.

62.    Ludowig denies the allegations contained in Paragraph 62 of the Second Amended Complaint.

63.    Ludowig denies the allegations contained in Paragraph 63 of the Second Amended Complaint.

64.    Ludowig denies the allegations contained in Paragraph 64 of the Second Amended Complaint.

65.    Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 65 of the Second Amended Complaint, and, on that basis, denies the allegations.

66.    Ludowig denies the allegations contained in Paragraph 66 of the Second Amended Complaint.

67.    Ludowig denies the allegations contained in Paragraph 67 of the Second Amended Complaint.

68.    Ludowig denies the allegations contained in Paragraph 68 of the Second Amended Complaint.

69.    Ludowig denies the allegations contained in Paragraph 69 of the Second Amended Complaint.

70.    Ludowig denies the allegations contained in Paragraph 70 of the Second Amended Complaint.

71.     Ludowig denies the allegations contained in Paragraph 71 of the Second Amended Complaint.

72.     Ludowig denies the allegations contained in Paragraph 72 of the Second Amended Complaint.

**Count II: Violation of the Texas Uniform Trade Secrets Act**

73.     Ludowig incorporates his responses to the above paragraphs of the Second Amended Complaint as if fully restated herein.

74.     Ludowig denies the allegations contained in Paragraph 74 of the Second Amended Complaint.

75.     Ludowig denies the allegations contained in Paragraph 75 of the Second Amended Complaint.

76.     Ludowig denies the allegations contained in Paragraph 76 of the Second Amended Complaint.

77.     Ludowig denies the allegations contained in Paragraph 77 of the Second Amended Complaint.

78.     Ludowig denies the allegations contained in Paragraph 78 of the Second Amended Complaint.

79.     Ludowig denies the allegations contained in Paragraph 79 of the Second Amended Complaint.

80.     Ludowig denies the allegations contained in Paragraph 80 of the Second Amended Complaint.

81.     Ludowig denies the allegations contained in Paragraph 81 of the Second Amended Complaint.

82.     Ludowig denies the allegations contained in Paragraph 82 of the Second Amended Complaint.

83.     Ludowig denies the allegations contained in Paragraph 83 of the Second Amended Complaint.

84.     Ludowig denies the allegations contained in Paragraph 84 of the Second Amended Complaint.

85.     Ludowig denies the allegations contained in Paragraph 85 of the Amended Complaint and deny Plaintiff is entitled to the relief sought.

60.     Ludowig denies the allegations contained in Paragraph 60 of the Amended Complaint and deny Plaintiff is entitled to the relief sought.[3]

**Count III: Breach of Contract – Confidentiality and Non-Disclosure Agreement**

61.     Ludowig incorporates his responses to the above paragraphs of the Second Amended Complaint as if fully restated herein.

62.     Ludowig admits he signed a non-compete agreement with Empower but specifically denies that it was a condition of his employment, denies that it is enforceable, denies that it was ancillary to an otherwise enforceable agreement, and denies that there was any consideration.  Ludowig denies the remaining allegations in Paragraph 62 of the Second Amended Complaint.

63.     Paragraph 63 is blank and does not require a response.

64.     Ludowig denies the allegations contained in Paragraph 64 of the Second Amended Complaint.

---

[3] Ludowig notes that this is the second Paragraph 60 and there are a number of other paragraph numbers that Plaintiff misnumbers or repeats. For consistency, Ludowig follows the numbers set forth in Plaintiff's Second Amended Complaint.

65.     Ludowig denies the allegations contained in Paragraph 65 of the Second Amended Complaint, as the agreements speak for themselves, are not enforceable, and Empower does not have confidential or trade secret information.

66.     Ludowig denies the allegations contained in Paragraph 66 of the Second Amended Complaint, as the agreements speak for themselves, are not enforceable, and Empower does not have confidential or trade secret information.

67.     Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 67 of the Second Amended Complaint, and, on that basis, denies the allegations.

68.     Ludowig denies the allegations contained in Paragraph 68 of the Second Amended Complaint.

69.     Ludowig denies the allegations contained in Paragraph 69 of the Second Amended Complaint.

70.     Ludowig denies the allegations contained in Paragraph 70 of the Second Amended Complaint.

71.     Ludowig denies the allegations contained in Paragraph 71 of the Second Amended Complaint.

### Count IV: Breach of Contract – Non-Solicitation

72.     Ludowig incorporates his responses to the above paragraphs of the Second Amended Complaint as if fully restated herein.

73.     Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 73 of the Second Amended Complaint, and, on that basis, denies the allegations.

74.     Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 74 of the Second Amended Complaint, and, on that basis, denies the allegations.

75.     Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 75 of the Second Amended Complaint, and, on that basis, denies the allegations.

76.     Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 76 of the Second Amended Complaint, and, on that basis, denies the allegations.

**Count V: Breach of Contract – Non-Competition**

77.     Ludowig incorporates his responses to the above paragraphs of the Second Amended Complaint as if fully restated herein.

78.     Ludowig admits he signed a non-compete agreement with Empower but specifically denies that it was a condition of his employment, denies that it is enforceable, denies that it was ancillary to an otherwise enforceable agreement, and denies that there was any consideration. Ludowig denies the remaining allegations in Paragraph 78 of the Second Amended Complaint.

79.     Ludowig denies the allegations contained in Paragraph 79 of the Second Amended Complaint, as the agreements speak for themselves, are not enforceable, and Empower does not have confidential or trade secret information.

80.     Ludowig denies the allegations contained in Paragraph 80 of the Second Amended Complaint, as the agreements speak for themselves, are not enforceable, and Empower does not have confidential or trade secret information.

81.     Ludowig denies the allegations contained in Paragraph 81 of the Second Amended Complaint, as the agreements speak for themselves, are not enforceable, and Empower does not have confidential or trade secret information.

82.     Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 82 of the Second Amended Complaint, and, on that basis, denies the allegations.

83.     Ludowig denies the allegations contained in Paragraph 83 of the Second Amended Complaint.

84.     Ludowig denies the allegations contained in Paragraph 84 of the Second Amended Complaint.

## Count VI: Unjust Enrichment

85.     Ludowig incorporates his responses to the above paragraphs of the Second Amended Complaint as if fully restated herein

86.     Ludowig denies the allegations contained in Paragraph 86 of the Second Amended Complaint.

87.     Ludowig denies the allegations contained in Paragraph 87 of the Second Amended Complaint.

88.     Ludowig denies the allegations contained in Paragraph 88 of the Second Amended Complaint.

89.     Ludowig denies the allegations contained in Paragraph 89 of the Second Amended Complaint.

**Count VIII: Tortious Interference[4]**

90.    Ludowig incorporates his responses to the above paragraphs of the Second Amended Complaint as if fully restated herein.

91.    Ludowig denies the allegations contained in Paragraph 91 of the Second Amended Complaint.

92.    Ludowig denies the allegations contained in Paragraph 92 of the Second Amended Complaint.

93.    Ludowig denies the allegations contained in Paragraph 93 of the Second Amended Complaint.

94.    Ludowig denies the allegations contained in Paragraph 94 of the Second Amended Complaint.

95.    Ludowig denies the allegations contained in Paragraph 95 of the Second Amended Complaint.

**Count IX: Breach of Fiduciary Duty**

96.    Ludowig incorporates his responses to the above paragraphs of the Second Amended Complaint as if fully restated herein.

97.    Ludowig denies the allegations contained in Paragraph 97 of the Second Amended Complaint.

98.    Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 98 of the Second Amended Complaint, and, on that basis, denies the allegations.

---

[4] Ludowig notes that Plaintiffs misnumbered their causes of action as well. There is no "Count VII." For consistency, Ludowig refers to the numbers Plaintiff references in its Second Amended Complaint.

99. Paragraph 99 of the Second Amended Complaint requires the making of a legal conclusion which is not proper and does not require an admission or a denial. Ludowig denies the allegations contained in Paragraph 99 of the Second Amended Complaint.

100. Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 100 of the Second Amended Complaint, and, on that basis, denies the allegations.

101. Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 101 of the Second Amended Complaint, and, on that basis, denies the allegations.

102. Ludowig denies the allegations contained in Paragraph 102 of the Second Amended Complaint.

103. Ludowig denies the allegations contained in Paragraph 103 of the Second Amended Complaint.

104. Ludowig denies the allegations contained in Paragraph 104 of the Second Amended Complaint.

**Count X: Aiding and Abetting Breach of Fiduciary Duty**

105. Ludowig incorporates his responses to the above paragraphs of the Second Amended Complaint as if fully restated herein.

106. Ludowig denies the allegations contained in Paragraph 106 of the Second Amended Complaint.

107. Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 107 of the Second Amended Complaint, and, on that basis, denies the allegations.

108.    Ludowig denies the allegations contained in Paragraph 108 of the Second Amended Complaint.

109.    Ludowig denies the allegations contained in Paragraph 109 of the Second Amended Complaint.

110.    Paragraph 110 of the Second Amended Complaint requires the making of a legal conclusion which is not proper and does not require an admission or a denial. Ludowig denies the allegations contained in Paragraph 110 of the Second Amended Complaint.

111.    Ludowig denies the allegations contained in Paragraph 111 of the Second Amended Complaint.

112.    Ludowig denies the allegations contained in Paragraph 112 of the Second Amended Complaint.

113.    Ludowig denies the allegations contained in Paragraph 113 of the Second Amended Complaint. Further, the federal courts do not recognize an aiding-and-abetting claim because no such claim exists in Texas. *Christopher v. Depuy Orthopaedics, Inc. (In re Depuy Orthopaedics, Inc.)*, 888 F.3d 753, 782 (5th Cir. 2018); see also *Midwestern Cattle Mktg., LLC v. Legend Bank N.A.*, 800 Fed. Appx. 239, 250 (5th Cir. 2020); *Taylor v. Rothstein Kass & Co., PLLC*, Civil Action No. 3:19-CV-1594-D, 2020 WL 554583, at *5 (N.D. Tex. Feb. 4, 2020).

114.    Ludowig denies the allegations contained in Paragraph 114 of the Second Amended Complaint.

## Count XI: Civil Conspiracy

115.    Ludowig incorporates his responses to the above paragraphs of the Second Amended Complaint as if fully restated herein.

116.    Ludowig admits that Defendants are two more persons, but denies the implications of any remaining allegations contained in Paragraph 116 of the Second Amended Complaint.

117.    Ludowig denies the allegations contained in Paragraph 117 of the Second Amended Complaint.

118.    Ludowig denies the allegations contained in Paragraph 118 of the Second Amended Complaint.

119.    Ludowig denies the allegations contained in Paragraph 119 of the Second Amended Complaint.

120.    Ludowig denies the allegations contained in Paragraph 120 of the Second Amended Complaint and deny Plaintiff is entitled to the relief sought.

121.    Ludowig denies the allegations contained in Paragraph 121 of the Second Amended Complaint and deny Plaintiff is entitled to the relief sought.

## VI.    JURY DEMAND

122.    Like Plaintiff, Ludowig demands a trial by jury.

## VII.    ATTORNEY FEES

123.    Ludowig denies that Plaintiff is entitled to attorneys' fees.

## VIII.    PLAINTIFF'S PRAYER

124.    Ludowig denies that Plaintiff is entitled to the relief requested.

## IX.    GENERAL DENIAL

125.    Ludowig denies each and every allegation, whether in numbered, misnumbered, or unnumbered paragraphs set forth in Plaintiff's Complaint that are not specifically admitted herein.

## X.     DEFENSES AND AFFIRMATIVE DEFENSES

1.     Ludowig contends that Plaintiff has suffered no damages as a result of Defendants' alleged conduct.[5]

2.     Ludowig's acts or omissions were not the actual or proximate cause of Plaintiff's damages, if any.

3.     The Non-Compete clause is unenforceable against Ludowig as it is overly broad, against public policy and an illegal restraint on trade, and lacks adequate consideration. Further Ludowig's non-compete clause, if any, was forgiven as part of a settlement of Ludowig's compensation and severance.

4.     Ludowig's claims are or may be barred in whole or in part by the doctrines of settlement, release, unclean hands, laches, and/or accord and satisfaction.

5.     Plaintiff's claims may be barred, in whole or in part, by the doctrines of waiver, promissory estoppel, equitable estoppel, and/or acquiescence.

6.     Plaintiff's claims are barred, in whole or in part, by its own fraud, illegality, bad faith, and breach of the duty of good faith and fair dealing.

7.     Plaintiff's claims are subject to set off and recoupment.

8.     Plaintiff's alleged damages, if any, are attributable in whole or in part to Plaintiff's own conduct or the conduct of other persons or entities beyond the control of Ludowig and not to the action or inactions of Ludowig.

---

[5] Due to Plaintiff's misnumbering of paragraphs throughout the Second Amended Complaint, Ludowig begins his affirmative defenses paragraphs at "1" to try to avoid confusion.

9.      The Non-Solicitation clause is unenforceable against Ludowig as it is overly broad and lacks adequate consideration. Further Defendant Ludowig's non-solicitation clause, if any, was forgiven as part of a settlement of Ludowig's compensation and severance.

10.      Ludowig alleges Plaintiff is not entitled to recover on its claims under the Defend Trade Secrets Act and the Texas Uniform Trade Secrets Act as the information at issue is not considered a trade secret. Further, the information has no independent economic value.

11.      To the extent that Ludowig acquired Plaintiff's trade secrets or other confidential information, Ludowig did not acquire them by improper means nor did they utilize same for any benefit nor did they intend to take or utilize Plaintiff's trade secrets.

12.      Plaintiff cannot recover on any of its claims relating to the taking or utilizing of trade secrets as the materials at issue do not constitute trade secrets or that were already known by any of the Defendants outside of their work with Plaintiff.

13.      Ludowig is excused from performance of any obligations under any agreement with Plaintiff, because Plaintiff materially breached its agreements with Ludowig and departed from their terms.

14.      Any alleged non-competition or non-solicitation agreement between Ludowig and Plaintiff is void as against public policy and an illegal restraint on trade.

15.      The covenants not to compete that Plaintiff seeks to enforce are unenforceable because they are not ancillary to or part of an otherwise enforceable agreement at the time the agreed was made, do not contain reasonable limitations as to time, geographical area, and scope of activity to be restrained, there are no legitimate business interests to protect, and any covenants impose a greater restraint than is necessary to protect the goodwill or other business interest of Plaintiff.

16.     The covenants not to compete are unenforceable and not binding on Ludowig because the provisions are unconstitutional under the Texas Constitution.

17.     The contracts are unenforceable and not binding on Ludowig because its terms are unconscionable.

18.     Plaintiff's claims are barred, in whole or in part, by the doctrine of mistake.

19.     Plaintiff's claims are barred because federal law, 16 C.F.R. § 910 *et seq.* preempts Texas's state laws to the extent Texas holds covenants not to compete are enforceable.

20.     Plaintiff cannot recover attorneys' fees against Ludowig.

21.     Ludowig is entitled to recover his attorneys' fees and costs for defending himself in this action.

22.     Any award of exemplary or punitive damages sought by Plaintiff would violate the due process and excessive fine clauses of the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution, as well as the Constitution of the State of Texas.

23.     Plaintiff cannot claim "trade secret" protection to any information, processes, procedures, or materials which Defendants already possessed prior to coming to work with of for Plaintiff.

24.     Plaintiff cannot recover on any breach of fiduciary claim or claim which relies on the imposition of a fiduciary relationship against Ludowig as they were not fiduciaries of Plaintiff.

25.     Plaintiff has failed to state a claim upon which relief can be granted.

26.     Plaintiff cannot recover on any of its claims relating to the taking or utilizing of trade secrets if they were provided by Plaintiff itself.

27.     Plaintiff cannot claim "trade secret" protection to any information which it ultimately abandons. Further, Plaintiff cannot recover on an unjust enrichment claim on information which does not enrich its recipient or possessor.

28.     Ludowig further asserts the defenses of:

a.     excessive demand;

b.     Plaintiff seeking recovery to which it is not entitled;

c.     abandonment;

d.     information that is common knowledge;

e.     information which is publicly available;

f.     information which is in the public domain;

g.     no breach of contract;

h.     no breach of fiduciary duty;

i.     no fiduciary duty;

j.     no conspiracy;

k.     no damages;

l.     excessive attorneys' fees;

m.     no demand;

n.     no presentment;

o.     failure of conditions precedent;

p.     no improper use; and,

q.     no intent - inadvertent or unintentional possession of materials.

## **PRAYER**

Wherefore, premises considered, Ludowig prays this Court to grant judgment in his favor against Plaintiff with regard to the allegations and claims contained in the Second Amended Complaint; that Plaintiff take nothing for damages from Ludowig; that Ludowig be awarded his costs, including reasonable attorney's fees; and for such other and further relief as this Court deems just and proper.

## COUNTERCLAIMS

## INTRODUCTION

1.      Empower Pharmacy, who purports to be our "nation's largest, most advanced 503A compounding pharmacy and 503B outsourcing facility," advertises that its "mission is to provide access to the best compound medication solutions for patients, practitioners, and pharmacies."[6] In reality, however, Mr. Ludowig—Empower's former general counsel—learned that (and eventually confronted Empower about) Empower knowingly disregards FDA and state board of pharmacy statutes and regulations, including, but not limited to, purchasing food, cosmetic, and animal grade (as opposed to pharmaceutical grade) active pharmaceutical ingredients.

2.      Contrary to "ensuring patients and providers have access to the highest quality medications with the utmost safety and compliance," Empower uses cheap and inappropriate ingredients to compound medications that consumers inject without any knowledge that the ingredients are inappropriate for human-injectable drug products pursuant to both FDA and state board of pharmacy regulations. Empower also fails to disclose to any consumer that it routinely uses non-pharmaceutical grade active pharmaceutical ingredients (API), including food grade, animal grade, or cosmetic grade API because it is cheaper than pharmaceutical grade, or will purchase and use the "cheapest" API whenever it is available without doing any quality assurance tests to ensure the API is safe for patients.

3.      Empower does this for the sake of padding its profit margin, adding to its market share, and scaling its business to add to the weight-loss medication fad that created an unprecedented boon to the compounding pharmaceutical industry.

---

[6] Empower Pharmacy, *About Us*, https://www.empowerpharmacy.com/ (last visited April 11, 2025).

4.      All the while, Empower has no concern for patient safety or access to medications. Empower even goes as far as retaliating against employees (like Matthew Ludowig) who confront Empower about its misleading claims and substandard compounded medications.

5.      Finally, when Empower discovered that Mr. Ludowig, like another former employee (Samuel Pray) who recently exposed these illegal practices, was a threat to expose Empower's illegal and misleading compounding practices, upon information and belief, Empower coordinated a deeply funded media campaign to disparage and attempt to discredit Mr. Ludowig in blatant violation of a General Waiver and Release that Empower entered into with Mr. Ludowig after it retaliated against him.

6.      Accordingly, Mr. Ludowig files these counterclaims to recover damages for Empower's breach of the General Waiver and Release's non-disparagement and release provisions and to recover damages caused by Empower's intentional infliction of emotional distress and wrongful discharge of Mr. Ludowig for his refusal to participate in illegal activities

## JURISDICTION AND VENUE

7.      The Court has subject matter jurisdiction over all the claims alleged herein because they are part of the same case and controversy and derive from a common nucleus of operative facts as the Plaintiff's federal question claims in this case. *See* ECF No. 92 (alleging causes of action under a federal question pursuant to 28 U.S.C. § 1331).

8.      The Court has personal jurisdiction over Plaintiff/Counter-Claim Defendant Empower.

9.      Venue is proper in this forum under 28 U.S.C. 1391(b)(1)-(2) because a substantial part of the acts giving rise to the claims occurred in Houston, Texas.

## PARTIES

10.    Empower Clinic Services, L.L.C. d/b/a Empower Pharmacy ("Empower" or "Empower Pharmacy") is a Texas limited liability company with its principal place of business in Texas. Empower Pharmacy's headquarters is located at 7601 North Cam Houston Parkway, Suite 100, Houston, Texas 77064.

11.    Matthew Ludowig is an individual residing in Cypress, Texas.

## FACTUAL BACKGROUND

**A.    Empower Pharmacy Overview**

12.    Empower Pharmacy is <u>not</u> a pharmaceutical company that expends resources on research and development to create breakthrough drugs.

13.    Empower Pharmacy is a 503A compounding pharmacy and 503B outsourcing facility—both 503A and 503B facilities are exemptions that allow companies like Empower to bypass the FDA approval process and dispense or distribute essentially copies of patented, commercial, drug products.[7]

14.    As a 503A compounding pharmacy, Empower Pharmacy is *supposed* to dispense copies of commercial drug products when they are listed on the FDA's drug shortage list, or dispense compounded drug products that produce a clinically significant difference for an identified, individual prescription, such as when a patient is allergic to a dye in a patented or generic medication.

15.    As a 503B outsourcing facility, Empower is *supposed* to distribute compounded medications in bulk to further support the U.S. pharmaceutical supply chain by preventing

---

[7] *E.g.*, Empower Pharmacy, *What is a Compounding Pharmacy? 503A vs 503B*, https://www.empowerpharmacy.com/compound-medication/news/what-is-a-compounding-pharmacy/ (last visited April 15, 2025).

ongoing drug shortages for medications that are in high demand but short supply, such as GLP-1 weight loss drugs from 2022-2024.

16.    In addition to selling GLP-1 weight loss drugs, Empower dispenses medically necessary drugs, like acne or rosacea creams.

17.    Although Empower Pharmacy does not directly receive reimbursement from Medicare, Tricare, or Medicaid programs, Empower dispenses compounded medications to patients and practitioners and distributes compounded medications to physicians and pharmacies, causing those individuals or entities in some instances to seek reimbursement from Medicare, Medicaid, or Tricare for the cost of the medications.[8]

18.    Empower also accepts flexible spending account (FSA) and health savings account (HSA) payments for its products.[9]

19.    As shown below, however, upon information and belief, Empower Pharmacy regularly ignores and exceeds the bounds of state and federal regulations, and more concernedly deliberately misleads thousands of consumers every day regarding the quality of their products and efforts to reduce patient costs. Indeed, only weeks ago, Eli Lilly sued Empower for its blatantly false and misleading advertisements throughout its website.[10] Similarly, Empower has

---

[8] *E.g.,* DOJ, Ageless Men's Health, LLC to Pay $1.6 Million to the Government for Overbilling Medicare and Tricare, https://www.justice.gov/usao-wdtn/pr/ageless-men-s-health-llc-pay-16-million-government-overbilling-medicare-and-tricare (last visited April 15, 2025).

[9]    Empower,    *FAQs*,    https://www.empowerpharmacy.com/who-we-serve/faqs/, https://www.empowerpharmacy.com/who-we-serve/faqs/ (last visited April 15, 2025)

[10] *See Eli Lilly and Company v. Empower Clinic Services, LLC d/b/a Empower Pharmacy, Empower Clinic Services New Jersey LLC d/b/a Empower Pharma*, No. 2:25-cv-02183 (D.N.J. Apr. 1, 2025).

filed and maintained several lawsuits against former employees and competitors for the express purpose of preserving its "profit margin" without any regard for patient cost or safety.

20.     These counterclaims focus on Empower's retaliation against Mr. Ludowig for confronting Empower about its illegal practices and his refusal to participate in illegal activities, and Empower's subsequent disparagement and attempts to discredit Mr. Ludowig in violation of a General Waiver and Release.

## B.     Compounding Pharmaceutical Companies' History of Creating Public Health Outbreaks Leads to New Legislation

21.     Compounding Pharmacies like Empower have a tortured history of creating public health epidemics.

22.     By way of example, in 2007, three people died from multiple organ failure after a Texas compounding pharmacy sold extremely potent colchine that was as much as 640 percent labeled strength.[11]

23.     In 2011, a Texas compounding pharmacy associated with contaminated total parenteral nutrition products was linked to 19 cases of serratis marcescens bacterial infections, which caused nine deaths.[12]

24.     In 2012, one of the worst public health outbreaks connected to the compounding pharmaceutical industry occurred. A fungal meningitis outbreak associated with a New England compounding pharmacy caused hundreds of infections and over one-hundred deaths.

---

[11] DOJ, *Dallas Compounding Pharmacy Owner Pleads Guilt in Connection with Misbranded Drug Shipment*, https://www.justice.gov/archives/opa/pr/dallas-compounding-pharmacy-owner-pleads-guilty-connection-misbranded-drug-shipment (last visited April 15, 2025).

[12] National Institute of Health, *Outbreak of Serratia Marcescens Bloodstream Infections in Patients Receiving Parenteral Nutrition Prepared by a Compounding Pharmacy*, https://pubmed.ncbi.nlm.nih.gov/24729502/ (last visited April 15, 2015).

25.    This 2012 outbreak triggered Congress to enact legislation, which Empower describes as "new standards," requiring compounding pharmacies to track and report the supply chain of their ingredients, as well as seeking to lower drug prices and avoid drug shortages.[13]



## C.    Empower's Repeated Quality Failures Leading Up to Mr. Ludowig's Employment

26.    Empower represents that it sources all medications and active pharmaceutical ingredients (API) from FDA-registered suppliers and manufacturers.[14]

**Where are your ingredients sourced from?**

We source all our medications and active pharmaceutical ingredients from FDA-registered suppliers and manufacturers.

---

[13] Empower Pharmacy, *Who We Are*, https://www.empowerpharmacy.com/about/our-story/ (last visited April 15, 2025).

[14] Empower Pharmacy, *FAQs*, https://www.empowerpharmacy.com/who-we-serve/faqs/?faq=practitioners (last visited April 15, 2025). Notably, while this statement may be technically true, it is deliberately misleading consumers to believe that "FDA-registered" implies that the products provided by these entities have been FDA approved, tested, or meet any quality standards. The reality is that any entity can be FDA-registered by submitting a form and paying a fee. *E.g.*, 21 U.S.C. § 360 (providing registration requirements); FDA, Electronic Drug Registration, https://www.fda.gov/drugs/electronic-drug-registration-and-listing-system-edrls/electronic-drug-registration-and-listing-instructions (last visited April 16, 2025) (explaining simple process to register to become distributor of active pharmaceutical ingredients).

27.    Empower Pharmacy's website purports that Empower "adheres to stringent regulations" set by State Boards of Pharmacy, the FDA, and USP, is accredited by the Pharmacy Compounding Accreditation Board (PCAB), FDA registered, and cGMP compliant; and that Empower prioritizes "safety and quality in all its practices."[15] It even claims that it conducts voluntary quality testing and "ensures that each product meets high quality standards."[16]



28.    Many of Empower Pharmacy's claims are false. Empower Pharmacy has a long history of violating state and federal regulations. Since the enactment of the Drug Quality and Security Act, state and federal agencies have repeatedly observed Empower Pharmacy's sub-standard quality of products.

---

[15]    Empower Pharmacy, Safety and Quality, available at: https://www.empowerpharmacy.com/compound-medication/news/empower-pharmacy-compounding-personalized-healthcare/#:~:text=Safety%20and%20Quality,product%20meets%20high%20quality%20standards. (last viewed April 10, 2025).

[16]    *Id.*

29.     Over the past ten years, the FDA and numerous State Boards of Pharmacy have observed quality deficiencies and regulatory violations when auditing Empower Pharmacy's facilities—even resulting in Empower Pharmacy losing licensure in some states.

30.     For example, in 2015, the FDA observed an injectable medication lot was contaminated with bacteria yet Empower lacked records showing it investigated the contamination.[17]

31.     In 2017, the FDA issued a Warning Letter due to Empower Pharmacy producing sterile products in "insanitary conditions"—"put[ting] patients at risk."[18]

32.     In 2020, only months before Mr. Ludowig joined Empower Pharmacy, the FDA noticed that "aseptic processing areas are deficient," among a host of other deficiencies.[19]

**D.     Empower Hires Ludowig, a Former Assistant District Attorney, as Empower's Sole In-House Attorney**

33.     Empower hired Mr. Ludowig on August 30, 2020 as its General Counsel.

34.     At the time, Empower Pharmacy represented that it was the "nation's largest human drug compounding pharmacy, licensed in all 50 states, had broken ground on the "largest and most advanced 503A pharmacy in the nation," and was operating a 503B outsourcing facility at current Good Manufacturing (cGMP) standards.

---

[17]     FDA Form 483 to Empower Clinic Services, LLC (Nov. 25, 2015), https://www.fda.gov/media/95350/download.

[18] Letter from Monica Mazwell, Acting Program Division Director, FDA Office of Pharmaceutical Quality Operations Division II, to Arta Shaun Noorian, Owner, Empower Pharmacy, (May 25, 2017),                https://www.fda.gov/inspections-copmliance-enforcement-and-criminal-investigations/warning-letters/empower-clinic-services-llc-516718-05252017.

[19]     FDA Form 483 to Empower Clinic Services (Mar. 6, 2020), https://www.fda.gov/media/137544/download.

35.     Mr. Ludowig, formerly an Assistant District Attorney in Bexar County, Texas, had no prior transactional, healthcare, regulatory, or compliance experience in the pharmaceutical industry.

36.     Yet, at the time, Empower Pharmacy was navigating COVID's impact on its operations, defending against regulators' attempts to bring the company's operations into compliance with state and federal laws, seeking to expand nationally and internationally, restructuring the company's management, and searching for outside sources of capital.

37.     Simply put, by any reasonable measure, Mr. Ludowig had a significant learning curve to function as the sole in-house attorney responsible for all of the "nation's largest human drug compounding pharmacy's" legal needs.

38.     Mr. Ludowig eventually learned that was exactly the point. In Mr. Ludowig's opinion, Empower's CEO's goal in hiring him was to create a buffer between himself and whomever Empower was burning through as their head of compliance at the time.

39.     Mr. Ludowig would eventually learn that Empower's CEO used him as a pawn. Empower's CEO needed a buffer from Empower's head of compliance. In particular, upon information and belief, Empower deliberately targets inexperienced, agreeable attorneys who have little experience in the pharmaceutical industry to serve as this buffer so that they will not push back on Empower's illegal compounding operations.

40.     That way, Empower's CEO could use its general counsel to shield him from knowing violations of state and federal regulations. Indeed, Mr. Ludowig never described his job as ensuring compliance with state and federal regulations, but instead as "defending against regulatory overreach" and "[l]eading Empower's compliance department" which included

"assessment of risk tolerance"—*i.e.*, determining the punishment, if any, for knowing violation of state and federal regulations.

**E.    Empower Pharmacy's Persistent Regulatory Failures Continue to Provide Mr. Ludowig with Substantial Experience in the Industry**

41.    Indeed, Empower Pharmacy did not hire Ludowig, or create a legal department to remedy its state and federal regulatory violations, but instead with hopes of finding "yes men" who would provide whatever legal opinions Shaun Noorian would demand to justify Empower's conduct. It turned out the Ludowig was not willing to be that man.

42.    Over time, due to the number of damning state and federal audits of Empower's "state of the art" facilities, Mr. Ludowig developed knowledge of Empower's malfeasance, such as Empower constructing facilities to look "state of the art" solely for advertisement purposes on its website (and impress or even mislead FDA and state board auditors when they arrived at the location), purchasing active pharmaceutical ingredients from surreptitious Gmail and Yahoo accounts, and ultimately searching for ways to conceal its numerous FDA violations from inspectors.

43.    For instance, in 2021, the FDA issued yet another Warning Letter. This time, the FDA observed Empower Pharmacy continued to lack adverse reporting policies and procedures, *i.e.*, Empower Pharmacy was not properly investigating and reporting customers who had adverse reactions to their products.

44.    In 2022, the FDA observed "rust and/or discoloration" on carts and tables where aseptic drug products are filled, failure to maintain "procedures designed to prevent microbiological contamination of drug products," ***and failure to maintain "documentation to show that all active pharmaceutical ingredients (API) and excipients [were] suitable for use in drug products, including control for endotoxins*.**" (emphasis added). The FDA also observed

continued deficiencies in Empower Pharmacy's adverse reporting policies and procedures, and Empower Pharmacy's failure to sterilize drug product containers and closures.

45.     In 2022, Empower Pharmacy also faced a California complaint, which ultimately resulted in California revoking Empower Pharmacy's license, due to Empower selling injectable products that contained food or cosmetic grade ingredients.[20]

46.     Iowa also charged Empower Pharmacy with failing to exercise professional judgment regarding the accuracy, validity, and authenticity of prescription drug orders and failure to follow standards related drug compounding, which resulted in Empower Pharmacy's license being placed on probation.

47.     The Colorado Board of Pharmacy has also cited Empower Pharmacy for violating other states' regulatory requirements.

48.     Empower Pharmacy has also received fines or notices of noncompliance from the Boards of Pharmacy for Alabama, Florida, and Pennsylvania.

49.     In the face of losing licensure and regulatory agencies citing Empower Pharmacy for substantial regulatory violations, Empower Pharmacy nevertheless sought and received private equity funding that, in addition to cutting corners and producing medications with substandard and inappropriate ingredients, helped Empower scale its business to grow into a $500,000,000.00+ pharmaceutical company that fills hundreds of thousands of mass-produced prescriptions each year and ships medications to consumers nationwide.[21]

---

[20] *See In the Matter of: Empower Clinic Svcs, LLC*, Cal. Agency Case No. 7117 (commenced May 18, 2022) (available online at https://www.pharmacy.ca.gov/enforcement/fy2021/ac207117.)

[21] Empower Pharmacy, *Our Story*, https://www.empowerpharmacy.com/about/our-story/ (last visited April 16, 2025).

50.    This growth was due in large part to the FDA placing GLP-1 weight loss drugs, like Mounjaro, Wegovy and Ozempic, on the drug shortage list—*i.e.*, Empower Pharmacy was permitted to essentially copy these drugs for mass production.[22]

51.    Unfortunately, during this growth, Empower developed a corporate culture and associated business practices that focused on circumventing FDA and state-level regulations and laws concerning the safety of the drugs it produces, to maximize profits at the expense of its consumer's health.

52.    For instance, Empower's former of Director of Supply Chain confirms that Empower's CEO instructed Empower to purchase adulterated, knock-off ingredients right after FDA audits ended, because the FDA was less likely to return for an inspection at that time. Empower's former Director of Supply Chain also confirmed Empower leadership actively creates and enforces a culture of disguise. Empower's former Director of Supply Chain also confirms that Empower seeks to conceal its regulatory violations through intimidation tactics that prevent employees from speaking out.

53.    Mr. Ludowig witnessed Empower Pharmacy's illegal business practices first-hand and also had a front seat to Empower's intimidation tactics.

54.    Mr. Ludowig witnessed Empower Pharmacy Leadership's directives to order cosmetic and food grade—not pharmaceutical grade—active pharmaceutical ingredients for the sake of cutting costs and scaling its business.

55.    Mr. Ludowig witnessed directives to not create records, SOPs, or policies, so that Empower later would not be found to have violated its own policies or procedures.

---

[22] Even with the FDA taking these GLP-1 weight loss drugs off the drug shortage list, Empower Pharmacy continues to mass produce them, according to its Chief Operating Officer.

56.     Mr. Ludowig witnessed false or misleading reporting to potential investors.

57.     He complained about all of this and was eventually discharged when he refused to participate in the illegal activity.

**F.    Mr. Ludowig Confronts Empower's Illegal Compounding Practices**

58.     The turning point in Mr. Ludowig's employment came when he garnered the courage to confront Empower's CEO about Empower Pharmacy's illegal production of GLP-1s.

59.     In early 2023, the FDA issued a directive ordering compounding pharmacies, like Empower, to stop using semaglutide salts in GLP-1s, as the compounding pharmacies must use the tested, approved (but more expensive) semaglutide base form to produce GLP-1s.

60.     As was customary, Empower's CEO Shaun Noorian asked Mr. Ludowig to evaluate the directive, with the goal of developing a basis to allow Empower Pharmacy to continue using semaglutide salts to develop watered-down, impure GLP-1s.

61.     Mr. Ludowig's review of the directive came to a contrary conclusion. In opposition to Empower's CEO's instruction, Mr. Ludowig prepared a memorandum to Empower Pharmacy Leadership explaining that Empower Pharmacy would be illegally compounding GLP-1s if Empower Pharmacy continued using semaglutide salts in their GLP-1s. In other words, Mr. Ludowig did not condone or participate in the illegal activity.

62.     Empower Pharmacy's CEO expressed frustration with Mr. Ludowig not conjuring up a "legal" basis for Empower to compound GLP-1s using salts.

63.     Within weeks, Empower Pharmacy demoted Mr. Ludowig due to Mr. Ludowig's refusal to participate in Empower Pharmacy Leadership's plan to continue illegal production of GLP-1s.

64.     Less than two weeks after Mr. Ludowig's refusal to participate in the illegal compounding practices, Ludowig was told by the CEO, in the midst of a large leadership meeting to discuss the prior year's success no less, that he was being demoted and replaced. Empower's CEO realized that Mr. Ludowig now understood the extent of the company's illegal activity and was no longer going to be complicit in it. So, he began the processing of his removal.

65.     At first, Ludowig was told that Empower was replacing him so that he could gain more experience to do the job that he had been doing for more than two years. Yet, it was apparent that Empower CEO Noorian had already decided to fire Ludowig but needed to string Ludowig along until he could find another attorney who would be a yes man.

66.     Meanwhile, Empower continued to produce GLP-1s with semaglutide salts in contravention of all FDA guidance and over Ludowig's objections.

67.     Upon information and belief, Empower has never reported to an agency, the FDA, or to the general public, that the sources of its ingredients are sometimes unverified, or that it uses semaglutide salts and other inappropriate ingredients in its illegal compounding practices.

**G.     Ludowig Confronts Empower About Misleading Investors**

68.     Empower Pharmacy's retaliation against Mr. Ludowig for his refusal to participate in illegal conduct did not stop there.

69.     Shortly after Empower demoted Mr. Ludowig, Empower's CEO hired interim General Counsel, Len McGill. McGill, like Ludowig, had no relevant pharmaceutical industry, compounding, or regulatory experience in the industry prior to his arrival at Empower. But he did have transactional experience.

70.     Around July of 2023, it appeared to Ludowig that Empower was gearing up to mislead investors during its efforts to secure "friends and family" funding.

71.     These efforts were the result of Empower's inability to secure private equity funding because such investors did not consider Empower a worthy investment.

72.     Ludowig raising concerns about the illegality surrounding these efforts culminated in a meeting in July 2023 where Ludowig explained his concerns to McGill and then other c-suite executives. Ludowig later ensured that his concerns were captured in a memorandum that outlined Ludowig's concerns about Empower's failure to make material disclosures about the business related to fundraising.

73.     Again, Ludowig made it clear that he would not condone or participate in illegal activity. This was the proverbial last straw.

74.     At that point, Empower's CEO Noorian ensured Ludowig's departure was accelerated.

**H.     Ludowig and Empower Pharmacy entered into a General Waiver and Release.**

75.     Ultimately, in an effort to shield its own illegal conduct, in August of 2023 Empower offered to pay Ludowig a severance package in exchange for a release of any claims he might have against Empower.

76.     In September 2023, Empower and Mr. Ludowig entered into a General Waiver and Release (the "Severance Agreement" or "Contract") that Empower and the parties agreed was a "reconsideration of the General Waiver and Release and the Phantom Plan," which are the now superseded contracts that Empower bases its Complaint against Mr. Ludowig upon. *See* Ex. A; ECF 92.

77.     One term of this General Waiver and Release has recently become particularly relevant for these counterclaims.

78.     The General Waiver and Release contains a non-disparagement clause wherein Empower agreed it "shall not at any time now or in the future make, publish, or communicate to any person or entity or in any public forum any defamatory, maliciously false, or *disparaging remarks, comments, or statements concerning [Ludowig]."*  Ex. A ¶ 7 (emphasis added).

79.     The General Waiver and Release also includes a broad release of Ludowig for any matters related to his Employment with Empower or involving any facts which occurred prior to the execution of the release. Ex. A ¶ 2.

## I.     Empower Pharmacy Files this Lawsuit

80.     In disregard for the General Waiver and Release releasing claims related to Mr. Ludowig's employment, Empower amended its Complaint to add Mr. Ludowig as a defendant in December 2023.

81.     Empower's lawsuit against Mr. Ludowig cites to contracts that the General Waiver and Release supersedes and asserts causes of action released in the General Waiver and Release. It also relies substantially on matters related to Ludowig's Employment with Empower and involves facts that occurred on or prior the date Ludowig signed the Release.

82.     Absent from Empower's pleadings is any reference to the General Waiver and Release that Empower signed in September 2023.

83.     Absent from Empower's pleadings is any mention of the General Waiver and Release's provision that releases all claims that Empower had against Mr. Ludowig based upon his employment with Empower or otherwise involving any facts that occurred on or prior to the date that the Release was signed.

**J.    Empower Pharmacy Violates the General Waiver and Release's Disparagement Provision**

84.    After losing the preliminary injunction hearing and drawing out discovery on all clearly released claims for over a year, Empower decided to take a new tack to attack Mr. Ludowig.

85.    Upon information and belief, Empower coordinated a media campaign to disparage Mr. Ludowig.

86.    On January 30, 2025, Empower filed a SEALED Motion for Sanctions, alleging Mr. Ludowig destroyed evidence.

87.    To be clear, the filing of the sealed motion is not the basis for this counterclaim, but rather what came next—Empower leaking portions of the SEALED motion to the media in violation of this Court's Protective Order for the purpose of disparaging Ludowig and in violation of the Release's non-disparagement term.

88.    That very day, the Texas Lawyer magazine published an article that directly quotes and discusses at length Empower's SEALED MOTION for sanctions.

89.    The article titled "General Counsel Accused of Destroying Evidence," which, upon information and belief, was the result of Empower communicating to the Texas Lawyer Empower's allegations of Mr. Ludowig purportedly deleting electronic files and destroying computer equipment. In fact, it was not only the allegations that were reported, but also the Texas Lawyer directly "quoted" from the SEALED Motion itself.

90.    Other articles also highlight that Empower has coordinated a media campaign to disparage Ludowig.

91.    For example, one article lists a public relations firm as the media "contact" for articles discussing Empower's allegations against Mr. Ludowig.

92.     This PR firm, which, upon information and belief, Empower hired to disparage Mr. Ludowig, makes no secret of its prejudice-imposing intent and tactics, as it openly boasts:

> Fortune magazine has called our founder and Chairman "*one of the most accomplished practitioners of the dark arts of public relations*." The Financial Times called him, "***The spin doctor's spin doctor***. The Editor of Los Angeles Magazine said, "Sitrick is a pure product of the 24-hour news cycle, of a culture dominated and defined by newspapers, magazines, TV, radio, the Internet of the never-ending noise streaming into our lives. Beyond his aggressiveness, beyond his toughness, *what distinguishes Sitrick is his ability to play the media to his client's advantage*."

https://www.sitrick.com/ (last accessed April 4, 2025) (emphasis added).

93.     Upon information and belief, Empower is also paying for these disparaging articles to remain at the top of Google searches and to populate on broader google searches about Empower and Ludowig for the purpose of disparaging Mr. Ludowig.

94.     In sum, Empower has and continues to breach the General Waiver and Release by continuously and maliciously making, publishing, or communicating "defamatory, maliciously false, or disparaging remarks, comments, or statements concerning [Mr. Ludowig]" by providing the media and its public relations firm with a copy of its own sealed motion for the sole purpose of generating negative and disparaging media publications about Mr. Ludowig, as well as paying to ensure that more of the public views these articles. *See* ECF No. 105. It has also gone so far as to hire others, such as Sitrick and Company, to do the same on its behalf.

95.     This behavior breaches Empower's General Waiver and Release with Ludowig and also the Protective Order entered by this Court.  (ECF 19.)

**K.     Empower initiated the instant lawsuit to harass and discredit Ludowig, not to protect actual trade secrets or confidential information, and has done the same to others who reported Empower's illegal conduct.**

96.     Empower Pharmacy has categorically singled out the few individuals who dared to stand up to the Company's illegal conduct and used the judicial process—including this

lawsuit—to attempt to intimidate, discredit, and ultimately silence Mr. Ludowig and other employees who identified and spoke out against Empower's illegal actions. Yet, Empower has not sued many former Empower employees with restrictive covenants who are working for Empower's direct competitors because, it would appear, none of those individuals have confronted Empower about its illegal activities.

97.    In this regard, Ludowig does not seek to bring a claim based upon the filing of this lawsuit, but instead will offer that Empower's selective enforcement of its restrictive covenants illustrates that the information Empower alleges is "trade secret" or "confidential" is not really protected or confidential at all. This lawsuit is about Empower retaliating against Mr. Ludowig's refusal to participate in illegal activity by harming his future employment prospects and ability to earn a living; it is not an effort to protect trade secrets or confidential information.

98.    Accordingly, Mr. Ludowig files these counterclaims to (1) recover damages resulting from Empower's breach of the General Waiver and Release, (2) recover damages from Empower for the severe emotional distress caused by its extreme and outrageous conduct, and (3) recover damages caused by Empower's retaliatory discharge of Mr. Ludowig for refusing to perform illegal acts.

### COUNTERCLAIM I:
### BREACH OF CONTRACT
### (Breach of Release)

99.    Defendant/Counter-Claim Plaintiff Ludowig realleges and incorporates by reference the allegations contained in paragraphs 1 through 98 above of the Counterclaim, as if fully set forth herein.

100.    On September 1, 2023, Empower Pharmacy and Ludowig entered into a valid, enforceable, and binding General Waiver and Release ("Contract" or "Agreement"), a copy of

which is attached hereto as Exhibit A, and which is made a part hereof and incorporated herein by reference.

101.    In exchange for Ludowig agreeing to release Empower Pharmacy and not sue it, Empower agreed to release Ludowig from and not sue him for "any and all Claims that it or its successors and assigns ever had, now have or may have against [him], whether known or unknown to [him], by reason of [his] employment and/or the cessation of [his] employment with the Company, or otherwise involving facts that occurred on or prior to the date that [he] signed this Release." *See* Exhibit A, ¶ 2.

102.    Mr. Ludowig performed and fulfilled his obligations under the Contract.

103.    On or about December 16, 2023, and again in 2024 and early 2025, Plaintiff Empower Pharmacy materially and substantially breached the Contract.

104.    Specifically, Plaintiff Empower Pharmacy initiated the instant case against Ludowig alleging claims it purports to have by reason of his employment and/or the cessation of his employment.  Empower also alleges claims based upon conduct that allegedly occurred during Ludowig's employment and prior to Empower agreeing to a general release and waiver of claims against Ludowig.

105.    This material breach, in addition to earlier defamation by Empower's COO and CEO which also was a material breach of the agreement, excused Mr. Ludowig's continued performance under the Contract. To wit, it has been reported that immediately after Ludowig's final day of employment, Shaun Noorian and Jonathan Abrarpour started spreading baseless rumors that Mr. Ludowig and Libby Baney (outside regulatory counsel for Empower) had had an affair. These baseless allegations were made to intentionally defame and disparage Ludowig in violation of the Contract.

106.     As a result of Empower's breach, Mr. Ludowig has suffered damages in excess of $250,000.00, including suffering severe emotional distress such as anxiety, outrage, sleeplessness, mental distraction, loss of appetite, frustration, anger, and other associated symptoms. He has suffered economic damages in the form of lost business opportunities, clients, and wages in an amount to be proven at trial. He was also forced to leave his employer, Revive, and lost substantial income therefrom. He has also had to deal with anxiety related to his service in the military and potential impact on his service as a lawyer. He has also been forced to retain counsel and defend against these frivolous claims.

107.     Accordingly, Mr. Ludowig is entitled to recover his damages, and costs, including reasonable attorneys' fees.

### COUNTERCLAIM II:
### BREACH OF CONTRACT
### (Breach of Non-Defamation and Non-Disparagement Agreements)

108.     Defendant/Counter-Claim Plaintiff Ludowig realleges and incorporates by references the allegations contained in paragraphs 1 through 107 above of the Counterclaim, as if fully set forth herein.

109.     On September 1, 2023, Empower Pharmacy and Ludowig entered into a valid, enforceable, and binding Contract. *See* Exhibit A.

110.     In exchange for Ludowig agreeing to release Empower Pharmacy and not sue it, Empower paid Ludowig $109,490.74, executed a general release and waiver in favor of Ludowig, and agreed that it would "not at any time now or in the future make, publish, or communicate to any person or entity or in any public forum any defamatory, maliciously false, or disparaging remarks, comments, or statements concerning [Ludowig]…" *See* Exhibit A, ¶¶ 1, 3, 7.

111.     Ludowig performed and fulfilled his obligations under the Contract.

112.    At some point in late 2024 and early 2025, Empower Pharmacy breached the contract by intentionally making, publishing, and communicating defamatory, maliciously false, and disparaging remarks, comments and statements about Mr. Ludowig to others, including to employees and agents of Sitrick and Company, the media, and eventually the public.

113.    Shaun Noorian, on behalf of the Company while acting as Empower's CEO, also filed a bar complaint against Mr. Ludowig that was decided in Mr. Ludowig's favor and dismissed by the Board of Disciplinary Appeals appointed by the Supreme Court of Texas, which found that, even if Mr. Noorian's allegations were true and accurate (which they were not), they do not constitute professional misconduct under the Texas Disciplinary Rules of Professional Conduct. Upon information and belief, Mr. Noorian elicited the assistance of Empower's current General Counsel, Edgar Gonzalez, in crafting the baseless complaint. Noorian made these baseless allegations to the Texas State Bar for no other purpose than to harass, defame, disparage, and harm Ludowig out of spite and in violation of the parties' Contract.

114.    As a result of Empower's breach, Mr. Ludowig has suffered damages in excess of $250,000.00, including suffering severe emotional distress such as anxiety, outrage, sleeplessness, mental distraction, loss of appetite, frustration, anger, and other associated symptoms. He has suffered economic damages in the form of lost business opportunities, clients, and wages in an amount to be proven at trial. He was also forced to leave his employer, Revive and lost substantial income therefrom. He has also had to suffer severe anxiety related to his service in the military and potential impact on his service as a lawyer. He has also been forced to retain counsel and defend against these frivolous claims.

115.    Accordingly, Mr. Ludowig is entitled to recover his damages, and costs, including reasonable attorneys' fees.

## COUNTERCLAIM III:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

116.    Defendant/Counter-Claim Plaintiff Ludowig realleges and incorporates by references the allegations contained in paragraphs 1 through 115 above, as it fully set forth herein.

117.    Empower Pharmacy's conduct in publishing statements to multiple media outlets alleging that Mr. Ludowig knowingly destroyed evidence was reckless and intentional in that Empower Pharmacy intended the consequences of its act and intended such statements to cause Ludowig emotional distress.

118.    Similarly, Empower filed a baseless and malicious bar complaint against Mr. Ludowig with the intent to cause severe emotional distress to Mr. Ludowig and his family.

119.    Empower Pharmacy's conduct was extreme and outrageous, in that the statements were demonstrably false and were intentionally published to the media in violation of the General Waiver and Release, with the intention that said false statements would be published in news articles, for the express purpose of discrediting and causing emotional harm to Mr. Ludowig.

120.    Empower Pharmacy's conduct was also extreme and outrageous, in that the statements were provided in violation of a valid protective order issued by this Court.

121.    The conduct was also extreme and outrageous because Empower knew that it could not legitimately file a lawsuit or seek any damages from Mr. Ludowig due to its General Release in favor of Ludowig, but still proceeded to publish the statements, file the bar complaint, and bring this lawsuit based upon alleged conduct within the scope of the release.

122.    Empower not only caused the statements to be made but they actually hired a public relations firm notorious for spinning the media for its client's purposes to ensure that their goal of disparaging Ludowig was as effective as possible.

123.    Mr. Ludowig is a lawyer and officer in the United States Air Force, two professions demanding the highest moral character, and Empower knew this. They hired a firm to target Mr. Ludowig in a manner designed to threaten both aspects of his livelihood and to do it in a manner that was harmful, impactful, and designed to cause severe and emotional distress and also sway the media and potential jury pool against him.

124.    Shaun Noorian, in particular, knew that Mr. Ludowig would be extremely susceptible to attacks of this nature and that it would cause Mr. Ludowig severe emotional distress due to his interactions with Mr. Ludowig, and their discussions about Mr. Ludowig's military career and reputation as an officer in the Air Force and lawyer.

125.    Mr. Noorian knew that Mr. Ludowig held these matters in the highest regard and would consider any attacks on his character, loyalty, duty, and profession, as extremely sensitive. Mr. Noorian knew where and how to hurt Mr. Ludowig the most—by attacking his character publicly. Empower's conduct was intentionally designed to inflict as much distress as possible on Mr. Ludowig and his family.

126.    Empower Pharmacy's conduct proximately caused severe emotional distress to Mr. Ludowig and Mr. Ludowig's mental anguish and severe emotional distress was the foreseeable result of Empower Pharmacy hiring a professional communications firm to publish news articles alleging that Mr. Ludowig destroyed evidence of his own alleged wrongdoing.

127.    Upon information and belief, Empower went so far as to provide sealed court records to news reporters, in violation of the Court's own protective order, for the purpose of causing emotional harm to and discrediting Mr. Ludowig. Never once has Empower disclosed that Mr. Ludowig was **not** "caught" destroying evidence, but instead that Mr. Ludowig voluntarily explained that the evidence at issue was discarded at a time when Mr. Ludowig was under no

suspicion for any illicit conduct and Empower had released him from any claims of wrongdoing. It was also after Mr. Ludowig had already departed Empower and uploaded any of Empower's information on the hard drive to Empower which was accessible. In other words, not only did Mr. Ludowig not have anything to hide or anticipate that a lawsuit would require him to preserve evidence but Empower also had no proper means to bring any of this information into the public domain due to the Release—but did so anyway. And in doing so, they mischaracterized the situation to make Ludowig appear to be a villain, which he is not, rather than the Air Force officer and attorney cleared by the Board of Discipline that he actually is.

128.    The emotional distress that Mr. Ludowig suffered was so severe and extreme that it could not properly be remedied under any other cause of action. Mr. Ludowig not only suffered his own severe distress, but additional distress as he observed the impact that the conduct had on Mr. Ludowig's wife, children, and other family members. This too was Empower's intent—to cause as much emotional distress as possible by any means.

129.    Empower Pharmacy's wrongful conduct caused the following damages: general damages arising from past pain and suffering and past mental anguish and special damages arising from a loss of past earning capacity.

130.    As a result of Empower's breach, Mr. Ludowig has suffered damages in excess of $250,000.00, including suffering severe emotional distress such as anxiety, outrage, sleeplessness, mental distraction, loss of appetite, frustration, anger, and other associated symptoms. He has suffered economic damages in the form of lost business opportunities, clients, and wages in an amount to be proven at trial. He was also forced to leave his employer, Revive, and lost substantial income therefrom. He has also suffered extreme anxiety related to his service in the military and

potential impact on his service as a lawyer. He has also been forced to retain counsel and defend against these frivolous claims.

131.    Plaintiff seeks damages within the jurisdictional limits of this Court.

132.    Plaintiff's injury resulted from Empower's malice, which entitles Plaintiff to exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a)(2).

## COUNTERCLAIM IV:
## RETALIATION AND WRONGFUL DISCHARGE UNDER *Sabine Pilot*[23]

133.    Defendant/Counter-Claim Plaintiff Ludowig realleges and incorporates by references the allegations contained in paragraphs 1 through 132 above, as it fully set forth herein.

134.    Mr. Ludowig had knowledge of Empower's illegal activity, including its illegal compounding practices, its misrepresentations and misleading statements made to potential investors, and its efforts to deceive the state and federal agencies, as well as the public, about the nature of its business practices and operations. In fact, Mr. Ludowig had been ordered to participate in many of these illegal activities multiple times despite his objections.

135.    Specifically, Ludowig identified to Empower executives that it could not use adulterated food or cosmetic grade API and that its false reports to the FDA regarding the source of its ingredients, as well as responses to FDA audits, were illegal and defrauding the government.

136.    Ludowig also advised Empower that its use of sodium based semaglutide was illegal and contrary to FDA guidance.

137.    Ludowig also reported to Empower's executives that their false and misleading statements made to potential friends and family investors was illegal.

---

[23] *See Sabine Pilot Service, Inc. v. Hauck*, 687 S.W. 2d 733 (Tex. 1985).

138.    After these reports, and Ludowig's refusal to participate in this illegal activity, he was demoted and discharged.

139.    Ludowig identified that Empower's fraudulent and illegal conduct was particularly concerning because (1) Empower was submitting false reports to the FDA about the source of its ingredients, and (2) having consumers pay for (and ultimately the government reimburse for some) medications with misrepresented and/or undisclosed ingredients was fraudulent and illegal.

140.    Empower also knew that its false reporting, false statements to the public via its website, and false advertising campaign were causing patients and other entities to submit claims for reimbursement under Medicaid, Medicare, and Tricare in violation of the False Claims Act.[24]

141.    Yet, when Mr. Ludowig finally put his foot down, documented the illegality and made it clear that he would no longer participate in any of the illegal activity, Empower demoted and constructively terminated him.

142.    Prior to that point, and throughout his employment, he was praised as "saving the company's" butt and bailing them out many times—never once receiving any criticism for his performance. Indeed, the sole reason Empower demoted and constructively fired Ludowig was because he refused to participate in illegal activity.

143.    Making the termination worse, Empower demoted and terminated Mr. Ludowig with complete knowledge that the firing was unlawful and then proceeded to harass Ludowig, going so far as to smear his name in public forums by suggesting he had had an illicit affair with an outside regulatory counsel (who coincidentally, or not, also happened to identify illegal behavior at Empower) and then by hiring a PR firm to blast Ludowig in the media with leaked

---

[24] *E.g.,* DOJ, Ageless Men's Health, LLC to Pay $1.6 Million to the Government for Overbilling Medicare and Tricare, https://www.justice.gov/usao-wdtn/pr/ageless-men-s-health-llc-pay-16-million-government-overbilling-medicare-and-tricare (last visited April 15, 2025.)

Motions and defamatory statements in conjunction with this suit. Through Sean Noorian, Empower filed a baseless bar complaint designed to threaten Mr. Ludowig's career. This lawsuit is also an example of knowingly unlawful behavior in light of the Release which Empower provided to Mr. Ludowig, promising that it would Release him from any possible claim related to his employment at Empower or based upon conduct which occurred prior to him signing the Release.

144.    Empower has gone to great lengths to interfere with Ludowig's future employment, including causing him to lose employment with Revive and to suffer fear for his security clearance and position within the United States Air Force. These actions went well beyond a simple demotion or wrongful termination, but were malicious and intended to cause Mr. Ludowig serious harm far beyond the termination.

145.    This calculated, malicious, and intentional harassment and conduct by Empower entitles Mr. Ludowig to recovery of punitive damages.

146.    Mr. Ludowig suffered both economic damages in the form of lost employment opportunities with Revive and others, lost wages, and suffered severe emotional distress as a result of Empower's actions, including anxiety, worry, sleeplessness, frustration, despair, worry about the well-being of his family and livelihood, fear about the future of his license to practice law and serve in the military, along with the costs associated with defending against this lawsuit and all of Empower's other harassing behaviors.

147.    Mr. Ludowig seeks recovery of all damages available to him as a result of Empower's wrongful termination, including compensatory damages, exemplary damages, punitive damages, and attorney's fees and litigation costs.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Defendant/Counterclaim Plaintiff Matthew Ludowig prays for judgment as follows:

1.      That Plaintiff take nothing from Mr. Ludowig by reason of its Second Amended Complaint and that judgment be entered in favor of Mr. Ludowig;

2.      For dismissal of Plaintiff's claims with prejudice;

3.      That the Court award Mr. Ludowig damages, costs, and reasonable attorneys' fees caused by its breaches of contract;

4.      The Court award Mr. Ludowig all damages available to him, including actual, exemplary and punitive damages, attorneys' fees and costs for his other causes of action; and

5.      For such other relief as the Court deems just and proper.

Dated:  April 18, 2025.

*/s/ Aaron A. Wagner*
Aaron A. Wagner
Texas Bar No. 24037655
KABAT CHAPMAN & OZMER LLP
171 17th Street NW, Suite 1550
Atlanta, Georgia 30363
Telephone: (404) 400-7300
Facsimile: (404) 400-7333
awagner@kcozlaw.com

*Attorneys for Defendant Matthew Ludowig*

## CERTIFICATE OF SERVICE

This certifies that on April 18, 2025, a true and correct copy of the foregoing **DEFENDANT MATTHEW LUDOWIG'S AMENDED ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES AND TO ASSERT COUNTERCLAIMS** was forwarded to all counsel of record pursuant to the Federal Rules of Civil Procedure.


Dated:  April 18, 2025

*/s/ Aaron A. Wagner*
Aaron A. Wagner