UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Empower Clinic Services, L.L.C., <br>     Plaintiff, <br><br> v. <br><br> Bio Filling Solutions Inc. f/k/a/ Bio42 Clinical Filling Solutions, Inc., *et al*. <br>     Defendants. | Case No. 4:23-cv-4123 <br><br> **Jury Trial Demanded** |

## EMPOWER CLINIC SERVICES, L.L.C.'S RESPONSE TO DEFENDANTS' OBJECTIONS TO AND MOTIONS TO STRIKE PLAINTIFF'S EXPERTS AND EXPERT REPORTS

### I.    SUMMARY OF ARGUMENT

Defendants Bio Filling Solutions Inc. f/k/a Bio42 Clinical Filling Solutions Inc., Hanson Irwin Group LLC, David Teer, Lisa Hudanich, Marc Hanson, Jerry Irwin, and Matthew Ludowig (collectively "Defendants") decided not to retain experts in this case. Having decided to present their case to the jury without the assistance of experts, Defendants now seek to improperly "level" the playing field at trial by moving to prevent Empower Clinic Services, L.L.C. ("Empower") from presenting its highly qualified experts, Dr. Denis Boyle and Mr. Ryan LaMotta, to the jury. *See* Dkt. 135; Dkt. 140 ("Defendants' Motions" or the "Motions"). Defendants' gambit should be rejected.

Defendants' Motions ignore the substance of Dr. Boyle and Mr. LaMotta's reports, citing only two paragraphs from Dr. Boyle's one-hundred eleven page report and three paragraphs from LaMotta's seventy-five page report. *See* Dkt. 135 at 4–7. Defendants cherry-pick a couple out-of-context sentences, including a single sentence from Dr. Boyle's "Summary of Opinions" section, *see, e.g.*, Dkt. 135 at 5, to paint a dramatic, but entirely inaccurate, picture of Dr. Boyle and Mr. LaMotta's opinions. Based on this superficial analysis, Defendants argue Dr. Boyle and Mr.

LaMotta are usurping the role of the jury and label the entirety of Dr. Boyle and Mr. LaMotta's detailed reports "conclusory," unhelpful, unreliable, and littered with "improper legal conclusions." *See, e.g.*, Dkt. 135 at 4–7; Dkt. 140 at 3.

Nothing could be further from the truth. Both Dr. Boyle and Mr. LaMotta are highly qualified expert witnesses who thoroughly reviewed and analyzed the underlying facts in this case and, through the lens of their expertise, rendered opinions that will provide helpful, and in some cases necessary, context to aid the jury in rendering judgment on both liability and damages. Indeed, a cursory review of Dr. Boyle and Mr. LaMotta's reports demonstrates that Defendants' characterizations from the cherry-picked sentences are misleading. As such, there is no merit to Defendants' claims that Dr. Boyle and Mr. LaMotta are improperly rendering legal conclusions or invading the role of the jury.

Equally troubling, Defendants failed to conduct any legal analysis in support of their arguments. Outside of background citations that address the appropriate scope of expert testimony, *see* Dkt. 135 at 2–3, and several citations discussing trade secret law generally, *see id.* at 3–4, fn. 4, the Motions do not cite to a ***single*** case, much less binding precedent, in arguing that Dr. Boyle and Mr. LaMotta's opinions should be excluded. For good reason. As discussed below, there is no legal support for the exclusion of Dr. Boyle and Mr. LaMotta's opinions, which are well within the bounds of permissible expert testimony.

At the end of the day, Defendants' criticisms of Dr. Boyle and Mr. LaMotta's opinions in this case "are more properly suited to vigorous cross examination and presentation of contrary evidence than the exclusion of testimony from two undisputedly qualified experts." *Axip Energy Servs. LP v. CSI Acquisition Co. LLC*, 2021 WL 4709930, at *1 (S.D. Tex. Aug. 30, 2021). Accordingly, Defendants' Motions should be denied.

## II. STANDARD OF REVIEW

In determining the admissibility of expert testimony, courts are narrowly tasked with making "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579, 592–593 (1993). The focus "must be solely on principles and methodology, not the conclusions they generate." *Axip Energy Servs.*, 2021 WL 4709930, at *1. Indeed, exclusion is "the exception rather than the rule." *See Bulox v. CooperSurgical Inc.*, 2025 WL 642245, at *2 (S.D. Tex. Feb. 27, 2025) (quoting *Puga v. RCX Sols., Inc.*, 922 F. 3d 285, 293 (5th Cir. 2019)). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" is the more appropriate method of addressing even "shaky but admissible" expert testimony. *Id.* (quoting *Daubert*, 509 U.S. at 596); *see also Barone v. Ethicon Inc.*, 2022 WL 22869754, at *3 (S.D. Tex. Mar 29, 2022) ("Typically, juries should 'hear the expert's testimony and decide whether the predicate facts are accurate.'") (quoting *U.S. v. 14.38 Acres of Land*, 80 F. 3d 1074, 1077 (5th Cir. 1996) (cleaned up)).

An expert is allowed to opine on subjects that embrace an ultimate issue. *See* Fed. R. Evid. 704 ("An opinion is not objectionable just because it embraces an ultimate issue."). However, "an expert may never render conclusions of law." *See, e.g.*, *Goodman v. Harris County*, 571 F.3d 388, 399 (5th Cir. 2009).

### III. ANALYSIS

Defendants' Motions seek to strike the opinions of two of Empower's three experts: Dr. Denis Boyle, Empower's liability expert, and Mr. Ryan LaMotta, Empower's damages expert.[1] Defendants do not allege that either Dr. Boyle or Mr. LaMotta are not qualified to render expert opinions in this case. Instead, Defendants' Motions argue that Dr. Boyle and Mr. LaMotta should be barred from testifying because they offer opinions that are either legally improper or unsupported by the factual record. Dkt. 135 at 1; Dkt. 140 at 3 (arguing that Dr. Boyle and Mr. LaMotta's opinions are also not reliable). Mr. Ludowig further alleges, without any legal support, that Empower is "estopped" from seeking damages in this case. *See* Dkt. 140 at 2–3.

Defendants' Motions are both factually inaccurate and wrong on the law. Both Dr. Boyle and Mr. LaMotta offer opinions that are rooted in their relevant experience, result from a detailed, reliable analysis of the factual record, and are appropriate under the law. At most, Defendants' criticisms go to the weight, not the admissibility, of Dr. Boyle and Mr. LaMotta's opinions, and, as such, are best handled through cross-examination, not exclusion. *See Axip Energy Servs.*, 2021 WL 4709930, at *1.

#### A. Dr. Boyle and Mr. LaMotta are Qualified

Defendants do not challenge the qualifications of Empower's experts. For good reason. Dr. Boyle has a Masters in Biochemistry, a Ph.D. in Chemical Pathology (Medical Biochemistry), and has over forty years of experience in the biopharmaceutical industry, including serving as a Principal Scientist at The Monsanto Company, a senior management executive at Pfizer, and as the Director of Protein Production and Director of Process Development at Promega Corporation.

---

[1] Despite alleging that Empower's third expert, James Pooley, was also "retained to provide 'expert testimony' to support what does not exist; a claim of damages suffered by Plaintiff Empower," *see* Dkt. 135 at 3, Defendants do not seek to strike Mr. Pooley's opinions.

He now works as a biologics consultant and founded Essential Bio Consulting, now CMC Biopharma Consulting, "a consulting company focusing on biologics development and manufacturing consulting services to biotechnology clients." *See, e.g.*, Dkt. 135-1 at ¶¶ 9–23. In addition, Dr. Boyle has served as an expert in the biopharmaceutical industry in a number of court cases and arbitrations within the last five years, and provided court-accepted expert opinion testimony on several occasions during that period, including in connection with a trade secret dispute. *See id.* at Ex. 1.

Mr. LaMotta has both an MBA and a BBA from Baylor University's Hankamer School of Business. He has fifteen-plus years of experience as a business advisor and consultant on economic and damages issues. Mr. LaMotta is also a Certified Licensing Professional, a member of the National Association for Business Economics and the Houston Intellectual Property Law Association, and is a co-author of the Trade Secret Damages chapter in the book *Calculating and Proving Damages*. *See, e.g.*, Dkt. 135-2 at ¶¶ 2–4. Mr. LaMotta has similarly provided court accepted expert opinion testimony on a variety of economic and damages issues in courts around the country, including on the issue of damages and unjust enrichment arising from trade secret misappropriation. *Id.* at Attachment 1.0. Given their experience and credentials, both Dr. Boyle and Mr. LaMotta are indisputably qualified to testify about the opinions contained in their reports.

### B.     Dr. Boyle's Liability Opinions are Relevant, Reliable, and Admissible

Defendants argue that Dr. Boyle has improperly opined that Empower's Asserted Trade Secrets constitute protectable trade secrets under the DTSA and the TUTSA and that Defendants misappropriated those trade secrets. Dkt. 135 at 5–6. Not so.

Dr. Boyle has not opined, nor will he testify, that Empower's Asserted Trade Secrets

constitute protectable trade secrets under either the DTSA or the TUTSA.[2] To support the argument that he has, Defendants cherry-picked a single sentence from the summary of Dr. Boyle's opinions. *See id.* at 5. Dr. Boyle's reference to "trade secrets" in that sentence, however, is just a shorthand reference to Empower's Asserted Trade Secrets, not him opining that Empower's Asserted Trade Secrets constitute protectable trade secrets under either the DTSA or the TUTSA. *See* Dkt. 135-1 at ¶ 2 ("Counsel for Empower have asked me to provide an independent analysis of its confidential and proprietary information, *i.e.*, its trade secrets").

Rather than opining that Empower's Asserted Trade Secrets constitute protectable trade secrets, Dr. Boyle opines and intends to testify, based on his experience, about the underlying factors[3] the jury will analyze to determine whether Empower's Asserted Trade Secrets constitute protectable trade secrets under either the DTSA or the TUTSA. *See Sunrgy, LLC v. Alfaro*, 2024 WL 4953430, at *9 (S.D. Tex. Dec. 3, 2024) ("Both the DTSA and TUTSA require that: (1) the owner of the trade secret takes 'reasonable measures to keep such information secret;' and (2) 'the information derives independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic

---

[2] Even if Dr. Boyle did intend to testify that Empower's Asserted Trade Secrets constitute protectable trade secrets under the DTSA or TUTSA—which he will not—the case law cited by Defendants establishes that such testimony is, in fact, admissible. *See Wellogix, Inc. v. Accenture, LLP*, 716 F. 3d 867, 881 (5th Cir. 2013) (expert's testimony as to "whether [plaintiff's] source code ***was a trade secret***" was admissible) (emphasis added).

[3] Factors considered when determining the existence of a protectable trade secret include: "(1) the extent to which the information is known outside of [the plaintiff's] business; (2) the extent to which it is known by employees and others involved in [its] business; (3) the extent of the measures taken by [it] to guard the secrecy of the information; (4) the value of the information to [it] and to [its] competitors; (5) the amount of effort or money expended by [it] in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." *See Sunrgy, LLC*, 2024 WL 4953430, at *9 (quoting *In re Bass*, 113 S.W.3d 735, 739–40 (Tex. 2003).

value from the disclosure o[r] use of the information.'") (citations omitted).

For example, based on his experience in the biopharmaceutical industry, Dr. Boyle offers opinions regarding, *inter alia*, the value and general unavailability of Empower's Asserted Trade Secrets, *see* Dkt. 135-1 at ¶¶ 57–62, 80–82, the reasonableness of the measures Empower took to protect its confidential and proprietary information, *id.* at ¶¶ 63–79, and the benefit Empower's Asserted Trade Secrets would have provided Defendants. *Id.* at ¶¶ 143, 196, 198, 201. Such opinions and testimony are entirely appropriate for an expert. *E.g.*, *Joe N. Pratt Ins. v. Doane*, 2009 WL 5220646, at *4 (S.D. Tex. Dec. 30, 2009) (expert's testimony regarding the underlying factors relevant to determining whether something constitutes a protectable trade secrets was admissible); *Cincom Sys., Inc. v. Labware, Inc.*, 2024 WL 3926256, at *6 (S.D. Ohio Aug. 22, 2024) (expert testimony regarding whether the trade secret was publicly available found admissible because experts possess "wide latitude to opine in their fields") (citation omitted); *see also Flock v. Scripto-Tokay Corp.*, 2001 WL 36390120, at *1 (S.D. Tex. Sept. 28, 2001) (expert may "testify concerning his analyses of subsidiary factual issues.").

In contrast, Dr. Boyle neither opines nor intends to testify that Defendants misappropriated Empower's Asserted Trade Secrets. Such an opinion is an improper legal conclusion. *See Trinseo, S.A. v. Harper*, 2023 WL 8283186, at *1 (S.D. Tex. Nov. 30, 2023) (expert "testimony that someone 'misappropriated' the trade secret" is improper). For this reason, that opinion is not in Dr. Boyle's expert report.

What Dr. Boyle has opined on and intends to testify about is Defendants' acquisition, disclosure, and use of Empower's Asserted Trade Secrets. *See, e.g.*, Dkt. 135-1 at ¶¶ 140–178. For example, Dr. Boyle analyzes the Defendants' acquisition, dissemination, and use of Empower's Asserted Trade Secrets through the lens of his significant experience in the biopharmaceutical

industry to opine, *inter alia*, that there was no legitimate business reason for Defendants' possession and distribution of Empower's materials, the benefit Defendants received from use of Empower's Asserted Trade Secrets, and that Defendants should have implemented measures to prevent the use of Empower's Asserted Trade Secrets. *Id.* at ¶¶ 116, 118, 123, 140–177, 197; *see also, e.g., id.* at ¶ 139 (opining that the evidence discussed in his report demonstrated that Defendants acquired, disseminated, and used Empower's Asserted Trade Secrets). Contrary to Defendants' arguments, such testimony is appropriate. *See Wellogix, Inc.*, 716 F. 3d at 876–78, 881–82 (expert properly allowed to testify about acquisition and use of trade secrets at issue); *see also Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, 2020 WL 5822064, at *2 (S.D.N.Y. Sept. 30, 2020) (permitting liability expert to, "based on his industry experience, provide testimony on . . . whether [defendant] used the trade secrets at issue.").

Mr. Ludowig's assertion that Dr. Boyle "has not identified a single piece of confidential or trade secret information which [Mr.] Ludowig took from Empower and disseminated," *see* Dkt. 140 at 3, is irrelevant. Neither the DTSA nor the TUTSA require the acquisition of a trade secret directly from the plaintiff to establish liability.[4] In the context of rendering his opinions, Dr. Boyle discusses Mr. Ludowig's acquisition of Empower's Asserted Trade Secrets from specific Defendants, *see, e.g.*, Dkt. 135-1 at ¶ 122, Mr. Ludowig's dissemination of Empower's Asserted

---

[4] *See* Tex. Civ. Prac. & Rem. Code Ann. § 134A.002 (defining misappropriation as "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means," *or* "disclosure or use of a trade secret of another without express or implied consent by a person who . . . at the time of disclosure or use, knew or had reason to know that the person's knowledge of the trade secret was . . . derived from or through a person who used improper means to acquire the trade secret . . . acquired under circumstances giving rise to a duty to maintain the secrecy or limit the use of the trade secret" *or* "derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of or limit the use of the trade secret"); *see also* 18 USC § 1839(5) (same).

Trade Secrets to various individuals and organizations, and his use of the same to, *inter alia*, solicit potential investors. *See, e.g.*, *id.* at ¶¶ 105, 112–113, 123, 169.[5] The jury can properly conclude that Mr. Ludowig is liable for misappropriating Empower's Asserted Trade Secrets based on such evidence.[6] *See Wellogix, Inc.*, 716 F.3d at 876–79.

Because Dr. Boyle's opinions are "based upon more than mere credentials and conclusory beliefs," Defendants' Motions should be denied as to Dr. Boyle. *See Axip Energy Servs. LP,* 2021 WL 4709930, at *2; *Wellogix, Inc.*, 716 F. 3d at 882; *Joe N. Pratt Ins.* 2009 WL 5220646, at *4; *Cincom Systems, Inc.*, 2024 WL 3926256, at *6; *Syntel Sterling Best Shores Mauritius Ltd.*, 2020 WL 5822064, at *2.

### C. Mr. LaMotta's Opinions Regarding Unjust Enrichment and Damages are Relevant, Reliable, and Admissible

#### 1. Mr. LaMotta's Damages Opinions are Consistent with Well-Settled Law

Defendants similarly challenge Mr. LaMotta's opinions as being improper legal conclusions. *See* Dkt. 135 at 6; Dkt. 140 at 2 ("[T]he arguments set forth in Defendants' . . . . Motion . . . are hereby joined and incorporated herein"). Their argument is based on Defendants' assertions that (1) Mr. LaMotta "created an imaginary damage model" to compensate for Empower's purported lack of damages; and (2) Mr. LaMotta improperly assumed that Defendants misappropriated Empower's Asserted Trade Secrets. Dkt. 135 at 6–7. Defendants are wrong on both counts.

---

[5] Dr. Boyle's report similarly analyzes the conduct, including the acquisition, disclosure, and/or use of Empower's Asserted Trade Secrets, of each individual defendant. *E.g.*, Dkt. 135-1 at ¶¶ 83–139.

[6] Indeed, given Mr. Ludowig's destruction of his hard drive and deletion of emails, he should not be heard to complain about a lack of evidence related to his acquisition of Empower's Asserted Trade Secrets. *See* Dkt. 106.

Defendants' argument that Mr. LaMotta "created an imaginary damage model" because Empower has no damages, *see id.*, is a legal and factual straw man. The law first. The DTSA and TUTSA permit recovery of "damages for actual loss caused by the misappropriation of the trade secret" and either "damages for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss" or "a reasonable royalty for the misappropriator's unauthorized disclosure or use of the trade secret[.]" *See* 18 USC § 1836(b)(3)(B); Tex. Civ. Prac. & Rem. Code Ann. § 134A.004(a) (same); *see also Bohnsack v. Varco, L.P.*, 668 F.3d 262, 280 (5th Cir. 2012). The Fifth Circuit has further made clear that "Texas takes a 'flexible and imaginative approach' to damages calculation in trade secret misappropriation cases that allows calculation of damages based on defendant's avoided costs," which can be measured by the costs a defendant saved by misappropriating a trade secret. *GlobeRanger Corp. v. Software AG U.S. of Am., Inc.*, 836 F. 3d 477, 499–500 (5th Cir. 2016). In addition, awards of pre-filing costs incurred to investigate the scope and extent of a defendant's trade secret misappropriation are permissible actual losses. *Cap. City Home Loans LLC v. Darnell*, 2024 WL 4534567, at *5–*6 (11th Cir. Oct. 21, 2024).

Defendants' argument that Empower cannot have damages because it "lost no sales, no customers, no clients" ignores the relevant case law and admonition that courts must be "flexible and imaginative" with respect to trade secret damages. *See GlobeRanger Corp.*, 836 F.3d at 499–500. As such, to be entitled to damages, Empower need not demonstrate that it lost sales, customers, or clients due to Defendants' actions. Empower may instead seek to recover damages for Empower's pre-suit actual losses incurred investigating the theft, as well as damages based on Defendants' unjust enrichment or through a reasonable royalty for Defendants' disclosure or use of Empower's Asserted Trade Secrets. *See* 18 USC § 1836(b)(3)(B); Tex. Civ. Prac. & Rem. Code

Ann. § 134A.004(a); *see also GlobeRanger Corp.*, 836 F. 3d at 499–500; *Bohnsack*, 668 F.3d 262 at 280; *Capital City Home Loans*, 2024 WL 4534567, at *5–*6; *Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.*, 980 F.3d 1117, at 1130 (7th Cir. 2020) (recognizing that unjust enrichment damages may be awarded even where the "trade secret was not used directly to develop a new product and was not tied to any of the defendant's specific profits"). And, to the extent Defendants believe that Mr. LaMotta did not properly account for any of the factors they raise in their Motions, they are welcome to cross-examine him on those points at trial. *See Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776, 792 (N.D. Tex. 2013) (a party may "cross-examine [an expert] on whether his damages calculations adequately account for other variables that may have caused a change in" damages, and that such "challenge[s] go[] to the weight of [the expert's] testimony, not its admissibility.").

Next the factual straw man. Mr. Ludowig asserts that Empower admitted that it suffered no damages. *E.g.*, Dkt. 140 at 2–3. Not so. Empower's Chief Operating Officer never testified that Empower suffered no damages as a result of Defendants' conduct. *Id.* Instead, he testified that Defendants' conduct had not interfered with Empower's business. Dkt. 64-1 at 82:18–83:23, 92:24–93:17. He also expressly noted that Defendants' actions had caused Empower to conduct a pre-filing investigation, *see, e.g.*, *id.* at 54:24–56:21, the cost of which Empower seeks to recover as actual losses. Dkt. 135-2 at ¶¶ 211–213.

Nor did the Court conclude that Empower had suffered no damages as a result of Defendant's conduct. *See* Dkt. 140 at 3. Of course, in granting injunctive relief, Dkt. 68, the Court did not (and could not) conclude that Empower had failed to demonstrate that it had suffered any damages as a result of Defendants' conduct—much less that Empower would not be able to make such a showing at a later date. *See North v. Bonial & Assoc., P.C.*, 2024 WL 5185690, at *1 (S.D.

Tex. Oct. 11, 2024) (availability of "money damages" and existence of "irreparable harm" for purposes of awarding injunctive relief are separate inquiries); *see also Bianco v. Globus Med., Inc.*, 2014 WL 1049067, at *2–*9 (E.D. Tex. Mar. 17, 2014) (in a trade secrets case, availability of "monetary damages" and existence of irreparable harm are related, but separate, inquiries). As such, Mr. Ludowig's attacks on the reliability of Mr. LaMotta and Dr. Boyle's opinions on this basis fail.

Consistent with the law and the factual record, Mr. LaMotta analyzed and quantified Empower's available damages in this case. Mr. LaMotta first quantified the value conferred on Defendants through an unjust enrichment model predicated on the Defendants' ability to avoid development costs by misappropriating Empowers Asserted Trade Secrets. Dkt. 135-2 at ¶¶ 107–109. Consistent with well-settled case law, Mr. LaMotta used Empower's costs to develop the Asserted Trade Secrets as a proxy for the benefit misappropriating those trade secrets conferred on Defendants. *See id.* at ¶¶ 110–127; *see also GlobeRanger Corp.*, 836 F. 3d at 499–500. Not only does Mr. LaMotta conduct a detailed and thoroughly documented analysis identifying those costs, but he also analyzes and opines as to why those costs are a conservative proxy for the costs avoided by Defendants. Dkt. 135-2 at ¶¶ 124–125. In the alternative, Mr. LaMotta also calculated a reasonable royalty for Defendants' misappropriation of Empower's Asserted Trade Secrets through an extensive analysis of the *Georgia-Pacific* factors. *See id.* at Sec. 7. Finally, Mr. LaMotta quantified the amount of money that Empower expended, prior to filing this lawsuit, to investigate Defendants' conduct. *Id.* at ¶¶ 211–213. As noted above, these are permissible measures of damages for trade secret misappropriation. *See GlobeRanger Corp.*, 836 F.3d at 499–500; *Bohnsack*, 668 F.3d at 280; *Cap. City Home Loans*, 2024 WL 4534567, at *5–*6; *Epic Systems Corp.*, 980 F.3d at 1130.

Defendants' arguments based on Mr. LaMotta's assumptions also miss the mark. Dkt. 135 at 6; Dkt. 140 at 2. It is axiomatic that damages experts "are permitted to assume the fact of liability and opine about the extent of damages," and that "[a]n expert's reliance on assumptions does not itself make the expert opinion unreliable or inadmissible." *See ENGlobal U.S. Inc. v. Native Am. Servs. Corp.*, 2018 WL 1877015, at *8 (S.D. Tex. Apr. 19, 2018) (citation omitted); *see also Robroy Indus.-Texas, LLC v. Thomas & Betts Corp.*, 2017 WL 1319553, at *4–*5 (collecting cases and noting that it is "beyond serious challenge" that a damages expert may assume liability). Mr. LaMotta makes clear in the first paragraph of his report that he is doing just that. *See* Dkt. 135-2 at ¶ 1 ("For the purposes of this report, I am required to assume . . . [Defendants'] will be found liable for breach of contract, tortious interference and misappropriation of trade secrets and confidential information, among other causes of action as alleged by the Plaintiff."). To dispel any possible doubt, Mr. LaMotta further states that he is offering no opinions on liability.[7] *Id.*

In sum, at most, Defendants' criticisms go to the weight, not the admissibility, of Mr. LaMotta's opinions, and are "more properly suited to vigorous cross examination and presentation of contrary evidence than the exclusion" of Mr. LaMotta. *See Axip Energy Servs.*, 2021 WL 4709930, at *1; *see also Orthoflex, Inc.*, 986 F. Supp. 2d at 792. As such, Defendants' Motion should also be denied as to Mr. LaMotta.

---

[7] Defendants' complaint that Mr. LaMotta tested his liability assumption by reviewing record evidence—including Defendants' contemporaneous communications, business plans, and investor presentations reflecting Empower's Asserted Trade Secrets—is also incorrect. *See* Dkt. 135 at 6; Dkt. 135-2 at ¶¶ 76–109. The fact that Mr. LaMotta tested his assumption to make sure it had a basis in the factual record supports the reliability of his analysis—it does not diminish it.

### D. Empower is not Estopped from Seeking Damages

Based on the factually inaccurate assertion that Empower admitted it has suffered no damages, Mr. Ludowig argues that Empower is estopped from seeking damages. Dkt. 140 at 2–3. He is wrong. First, Mr. Ludowig cites no case law supporting his argument. Second, as discussed above, Empower made no such admission and the Court did not conclude that Empower has suffered no recoverable damages as a result of Defendants' conduct.

## IV. CONCLUSION

Defendants' Motions misstate the content of, and the opinions rendered in, both Dr. Boyle and Mr. LaMotta's expert reports, and ignore well-settled precedent in an attempt to deprive Empower of the ability to present expert testimony at trial. In reality, both Dr. Boyle and Mr. LaMotta apply their collective decades of experience to the facts in this case and render opinions that are reliable and well within the bounds of permissible expert testimony. Defendants have failed to show otherwise. Given that Defendants cited no precedent in support of their arguments and ignored all but a few paragraphs from Dr. Boyle and Mr. LaMotta's expert reports, they have waived any arguments based on such materials and cannot seek to raise or present them for the first time on reply. *See Allen v. Hays*, 65 F.4th 736, 746 (5th Cir. 2023).

For the reasons stated above, Defendants' Motions should be denied in their entirety.

Respectfully submitted,

**MILLER BARONDESS, LLP**

*/s/ Benjamin A. Herbert*

Benjamin A. Herbert
California State Bar No. 277356
2121 Avenue of the Stars, Suite 2600
Los Angeles, CA 90067
(310) 552-4400
***Admitted Pro Hac Vice***

Michael H. Bernick
State Bar No. 24078227
S.D. Tex. ID 1439062
mbernick@jw.com
Harris J. Huguenard
State Bar No. 24099615
S.D. Tex. ID 3007223
hhuguenard@jw.com
Michael A. Drab
State Bar No. 34115826
S.D. Tex ID 3665349
mdrab@jw.com
1401 McKinney, Suite 1900
Houston, Texas 77010
(713) 752-4200 – phone

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

    I hereby certify that service of a true and correct copy of the above and foregoing document will be automatically accomplished through notice of electronic filing and in accordance with the Federal Rules of Civil Procedure on May 8, 2025, to all counsel of record.