**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| Empower Clinic Services, L.L.C., | |
|      Plaintiff, | |
| v. | Case No. 4:23-cv-4123 |
| Bio Filling Solutions Inc. f/k/a Bio42 Clinical Filling Solutions, Inc., Hanson Irwin Group LLC, David Teer, Lisa Hudanich, Matthew Ludowig, Marc Hanson, and Jerry Irwin, | |
|      Defendants. | |

## DECLARATION OF AARON A. WAGNER IN SUPPORT OF DEFENDANT MATTHEW LUDOWIG'S MOTION FOR CONTINUANCE

I, Aaron A. Wagner, declare and state under penalty of perjury as follows:

1. I am over 18 years and competent to give this declaration. I am a partner at Kabat Chapman & Ozmer LLP (KCO) and serve as counsel for Defendant Matthew Ludowig in the above-captioned matter. If called and sworn as a witness, I could and would competently testify to the matters set forth herein, which are based on my personal knowledge and a few of the files in this matter.

2. Mr. Ludowig's request for a continuance is made in good faith.

3. I conferred with codefendants' counsel, Anthony LaPorte and Alexandra Pierce, about this extension. Codefendants are unopposed. Codefendants' counsel understands the unique position that Empower placed Mr. Ludowig in, which requires him to seek this extension.

4. On March 28, 2025, I was retained by Mr. Ludowig to represent him in this matter. My understanding was that Mr. Ludowig needed new counsel because Plaintiff Empower Clinic Services, LLC began offering all codefendants settlement offers in February 2025 in exchange fort

their agreement to provide testimony against Ludowig—some of which was knowingly false. Because Mr. Ludowig's prior counsel (Mr. LaPorte) represented the other codefendants (with the exception of Michael Lambert), these settlement offers created a professional and ethical dilemma for Mr. LaPorte, *i.e.*, conflicts of interest and interfering with duties of loyalty and confidentiality.

5.      It has also been reported to the undersigned counsel that Empower has offered settlement to Greg Nicholas, with a key term being Nicholas's testimony against Mr. Ludowig. It was reported to the undersigned by Mr. Nicholas' counsel that Empower indicated to him that it would "serve him well" if Mr. Nicholas signed a declaration testifying against Mr. Ludowig. Mr. Nicholas has refused to offer the false testimony sought by Empower.

6.      I appeared at a March 28, 2025 hearing for the first time on Mr. Ludowig's behalf.

7.      At the hearing, I explained the landscape shift resulting from Mr. Lambert's settlement and declaration.

8.      It is my understanding that Mr. Lambert appeared voluntarily—flying from Arkansas—at the March 28, 2025 hearing prepared to testify against Mr. Ludowig. When asked why Mr. Lambert appeared at the hearing, Mr. Lambert's counsel advised the undersigned "you are a good enough attorney to figure out why Mr. Lambert was there."

9.      I conferred with Empower's counsel about the implications of Mr. Lambert's declaration and addressed the implications at the March 28, 2025 hearing.

10.      I need additional time to complete the party and non-party discovery and to review the voluminous file to prepare for trial.

11.      I conferred with Empower's counsel about this extension, including requesting Empower to explain what Mr. Ludowig could do to ameliorate any prejudice Empower may suffer from the 90-day extension of the scheduling order to permit the undersigned to conduct discovery

2

and get up to speed.  Empower did not explain any prejudice except repeating undue cost and delay.

12.     Mr. Ludowig needs additional discovery, including discovery about developments that happened as recent as March 26, 2025, and has identified the discovery it seeks via discovery requests and subpoenas. The undersigned has explained several times to Empower's counsel why the new discovery is necessary. The undersigned immediately prepared discovery requests to Empower and nonparties, which identifies the discovery sought prior to the trial in this matter. This discovery was served on April 4, 2025.

13.     Empower knows the discovery that Mr. Ludowig seeks.  Empower has filed a pre-motion letter seeking to quash multiple subpoenas for documents and deposition testimony, which Mr. Ludowig served prior to the close of discovery.  Empower also objected to every discovery request served by Mr. Ludowig—*i.e.*, Empower did not produce any documents and Empower did not provide any answers to interrogatories.

14.     The operative Complaint has been pending since only December 16, 2024.

15.     Empower is still conducting depositions, including Empower seeking to conduct two corporate representative depositions, a non-party deposition, and complete forensic examinations.

16.     Mr. Ludowig needs time to address Empower's recent deficient discovery responses.

17.     Specifically, the smear campaign apparently began in December 2024.  Mr. Ludowig sought discovery on the smear campaign in February 2024.  Empower only objected and has refused to provide any responses.

18.     Specifically, on March 31, 2025, Empower refused to provide any substantive

responses regarding its communications and role with the public relations firm (Sitrick and Company – who boasts it is the "spin doctor") that Empower has not denied employing to disparage Mr. Ludowig. Mr. Ludowig conferred with Empower. Empower stated it would discuss with its client, and subsequently refused to amend its responses.

19.     By way of another example, on April 4, 2025, Mr. Ludowig served discovery on Empower and codefendants seeking communications related to the settlement, settlement agreement(s), and drafts of settlement agreements. Empower and the codefendants have not produced any documents, but rather only objected to the discovery requests.

20.     In particular, Mr. Lambert was not a defendant for the entirety of discovery. When he was a defendant, Mr. Ludowig had no reason to depose him until Mr. Lambert's declaration was identified around March 26, 2025. Mr. Ludowig sought discovery on the issue by April 4, 2025.

21.     Another example: On April 4, 2025, Mr. Ludowig also served subpoenas for depositions to the witnesses it sought to depose. Mr. Ludowig explained via a cover letter (and in subsequent emails and correspondences) that the dates in the subpoenas were a placeholder, so everyone could coordinate for an agreeable time for the deposition. In response, Empower requested the relevance of each deposition, including requesting the relevance of one witness who Empower lists in its operative Complaint from December 2024. Mr. Ludowig explained the relevance. The undersigned believed Empower would then provide available dates. Empower instead filed a letter with this Court seeking to quash the subpoenas and now objects and refuses to provide dates for these witnesses, apparently on the basis untimeliness despite the subpoenas for deposition being served two weeks prior to the close of discovery.

22.     Empower also belatedly produced documents without explanation. For example,

4

on April 18, 2025, apparently the date that Mr. LaPorte and Empower agreed the last day of discovery would be, Empower produced over 7,000 pages of documents (almost doubling its production to date). Empower did not explain which requests the documents were responsive to or why they were just now producing the documents. *See* **Exhibit 1**. Ultimately, Empower stated that none of the documents were responsive to the discovery Mr. Ludowig served on April 4, 2025.

23.     Empower stated they would not answer the discovery served on April 4, 2025, but instead would only object. Empower did just that. Empower did not provide answers to the interrogatories served on April 4, 2025, and Empower produced no documents responsive to the April 4, 2025 requests for production.  Empower submitted only objections. *See* **Exhibits 2-4**.

24.     Empower also only objected to and moved to quash all non-party subpoena duces tecum based on the subpoenas being untimely and have continued to refuse to provide dates for the non-party witness depositions. *See* **Exhibit 5**.

25.     Empower represents to the Court that Empower is working with the undersigned to schedule depositions (at 6). That has proved to be false. Empower has not consulted with the undersigned when scheduling depositions and then has refused any accommodations related to conflicts. It has refused to provide dates for depositions for nearly all witnesses that Ludowig seeks to depose, and instead has filed a pre-motion letter seeking to quash the same. And it has refused to provide any discovery requested by Ludowig.

26.     Meanwhile, Empower is still conducting discovery.

27.     Empower is seeking to conduct forensic examinations of defendants' devices.  *See* **Exhibit 6** (Empower leaving the undersigned off email chain trying to get forensic examination "over the finish line," and codefendants' counsel being the one who apprises the undersigned of the discovery).

28. Empower also is seeking to schedule two corporate representative depositions as recent as this Tuesday (of two now defunct companies - Hanson Irwin Group and iBio Filling). *See* **Exhibit 7**.

29. Empower has also refused to accommodate Mr. Ludowig's counsel in scheduling depositions.

30. Empower also only provided one date for alleged expert Mr. Boyle's deposition, April 25, 2025. The undersigned counsel asked Empower's counsel to reschedule the deposition due to coming up to speed. *See* **Exhibit 8.** Specifically, on April 18, 2025, Empower's counsel refused to move the deposition because Mr. LaPorte agreed to the date. *See* **Exhibit 9 at p. 3**. On April 21, 2025, Mr. Ludowig's former counsel (Mr. LaPorte) informed the parties that he also was unable to take the deposition of Mr. Boyle on April 25, 2025. *See* **Exhibit 8**. The deposition did not go forward, and Empower now refuses to present Mr. Boyle for a deposition. *See* **Exhibit 10**.

31. By way of another example, on April 2, 2025—without communicating with the undersigned counsel—Empower set the expert deposition of Mr. LaMotta for May 8, 2025. *See* **Exhibit 16** (Empower scheduling expert deposition without asking for the undersigned availability *after* the undersigned enter his appearance). Once the undersigned counsel received the notice of deposition, the undersigned counsel asked why Empower did not include the undersigned counsel in scheduling discussions. *Id.* On April 17, 2025, the undersigned counsel stated that the parties needed to discuss the expert deposition set for May 8. *See* **Exhibit 6 at p. 1**. Empower responded that it will not agree to postpone expert depositions. *See* **Exhibit 10 at p. 1**. The undersigned counsel had his associate attempt on April 25, 2025 to reschedule the expert depositions by requesting available dates for Mr. Boyle and Mr. LaMotta's deposition. *See* **Exhibit 11**. On April 30, 2025, Empower again refused to reschedule Mr. LaMotta's May 8 deposition, despite the

undersigned counsel being unavailable for the deposition due to a previously scheduled May 8 order to show cause hearing in California. Upon information and belief, the deposition went forward without the undersigned counsel in attendance. Empower refuses to allow the undersigned to depose Mr. LaMotta and made no attempt to accommodate the undersigned whatsoever.

32.     Empower also sent a subpoena to a non-party witness (Libby Baney) on April 16, 2025, setting the deposition for May 2, 2025 in-person in Washington D.C. *See* **Exhibit 12**. On April 18, 2025, Empower stated it would coordinate a date, time, and place for the deposition. However, Empower did not communicate any further on the deposition, and did not pull down or amend the notice of deposition, leading the undersigned to believe the deposition was still going forward on May 2, 2025. Empower withdrew its subpoena without informing the undersigned counsel that the deposition would not go forward. Empower contends that Empower told the undersigned counsel on April 25, 2025 that the deposition date was only a placeholder, but emails between Ms. Baney's counsel and Empower reveal that Empower intended to go forward, had not cancelled the deposition, and did not cancel until Baney's counsel threatened to file a motion to quash it. These emails were on April 28, 2025—*i.e.*, the deposition was not a placeholder at all, but was going forward as noticed until April 28. Yet, Empower never shared this information with the undersigned. Instead, it was not until two days later (when it was too late to cancel the undersigned's hotel room in Washington D.C.) that, when talking with Baney's counsel, the undersigned learned for the first time that the deposition had been cancelled. Again, Empower never shared this fact with the undersigned, and now refuses to take any responsibility for the unnecessary costs incurred by Mr. Ludowig due to its refusal to simply cooperate in discovery and act in good-faith. *See* **Exhibit 13** (showing Empower did not cancel until Empower 28, yet it argues that it told the undersigned the deposition was cancelled as of April 25).  The undersigned counsel

was unable to receive a refund for his hotel room, which cost $639.81. *See* **Exhibit 14.**

33.     In attempt to understand the sufficiency of current discovery provided by Empower to Ludowig's prior counsel, the undersigned has asked Empower to explain the search it conducted for documents. It refuses to do so. Yet, prior to April 18, 2025, Empower had only produced 9,740 pages of its documents. On April 18, 2025, Empower produced EMPOWER 9741-EMPOWER017319, the belated production of documents without explanation as to where or how those documents were recovered. Some of Empower's production includes emails from Mr. Ludowig.  However, Empower has also produced a privilege log that has two lines that generally state all of Mr. Ludowig's communications from January 2023 to September 2023 are privileged—*i.e.*, the communications are not identified to allow Mr. Ludowig to assess the claim of privilege. Between the privilege log and Empower's refusal to explain the search it conducted, Mr. Ludowig is left in the dark on the protocol used to obtain their document production. Empower has only referred to the search terms it identified in its requests for production, but did not identify which custodians from which these documents were pulled. *See* **Exhibit 15**.

34.     Finally, the trial in this matter is set to begin August 18, 2025. I plan to have a KCO associate, who graduated in 2019, participate substantially at trial. I believe this will benefit this excellent, but junior attorney, immensely. *See* Judge Bennett Court Practices and Procedures A.5 (strongly encouraging litigants to be mindful of opportunities for young lawyers to participate in substantive opportunities). The associate has developed experience in the compounding pharmaceutical industry, is experienced in noncompetition and trade secret litigation, and has researched and developed knowledge specific to Empower's practices.  The birth of the associate's second child is due on June 30, 2025, which, given the proximity to the current trial and the associate's forthcoming leave, impacts preparation and participation at trial. *See* Judge Bennett

Practices and Procedures B.3 (recognizing value and importance of working parents spending times with their families following the birth or adoption of a child). While we did not raise these facts previously, as we are hurrying to get up to speed and figure out a competent team for trial, these issues have emerged and thus, we would seek the Court's leniency with respect to this late presentation of these matters.

I declare under penalty of perjury under the laws of the State of Texas that the foregoing is true and correct.

Dated: May 9, 2025.

**KABAT CHAPMAN & OZMER LLP**

Aaron A. Wagner
Texas Bar No. 24037655
S.D. Texas Bar No. 3813191
KABAT CHAPMAN & OZMER LLP
171 17th Street NW, Suite 1550
Atlanta, Georgia 30363
Tel: (404) 370-7300
Fax: (404) 400-7333
Email: awagner@kcozlaw.com

*Attorney for Defendant,*
*Matthew Ludowig*