UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Empower Clinic Services, L.L.C., Plaintiff, v. Bio Filling Solutions Inc. f/k/a/ Bio42 Clinical Filling Solutions, Inc., *et al.* Defendants. | Case No. 4:23-cv-4123<br><br>**Jury Trial Demanded** |

**Plaintiff's Response to Defendant Matthew Ludowig's
Motion for Summary Judgment (Dkt. 142 and 143)[1]**

Empower Clinic Services, L.L.C. ("Empower") files this response to Defendant Matthew Ludowig's Motion for Summary Judgment ("Motion") and respectfully shows the following:

## I. SUMMARY OF ARGUMENT

Defendant Matthew Ludowig ("Mr. Ludowig") seeks summary judgment on Empower's claims against him on four fronts. First, Mr. Ludowig seeks summary judgment on the affirmative defenses of preemption and release. Second, Mr. Ludowig argues Empower's claims against him fail because Empower has allegedly suffered no damages. *See id.* at 6–8. Third, Mr. Ludowig alleges Empower's claims against him for knowingly participating in breaches of fiduciary duties are not recognized under Texas law. Fourth, and finally, Mr. Ludowig asserts he is entitled to summary judgment on Empower's non-compete claim based on Rule 5.06 of the Texas Rules of Professional Conduct. Mr. Ludowig fails to meet his summary judgment burden on each of these arguments.

---

[1] Mr. Ludowig filed his motion for summary judgment at Dkt. 142, and then refiled it at Dkt. 143 with unredacted exhibits. The motions are identical. For brevity, Empower's response only cites Dkt. 142, but Empower's arguments apply equally to those same paragraphs in Dkt. 143.

First, affirmative defenses must be pled and proven. Mr. Ludowig cannot be granted summary judgment on his affirmative defense that Empower released its claims against him because he has only pled that the release relates to Empower's claims for Mr. Ludowig's breach of the non-compete and non-solicitation clauses.[2] He has not pled the release applies to Empower's other claims—e.g., trade secret misappropriation, breaches of contractual confidentiality obligations, unjust enrichment, breaches of fiduciary duties, and knowing participation in breaches of fiduciary duties.[3] Summary judgment cannot be granted on claims where Mr. Ludowig has not pled the affirmative defense of release. Also, the release is void because Ludowig (1) materially breached the agreement by not cooperating with Empower's investigation of Mr. Ludowig's co-conspirator, and (2) procured the release through fraud. Even if the release were enforceable, it is undisputed that the release does not apply to Mr. Ludowig's conduct following execution of that document, and Empower's claims cover Mr. Ludowig's wrongful activity after August 13, 2023.

Also, Mr. Ludowig cannot be granted summary judgment on the affirmative defense of preemption because he has not pled preemption,[4] and he has not sought leave to plead it as an additional affirmative defense.[5] And the Motion fails to show beyond all possibility that Empower's tort claims against him are preempted.

---

[2] *See* Dkt. 99 at ¶¶ 150–51.

[3] *See id.*

[4] *See id.* at ¶¶ 148–160.

[5] *See* Dkt. 138-1.

Second, damages are a question of fact. The only evidence that Mr. Ludowig claims supports summary judgment is testimony from Empower's COO during a temporary injunction hearing held on March 27, 2024, regarding whether irreparable harm had been suffered that justified injunctive relief. Empower requests the Court consider the evidence of damages it intends to present to the jury from its duly designated expert and deny Mr. Ludowig motion for summary judgment.

Third, Empower has adequately pled a cause of action against Mr. Ludowig based on his knowing participation in breaches of fiduciary duties, which is a cause of action recognized under Texas law.

Fourth, and finally, Mr. Ludowig cannot rely on the Texas Rules of Professional Conduct to escape his binding non-compete agreement because attorney ethical rules are not to be enforced by an attorney (e.g., Mr. Ludowig) to nullify agreements (e.g., a non-compete) to the detriment of the attorney's client (e.g., Empower). Summary judgment should be denied.

## II.    LEGAL STANDARD

Summary judgment is only appropriate if no genuine issue of material fact exists and the moving party shows he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007). If the moving party meets its initial burden, the non-movant must then designate specific facts to show there is a genuine issue of material fact. *Id.* Evidence is viewed in the light most favorable to the nonmovant. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

### III.    ARGUMENT AND AUTHORITIES

**A.    Mr. Ludowig is not entitled to summary judgment on the affirmative defenses of release and preemption.**

When a party requests summary judgment based on an affirmative defense, he "must establish beyond peradventure *all* the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). If successful, "the burden shifts to the nonmovant to establish an issue of fact that warrants trial." *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 420 (5th Cir. 2016).

Release is an affirmative defense that must be "affirmatively state[d]" and proved by Mr. Ludowig. *See* Fed. R. Civ. P. 8(c). Preemption is also an affirmative defense that must be affirmatively pled and conclusively proved by Mr. Ludowig. *See Big Squid, Inc. v. Domo, Inc.*, No. 2:19-cv-193, 2019 WL 3555509, at *35–36 (D. Utah Aug. 5, 2019) (construing the Utah Trade Secret Act, which is substantially similar to TUTSA; *compare* Tex. Civ. Prac. & Rem. Code § 134A.0007 *with* Utah Code § 13-14-8); Fed. R. Civ. P. 8(c) (requiring affirmative defenses to be "affirmatively state[d]" in responsive pleadings).

  1.    <u>Mr. Ludowig waived the affirmative defenses of release and preemption by failing to raise them.</u>

Affirmative defenses that are not pled are waived. *See Kinnear v. Tex. Com'n on Hum. Rights ex rel. Hale*, 14 S.W.3d 299, 300 (Tex. 2000) ("Immunity from liability, like other affirmative defenses to liability, must be pleaded, or else it is waived."); *Fisher v. Miocene Oil & Gas Ltd.*, 335 F. App'x 483, 493 (5th Cir. 2009) ("Although waiver applies to affirmative defenses that are not pleaded, 'a defendant does not waive an affirmative defense if it is raised at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond.'").

Mr. Ludowig's answer raised the affirmative defense of release with respect to two narrow claims: Empower's non-compete claim and its non-solicit claim.[6] He did not plead Empower released any other claims.

Mr. Ludowig has been a defendant since December 2023, and the claims lodged against him have remained substantially the same since then. Neither Mr. Ludowig nor any of the other defendants pled preemption as an affirmative defense. It was not raised in Defendants' Original Answer (Dkt. 23, Dec. 18, 2023), Defendants' Answer to Plaintiff's First Amended Complaint (Dkt. 32, Jan. 22, 2024), or in Defendants' Answer to Plaintiff's Second Amended Complaint after getting leave of court to file that answer (Dkt. 99, Jan. 8, 2025). The pleadings deadline passed on December 16, 2024 (Dkt. 78). Mr. Ludowig received leave of court to file an amended answer on February 3, 2025, but he still did not raise preemption as an affirmative defense. (Dkt. 108, Feb. 3, 2025).

The exception acknowledged by the Fifth Circuit in *Fisher* cannot save Mr. Ludowig. He has never raised preemption in his pleadings, and he has never broadened the release defense to encompass any additional claims. Mr. Ludowig didn't raise them in response to written discovery, and discovery is now closed.[7] Because Mr. Ludowig never raised the issue of preemption or release in response to written discovery, there was no basis on which Empower could have reasonably anticipated him raising these defenses at the eleventh hour. His delay in raising preemption and

---

[6] *See* Dkt. 99 at ¶¶ 150–151.

[7] *See* Ex. 1, *Defendant Matthew Ludowig's Objections and Answers to Plaintiff Empower Clinic Services, L.L.C.'s First Set of Interrogatories (Nos. 1–19)* at p. 9 (failing to raise either release or preemption as part of his description of affirmative defenses in response to interrogatory number 11).

broadening the scope of his release defense deprived Empower of an opportunity to conduct discovery on the issues or clarify the substance of its claims through amended pleadings.

> 2. <u>Summary judgment cannot be granted on the affirmative defense of release because (1) Empower's claims arise outside the scope of the release; (2) Mr. Ludowig first materially breached the agreement; and (3) Mr. Ludowig obtained the release through fraud.</u>

Mr. Ludowig seeks summary judgment based on a release he argues was executed on August 13, 2023.[8] The release only affects "Claims . . . that occurred on or prior to the date that I have signed this Release."[9] Mr. Ludowig claims the release was not "effective" until September 1, 2023. That is wrong. There is no separate "effective date" for the release, but only a date when Mr. Ludowig's resignation from Empower would be effective.[10] Even if the release is enforceable, it does not absolve Mr. Ludowig from conduct that occurred after he executed the agreement on August 13, 2023. Mr. Ludowig's post-August 13th conduct includes, but is not limited to: (1) his involvement in distributing Empower's trade secret to third-party investors for purposes of securing funding for his competing start-up, Bio42, on August 18, 2023;[11] (2) his involvement with another defendant in misappropriating Empower's buildings cost sheet on August 23, 2023;[12] (3)

---

[8] *See* Dkt. 142 at 4.

[9] *See* Dkt. 142 at 3.

[10] *See generally* Dkt. 142-2.

[11] *See* Ex. 2, Aug. 18, 2023 Email from J. Irwin to M. Ludowig and C. Tuohy, sending data including Empower's trade secrets to C. Tuohy at Ludowig's direction.

[12] *See* Ex. 8 (Dkt. 105-42), Aug. 23, 2023 Email from J. Irwin to M. Ludowig. Under Local Rule 7.7 and Rule 56(c)(1)(A), Empower cites evidence submitted to the Court as part of *Plaintiff's Motion to Remedy Spoliation of Evidence and for Discovery Sanctions*, which is filed under seal at Dkt. 105. *See Barrow v. Greenville Indep. Sch. Dist.*, No. 3:00-cv-0913-D, 2005 WL 1867292, at *26 (N.D. Tex. Aug. 5, 2005) (J. Fitzwater) (allowing litigant to support a motion by clearly identifying and adopting materials already on file to reduce expenses and filing burdens); *Lopez v. City of Dall.*, No. 3:03-CV-2223-M, 2006 WL 1450520, at *7–8 (N.D. Tex. 2006) (in summary judgment briefing, litigant may support its briefing by referencing materials already on file).

his acting as the CEO of a competing business while still employed by Empower and inducing Empower's employees get involved with Bio42 as of August 23, 2023,[13] and (4) his assistance with crafting David Teer's resignation letter from Empower in September 2023.[14] Mr. Ludowig knew at that time that Mr. Teer had been misappropriating Empower's trade secrets for a start-up business and that Mr. Teer was leaving to further pursue that competing business.[15] A reasonable jury could hear this evidence of conduct Mr. Ludowig engaged in after executing the release and find him liable for misappropriating trade secrets, breaching his fiduciary duties, knowingly participating in Mr. Teer's breaches of his fiduciary duties to Empower, breaching his contractual obligations to protect Empower's confidential information, or breaching his non-compete and non-solicitation agreements.

Also, Mr. Ludowig materially breached the release agreement. As part of the release, Mr. Ludowig agreed to "reasonably cooperate with the Company [Empower] regarding matters arising out of or related to [his] service to" Empower.[16] Mr. Ludowig made this promise knowing he had no intention of following through. In fact, when Empower asked for Mr. Ludowig's cooperation with the investigation of one of his co-conspirators,[17] Mr. Ludowig took steps to destroy

---

[13] *See* Ex. 9 (Dkt. 105-48), Aug. 23, 2023 Email from M. Ludowig to L. Hudanich identifying initial directors for Bio 42.

[14] *See* Ex. 10, (Dkt. 105-41), Sept. 20, 2023 Email from L. Hudanich to M. Ludowig.

[15] *See* Ex. 11 (Dkt. 105-8), July, 7, 2023 Meeting Invite; *see also* Ex. 3, Aug. 30, 2023 Email from D. Teer's Bio42 email to L. Hudanich, M. Ludowig, et al. re: logos and slide decks for investor pitches for Bio42; *see also* Ex. 4, Aug. 31, 2023 Meeting Cancellation to M. Ludowig and D. Teer, et al, "the Bio42 teams is [sic] heavily engaged in fund raising currently. We are cancelling this week [sic] meeting and allow the funding effort to move forward along with other meeting within Bio-42 team."

[16] *See* Dkt. 142-2 at p. 2.

[17] *See* Ex. 12 (Dkt. 105-46).

evidence.[18] For example, Mr. Ludowig admits he destroyed a hard drive containing Empower's information in October 2023 around the same time Empower asked him to cooperate:

> Following my employment at Empower, I had a hard drive which contained personal materials and, quite likely, Empower documents. In early October 2023, when I discovered that the hard drive itself did not work, I took measures to destroy it. I removed the cover and drilled two holes in it so it could not be accessed. I then threw the pieces in a plastic garbage bag and placed in my household garbage receptacle.[19]

And he deleted hundreds of emails related to his competitor start-up venture, including emails showing his culpability.[20]

Finally, a "release is a contract, and like any other contract, is subject to avoidance on grounds such as fraud or mistake." *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 178 (Tex. 1997). Mr. Ludowig promised to reasonably cooperate with Empower despite knowing he was continuously violating company policy, his contractual obligations, and the law by misappropriating Empower's trade secrets to obtain funding for his competitor start-up company.[21] This evidence shows both that Mr. Ludowig had no intention of cooperating with Empower and that Mr. Ludowig breached material terms of the contract first (by not cooperating), thereby excusing Empower's obligations. *See Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196

---

[18] *See* Plaintiff's Motion for Spoliation and Discovery Sanctions, [Dkts. 105, 106], which is incorporated by reference, along with its exhibits; *see also* Ex. 13 (Dkt. 105-33), Aff. of M. Ludowig (Feb. 23, 2024); Ex. 14, Dkt. 105-7, Ludowig Nov. 2024 Dep. at 192:6–192:22.

[19] *See* Ex. 13 (Dkt. 105-33), Aff. of M. Ludowig (Feb. 23, 2024).

[20] *See* Dkt. 106; *see also* Ex. 14 (Dkt. 105-7), Ludowig Nov. 2024 Dep. at 192:6–192:22.

[21] *See* Ex. 5; *see also e.g.*, Ex. 15 (Dkt. 105-39), July 29, 2023 email (Hanson emailing Mr. Ludowig copies of Bio42's business plan, which incorporates and relies on Empower's trade secrets and confidential information); Ex. 11 (Dkt. 105-8); Ex. 16 (Dkt. 105-12), Aug. 10, 2023 email from Mr. Ludowig to Chris Hagen directing him to send future correspondences to his personal email; Ex. 17 (Dkt. 105-13) (Aug. 10, 2023 email showing Irwin distributed a slide deck containing Empower's confidential information and trade secrets for purposes of securing third-party financing for a competing venture).

(Tex. 2004) ("when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance").

      3.      <u>Mr. Ludowig's unasserted preemption defense would fail because he does not prove by a preponderance of the evidence that the claims are preempted by TUTSA.</u>

While TUTSA contains a preemption provision, it does not preempt all tort claims—only those "providing civil remedies for misappropriation of a trade secret." Tex. Civ. Prac. & Rem. Code § 134A.007(a). A growing body of nationwide case law has held that the plain text of this provision (which comes from the Uniform Trade Secrets Act) does not preempt claims based upon confidential information that does not constitute a protectable trade secret under the UTSA. *See, e.g.*, *AMID, Inc. v. Medi Alert Found. United States, Inc.*, 241 F. Supp. 3d 788, 827 (S.D. Tex. 2017) (denying motion to dismiss because tort claims may have been based on confidential information that did not rise to the level of a protectable trade secret under the law); *Stone Castle Fin., Inc. v. Friedman, Billings, Ramsey & Co., Inc.*, 191 F. Supp. 2d 652, 659 (E.D. Va. 2002); *Burbank Grease Servs., LLC v. Sokolowski*, 717 N.W.2d 781, 793 (Wisc. 2006); *Orca Commc'ns Unlimited, LLC v. Noder*, 337 P.3d 545, 548 (Ariz. 2014); *LendingTools.com, Inc. v. Bankers' Bank, N.A.*, 426 P.3d 531 (Kan. Ct. App. 2018) ("[C]ourts applying a literal or plain reading of the preemption provision have concluded that it does not apply to information that does not rise to the level of a statutorily defined trade secret.").

Empower's claims for unjust enrichment, breach of fiduciary duty, aiding and abetting, and civil conspiracy are based on, *inter alia*, wrongful use of Empower's confidential information, which Empower is not arguing constitutes a protectable trade secret under either the DTSA or TUTSA.[22] Given that Empower is alleging claims for unjust enrichment, breach of fiduciary duty,

---

[22] *See* Dkt. 92 at 24 ("Defendants . . . wrongly secured by benefits by using, or planning to use, Empower Pharmacy's misappropriated trade secrets, along with the other confidential information

aiding and abetting, and civil conspiracy based on the wrongful use of merely confidential information, such claims cannot be preempted by the TUTSA.

In the face of this reality, Mr. Ludowig points to no evidence showing that all of the confidential information on which Empower bases its claims for unjust enrichment, breach of fiduciary duty, and civil conspiracy involve the same information Empower alleges are trade secrets. For good reason. As noted above, Empower is not basing these claims on the wrongful use of only confidential information that constitutes a protectable trade secret under the DTSA or TUTSA. Nor does Mr. Ludowig stipulate that all of the information on which Empower bases these claims constitute a protectable trade secret under either the DTSA or TUTSA as a matter of law. Preemption does not apply and Mr. Ludowig has not met his burden.

---

. . . ."); Dkt. 92 at 27–28 (alleging Teer breached fiduciary duties by using confidential information and business opportunities, by taking and using confidential information, disclosing confidential information, failing to act primarily for the benefit of Empower, failing to abide with the duty of candor, to deal with Empower in good faith, by soliciting Empower's employees while employed by Empower, by deleting files from Empower's system); Dkt. 92 at 28 (alleging Mr. Ludowig breached his fiduciary duties by engaging in unauthorized employment with a competitor while still employed with Empower, using and disclosing Empower's confidential information, and breaching his duty of candor and loyalty); Dkt. 92 at 29 (alleging aiding and abetting the breach of fiduciary duty based on the misappropriation of Empower's "trade secrets and confidential information," "destroying incriminating evidence, soliciting Empower's employees"); Dkt. 92 at 31 (alleging civil conspiracy based on a meeting of the minds to misappropriate "trade secrets and confidential information"); *see also* Dkt. 135-1 (Dr. Boyle's Expert Report) ¶¶ 46-52 (identifying Empower's six Asserted Trade Secrets).

**B.     The Motion should be denied because Empower has evidence of damages to present to the jury at trial.**

Mr. Ludowig argues Empower has no evidence of damages. But his argument is based entirely on cherry-picked testimony from Empower's COO at the March 2024 temporary injunction hearing.[23] Empower's COO testified he was "unaware" of any actions taken by the Defendants with respect to a facility in New Jersey.[24] He also testified that he could not identify any conduct by the defendants that were impeding "Empower's ability to operate in the business space that [it was] currently operating in."[25] The testimony in that hearing was directly related to pointed questions from the Court for purposes of identifying whether Empower would suffer irreparable injury if an injunction was not entered. The Court entered an injunction, evidencing that irreparable injury was established.[26] Even so, this testimony has no relevance to whether Empower suffered actual damages due to Defendants' conduct. *See Uretek (USA), Inc. v. Ureteknologia de Mex. S.A. de C.V.*, No. H-11-3060, 2013 WL 3280151, at *24 (J. Rosenthal) (S.D. Tex. June 27, 2013) ("An 'irreparable injury' is one for which actual damages will not adequately compensate the injured party or the damages cannot be measured by any certain pecuniary standard."); *see also North v. Bonial & Assoc., P.C.*, No. H-24-2366, 2024 WL 5185690, at *1 (S.D. Tex. Oct. 11, 2024) (availability of "money damages" and existence of "irreparable harm" for purposes of awarding injunctive relief are separate inquiries); *see also Bianco v. Globus Med., Inc.*, No. 2:12-cv-00147-WCB, 2014 WL 1049067, at *1–9 (E.D. Tex. Mar. 17, 2014) (in a trade

---

[23] *See* Dkt. 142 at 10.

[24] *See* Dkt. 64-1 at 83.

[25] *Id.* at 93.

[26] Dkt. 68.

secrets case, availability of "monetary damages" and existence of irreparable harm are related, but separate, inquiries).

Also, Empower has designated an expert who will opine on damages suffered by Empower due to Defendants' conduct.[27] Mr. Ludowig asks this Court to disregard Empower's expert, but his challenge fails for the reasons stated in Empower's Response to Defendants' Objections to and Motions to Strike Plaintiff's Experts and Expert Reports.[28] Empower's damages expert, Ryan LaMotta, issued a 75-page report detailing Empower's damages, and he has provided a declaration setting forth his conclusions that:

- Defendants' unjust enrichment can be measured by, at least, the costs that Defendants' avoided by misappropriating the trade secrets at issue as opposed to developing the same or similar information through legitimate means.

- Defendants' unjust enrichment from the misappropriation and use of the trade secrets and confidential information at issue is approximately $1.1 million in avoided development costs.

- Empower's damages can be quantified through at least two measures – its costs incurred to investigate and uncover the wrongful conduct and reasonable royalty damages.

- Empower's pre-suit investigation costs total approximately $84,358.

- The reasonable royalty that Empower and Defendants would agree to for the use of the misappropriated trade secrets and confidential information in this matter is a lump sum paid up royalty of at least $550,000.[29]

Summary judgment should be denied. Empower should be permitted to present its case to a jury.

---

[27] *See* Ex. 6, *Plaintiff Empower Clinic Services, L.L.C.'s Fourth Amended and Supplemental Initial Disclosures* at pp. 7–8.

[28] Dkt. 146.

[29] Ex. 7, Declaration of Ryan LaMotta at ¶ 2.

**C.     Texas law recognizes claims for knowingly participating in the breach of fiduciary duties, which is what Empower asserts, so summary judgment is not proper.**

Mr. Ludowig argues he is entitled to summary judgment on Empower's aiding and abetting claim "because no such claim exists under Texas law."[30] Mr. Ludowig's argument is irrelevant, however, because he overlooks the fact that Empower's factual allegations align with a claim for knowing participation in a breach of fiduciary duty, which is a claim recognized under Texas law. *Young Innovations, Inc. v. Dental Health Prods.*, No. 4:18-01726, 2019 WL 13211665, at *3 (S.D. Tex. Aug. 8, 2019) (citing *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007)); *NRT Tex. LLC v. Wilbur*, No. 4:22-cv-02847, 2023 WL 8869368, at *6 (S.D. Tex. Oct. 20, 2023) (same); *Oracle Elevator Holdco, Inc. v. Exodus Sols., LLC*, No. 4:19-CV-4658, 2021 WL 4077581, at *14 (S.D. Tex. 2021) (J. Ellison) (same). A complaint that contains sufficient factual allegations to support a particular claim survives dismissal even if it mislabels the legal theory. *NRT Tex. LLC*, 2023 WL 8869368, at *6 (citing *Groden v. City of Dallas*, 826 F.3d 280, 284 (5th Cir. 2016) (denying Rule 12(b)(6) motion)).

Empower's factual allegations support a claim for Mr. Ludowig's knowing participation in a breach of fiduciary duty. That claim has three elements: "(1) the existence of a fiduciary relationship; (2) that the third party knew of the fiduciary relationship; and (3) that the third party was aware that it was participating in the breach of that fiduciary relationship." *Id.* (citing *D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 216 (5th Cir. 2018) (quoting *Meadows*, 492 F.3d at 639)). Empower alleged (1) Defendant David Teer owed a fiduciary duty to Empower by virtue of his status as a Senior Director of Empower; (2) Mr. Ludowig, an attorney, knew of Defendant Teer's position as a Senior Director of Empower Pharmacy; and (3) Mr. Ludowig

---

[30] Dkt. 142 at 12.

knowingly participated and substantially assisted Defendant Teer in the breach of his fiduciary duty by, among other things:

    a. Taking and misappropriating Empower's trade secrets and confidential information;

    b. Disclosing Empower's trade secrets and confidential information to unauthorized recipients;

    c. Deleting or otherwise destroying incriminating evidence;

    d. Soliciting Empower employees on behalf of Defendant BFS; and

    e. Converting Empower's trade secrets and confidential information to jump start market entry and funding of Defendant BFS.[31]

Empower's factual allegations are sufficient to state a claim against Mr. Ludowig for knowing participation in a breach of fiduciary duty, and do not warrant dismissal. *Young Innovations*, 2019 WL 13211665, at *5 (declining to dismiss a knowing participation claim which was labeled as an aiding and abetting claim). Mr. Ludowig is not entitled to summary judgment on this claim.

**D. Summary judgment is not warranted on Empower's non-compete claim because (1) ethical rules apply to attorneys, not clients, and (2) the non-compete clause does not interfere with the public's right to engage Mr. Ludowig as an attorney.**

Mr. Ludowig argues he is entitled to summary judgment on Empower's non-compete claim based on Rule 5.06 of the Texas Rules of Professional Conduct.[32] He cites no case law construing this rule, and he makes no substantive argument justifying summary judgment. Rule 5.06 states:

> A lawyer shall not participate in offering or making:
>
> A. A lawyer shall not be a party to or participate in a partnership agreement with another lawyer that restricts the right of a lawyer to practice after the termination of a relationship created by the agreements, except as a condition to payment of retirement benefits.

---

[31] Dkt. 92 ¶¶ 105–109.

[32] *See* Dkt. 142 at 12.

> B. In connection with a settlement of a controversy or suit, a lawyer shall not enter into an agreement that restricts his right to practice law.

Empower is not a law firm and it is not subject to Rule 5.06 or any rules governing the professional conduct of attorneys in Texas. *See DISH Net. Corp. v. Shebar*, No. 2017-cv-31079, 2017 Colo. Dist. LEXIS 87, at *9 (D. Colo. May 9, 2017) (attorney ethical rules "serve to protect the client from unethical conduct by the attorney, and it is not any part of their purpose is to protect the attorney from his client.").

As *Shebar* explains, the policy behind the adoption of rules of professional conduct is to set ethical standards for the practice of attorneys. *Id.* at *9. The rules are not set up to restrict the activity of non-attorneys. *Id.* The rules serve to protect the client from unethical conduct by the attorney, and it is not any part of their purpose is to protect the attorney from his client. *Id.* Thus, the rules are not to be enforced so that they would work to the detriment of the client to unfairly benefit the attorney. *Id.*

The court in *Shebar* refused to the apply the ethical restriction behind which Mr. Ludowig now hides because it would have allowed Mr. Shebar (the lawyer) to benefit while causing harm to DISH Network (the non-lawyer, and Mr. Shebar's former employer). *See id.* at *9–10. "In other words, rather than protect the client, application of the Rule in this instance would work to the detriment of the client [DISH] in order to unfairly benefit the attorney [Shebar]." *Id.*[33]

---

[33] Every case that *Shebar* consulted "involved an attorney seeking to preclude members of his former law firm from enforcing a restrictive covenant" and it found no "court in the country ha[d] ever used RPC 5.6 or DR 2-108 as a means to preclude a non-attorney from enforcing such an agreement." *Id.* at *12.

Like the attorney in *Shebar*, Mr. Ludowig is "trying to prevent the client [Empower] from enforcing an agreement that it was not precluded from making, and permitting him to do so would work to the detriment of the client and would allow the attorney to breach an agreement he knowingly and voluntarily entered." *Id.* at *11. Like in *Shebar*, it was an ethical violation for Mr. Ludowig—not Empower—to participate in the making of the agreement containing restrictive covenants. *Id.* at *15; *see also id.* at *16 ("As observed in *Norton Frickey, P.C.*, an ethical rule should not serve as a license for an attorney to break a promise, go back on his word, or decline to fulfill an obligation, in the name of ethics." (citing *Norton Frickey, P.C. v. James B. Turner, P.C.*, 94 P.3d 1266, 1270 (Colo. Ct. App. 2004)); *Baron v. Mullinax, Wells, Mauzy & Baab, Inc.*, 623 S.W.2d 457, 462 (Tex. App.—Texarkana 1981, writ denied) ("Disciplinary Rule 2-107 should not be too readily construed as a license for attorneys to break a promise, go back on their word, or decline to fulfill an obligation, in the name of legal ethics."). The Court should reject Mr. Ludowig's attempt to flip the ethical rules—which are meant to shield non-lawyers from the misconduct of attorneys—and use them to avoid his promises to Empower's detriment.

Also, the non-compete agreement Empower seeks to enforce does not limit the public's right to engage Mr. Ludowig as an attorney. Mr. Ludowig agreed "not to engage in the manufacture, sale, and/or distribution . . .of commercial or compounded pharmaceutical products within the 'Restricted Territory'" for a defined list of entities.[34] The provision also prohibits Mr. Ludowig from activities that "may require or inevitably require disclosure of trade secrets, proprietary information, or Confidential Information."[35] State bar associations have stated that their equivalent disciplinary rules do not apply to non-compete agreements that do not limit the in-house attorney's

---

[34] *See* Dkt. 142-4 at pp. 16–17.

[35] *See* Dkt. 142-4 at p. 17.

right to practice law. *See* Connecticut Bar Association Committee on Professional Ethics (CBA Committee), Informal Opinion No. 02-05 (Feb. 26, 2002); State Bar of Nevada Standing Committee on Ethics and Professional Responsibility, Formal Opinion No. 56 (Dec. 10, 2019) (rule not implicated if company prohibits in-house attorneys from accepting a non-legal position with a competitor); Ohio Board of Professional Conduct, Advisory Opinion No. 2020-01 (Feb. 7, 2020); Washington State Bar Association, Informal Op. No. 2100 (2005) (non-compete provision unrelated to practice of law does not violate ethics rule). Even so, the focus on Mr. Ludowig's ability to practice law is misplaced because the rules of professional conduct are intended to protect the public's right to engage counsel of their choice not the attorney's unfettered right to practice. The Motion should be denied with respect to Empower's non-compete claim against Mr. Ludowig.

## IV. CONCLUSION

Empower respectfully requests the Court deny Mr. Ludowig's summary judgment motion because (1) the release does not affect Empower's claims based on Mr. Ludowig's post-release conduct, was first materially breached by Mr. Ludowig, and was procured through Mr. Ludowig's fraud, (2) Empower has provided evidence of its damages, (3) Mr. Ludowig has not met his burden of pleading and proving preemption of Empower's tort claims, (4) Empower has adequately plead a cause of action against Mr. Ludowig for knowingly participating in breaches of fiduciary duties, and (5) Mr. Ludowig cannot use the Texas Rules of Professional Conduct to escape from his non-compete agreement. Also, Empower asks the Court grant Empower such other relief to which it has shown itself entitled.

                **JACKSON WALKER L.L.P.**

              */s/ Michael H. Bernick*
              Michael H. Bernick
              State Bar No. 24078227
              S.D. Tex. ID 1439062
              mbernick@jw.com
              Harris J. Huguenard
              State Bar No. 24099615
              S.D. Tex. ID 3007223
              hhuguenard@jw.com
              Michael A. Drab
              State Bar No. 34115826
              S.D. Tex ID 3665349
              mdrab@jw.com
              1401 McKinney, Suite 1900
              Houston, Texas 77010
              (713) 752-4200 – phone

              Benjamin A. Herbert
              California State Bar No. 277356
              Miller Barondess, LLP
              2121 Avenue of the Stars, Suite 2600
              Los Angeles, CA 90067
              (310) 552-4400
              ***Admitted Pro Hac Vice***

                **ATTORNEYS FOR PLAINTIFF**

                  **CERTIFICATE OF SERVICE**

    I hereby certify that service of a true and correct copy of the above and foregoing document will be automatically accomplished through notice of electronic filing and in accordance with the Federal Rules of Civil Procedure on May 9, 2025, to all counsel of record.

                          */s/ Michael H. Bernick*
                          Michael H. Bernick