UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION

| | |
|---|---|
| EMPOWER CLINIC SERVICES, L.L.C.,<br><br>　　　　Plaintiff<br><br>v.<br><br>BIO FILLING SOLUTIONS INC. F/K/A BIO42 CLINICAL FILING SOLUTIONS INC., *et al.*<br><br>　　　　Defendants | Case No. 4:23-cv-4123<br><br>**Jury Trial Demanded** |

**Plaintiff's Response to Defendant's Motion for Leave to File an Amended Answer and Affirmative Defenses to Second Amended Complaint and to Assert Counterclaims (Dkt. No. 138).**

　　Almost five months after the deadline to amend pleadings, and just three months before trial is set, Mr. Ludowig seeks to inject numerous counterclaims and affirmative defenses that he could have asserted long ago, and in effect, unwind this Court's Scheduling Order. Because the deadline to amend pleadings expired on **December 16, 2024**, Mr. Ludwig must establish "good cause" to be granted leave to file his amended answer. Fed. R. Civ. P 16(b)(4). Mr. Ludowig cannot meet this burden. Mr. Ludowig has known about the majority of his new counterclaims and defenses since Empower first brought this case against him, at the latest. Further, by his own admission, Mr. Ludowig has known about the counterclaims and defenses related to his defamation counterclaim since January 2025, at the latest, and yet, in stark contrast to the purported offense Mr. Ludowig takes with these articles, waited nearly 3 months, until April 18, to seek leave to file an amended answer. His lack of diligence is fatal to establishing good cause.

　　Mr. Ludowig's late-breaking effort to reshape this 18-month-old case by injecting new counterclaims and defenses is the result of Mr. Ludowig's recent decision to terminate his arrangement with his prior counsel at Hanszen Laporte LLP (*where Mr. Ludowig worked as a*

*Partner in the litigation group during this litigation*) and to retain new counsel and adopting a new litigation strategy. But the addition of new counsel does not justify the allowance of untimely claims and defenses. *Nguyen v. Versacom, LLC*, 2016 WL 7426126, at *3 (N.D. Tex. Dec. 23, 2016) ("recent change of counsel does not entitle [a party] to attempt to undo the strategic choices made by [the party's] prior counsel."). Switching horses right before battle is no basis to delay the inevitable for Mr. Ludowig. What Mr. Ludowig is really seeking here is to turn this case, which is fundamentally about trade secret misappropriation, into a sideshow, enabling Mr. Ludowig to disparage Empower with counterclaims and defenses that have no merit in fact or law.

    We are now five months past the amendment deadline, discovery has closed, and the trial date is a mere three months away. The Fifth Circuit has recognized that the denial of requests like Mr. Ludowig's is proper under these circumstances. *See SW. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003) (affirming denial of motion to amend and finding of prejudice to nonmovant when (i) discovery had closed, (ii) deadline to amend pleadings under the scheduling order had passed, (iii) movant had already previously amended his pleadings, and (iv) case was set for trial). The sun is setting on this case, and the parties should be focused on taking it to a jury, not on litigating new, and entirely baseless, counterclaims and defenses. As such, Mr. Ludowig's motion should be denied.

I. **PROCEDURAL BACKGROUND**

On October 30, 2023, Empower filed its Original Complaint. (Doc. 1). On December 18, 2023, the Defendants filed their Original Answer to Empower's Original Complaint. (Doc. 23).

On December 22, 2023, Empower filed its First Amended Complaint, and included former Empower General Counsel Matthew Ludowig as a Defendant. (Doc. 24). On January 22, 2024, the Defendants (including Mr. Ludowig) filed their answer to the First Amended Complaint. (Doc. 32).

On June 13, 2024, Empower filed an Agreed Motion for Continuance. (Doc. 76). ***All Defendants, including Mr. Ludowig, agreed to the requested continuance of the case deadlines***. *Id*. On June 21, 2024, the Court issued an Amended Scheduling Order. (Doc. 78). *Id*. Under the Order, the deadline to amend pleadings or add new parties was set for December 16, 2024. *Id*. The deadline to conduct discovery was set for April 4, 2025. *Id*. The motions deadline was set for April 18, 2025. *Id*. The trial date was set for August 18, 2025. Notably, the Order expressly states that "No continuance will be granted because of information acquired in post-deadline discovery". *Id*.

On December 16, 2024, Empower timely filed its Second Amended Complaint. (Doc. 92).

On January 8, 2025, the Defendants (including Mr. Ludowig) filed their Answer to the Second Amended Complaint. (Doc. 99). Significantly, Mr. Ludowig did not assert any counterclaims against Empower at this time or at any time prior. *Id.*

On April 18, 2025—over four months after the pleading amendment deadline—Mr. Ludowig filed the Motion seeking to add dozens of previously unpled affirmative defenses and to assert, for the first time, four counterclaims against Empower. (Doc. 138).

## II. ARGUMENT AND AUTHORITIES

Mr. Ludowig's Motion should be denied because there is no good cause to amend his pleadings.

### A. Mr. Ludowig does not establish "good cause" to amend the scheduling order to allow him to file an amended answer with counterclaims.

Here, because a scheduling order is in place, Dkt. 78, it can be modified to allow leave to file an amended answer with counterclaims only for "good cause" and the Court's consent. Fed. R. Civ. P. 16(b)(4). In the Fifth Circuit, "good cause" for either reopening or extending deadlines is assessed under a four-factor test: "(1) the explanation for the failure to timely comply with the scheduling order; (2) the importance of the modification; (3) potential prejudice in allowing the modification; and (4) the availability of a continuance to cure such prejudice." *Squyres v. Heico Cos., LLC*, 782 F.3d 224, 237 (5th Cir. 2015). A party seeking modification also must "show that the deadlines c[ould not] reasonably be met despite the diligence of the party needing the extension." *Id.* And the Court's local rules require an affidavit or declaration to support facts not contained in the record. *See, e.g.*, LR 7.7. Mr. Ludowig has failed to meet *any* of the four factors necessary to establish "good cause" to file his amended counterclaims and affirmative defenses. Nor does Mr. Ludowig explain why the pleadings deadline in the Court's Scheduling Order could not have been met with some diligence.

### i. The first factor does not favor a continuance because Mr. Ludowig does not explain why he did not timely comply with the current scheduling order.

Courts have denied untimely motions for leave to amend when "the movant knew of the facts underlying the new claim but delayed filing a motion." *Antero Resources Corp. v. C & R Downhole Drilling, Inc.*, No. 4:16-CV-00668-Y, 2019 WL 13193895, at *4 (N.D. Tex. Jan. 3, 2019); *see also VP Sales & Mfg., L.P. v. Guerra*, No. 2:22-CV-00224, 2023 WL 8000316 at *6

(S.D. Tex. Sept. 8, 2023) (denying amendment after scheduling order deadline when movant unreasonably waited to bring counterclaim five months after deadline). Lack of diligence is commonly found where a party possessed the records underlying the desired amendment, but delayed seeking amendment. *See, e.g., Lopez v. Reliable Clean-Up & Support Servs., LLC*, No. 3:16-CV-2595-D, 2018 WL 3609271, at *4 (N.D. Tex. July 27, 2018) (declining to find good cause when a party had possessed documents relevant to amendments for at least eighteen months before moving for leave); *Shofner v. Shoukfeh*, No. 5:15-CV-152-C, 2017 WL 3841641, at *2 (N.D. Tex. Apr. 7, 2017) (denying leave to amend where the plaintiff "had access to all ... [relevant] medical records early in the case, yet waited more than a year after filing suit to first hire expert witnesses to review the records").

Mr. Ludowig provides no explanation for why he did not, and could not have, asserted defenses and claims for breach of the Severance Agreement before the pleadings deadline passed in December 2024 (or in 2023 when he was added as a Defendant). Mr. Ludowig admits that the purported breach of the release in the Severance Agreement accrued in 2023. *See* Doc. 138-1 at ¶ 103. He was also aware that the Severance Agreement purportedly contains a provision that Mr. Ludowig claims prevented the parties from suing each other in the first place. *See* Doc. 138 at 2. Rather than timely raising these claims and defenses, Mr. Ludowig waited to until April 2025 to seek leave. Mr. Ludowig claims new "facts" have recently come to light that support these claims and defenses, but he doesn't identify them. Even so, if Mr. Ludowig thought the Severance Agreement nullified Empower's lawsuit and provided him claims against Empower, he should have raised that claim and defense long ago. He does not and cannot explain this lack of diligence. *See Lopez*, 2018 WL 3609271, at *4 (no good cause when a party had possessed documents relevant to amendments for at least eighteen months before moving for leave).

This lack of diligence also hangs over Mr. Ludowig's counterclaim for Retaliation and Wrongful Discharge under *Sabine Pilot*. Mr. Ludowig's Motion does not acknowledge or explain his delay. Instead, Mr. Ludowig's Motion concedes what everyone has known since the inception of this case: Mr. Ludowig left Empower back in 2023. *See* Doc. 138 at 9. If Mr. Ludowig believed he had been retaliated against/wrongfully discharged, he should have brought these claims in 2023 (or at any time in 2024 before the amendment deadline in December 2024). He chose not to. Mr. Ludowig should not be permitted to change his mind three months before trial and after the deadline to amend has passed.

Mr. Ludowig's other claims related to conduct that allegedly occurred after the pleadings deadline fair no better. *See* Doc. 138 at 11–12. The articles that allegedly support Mr. Ludowig's new claims were published on December 20, 2024 and January 31, 2025, respectively. *See id.*; *see also* Doc. 138-3. Yet, Mr. Ludowig never explains why he waited until April to raise these counterclaims. As further explained below and in response to Mr. Ludowig's request for a continuance, moreover, these claims have no merit in fact, and are an attempt by Mr. Ludowig to turn this case (a trade secret misappropriation lawsuit related to the creation of a business designed to compete against Empower) into a sideshow where Mr. Ludowig seeks to exercise an apparent vendetta against Empower, his former employer.

In sum, this factor supports the denial of Mr. Ludowig's Motion.

### ii. Mr. Ludowig's has not demonstrated the importance of the claims and defenses he seeks to add.

Mr. Ludowig contends his amendment is important because it will impact his prospect of recovery, it will allow for greater efficiency because these claims provide helpful background information, and because the defenses related to the Severance Agreement signed in 2023 "absolve

Mr. Ludowig from any and all liability." Doc. 138 at 16–18. He is wrong on all fronts. First, as analyzed in detail in Empower's response to Mr. Ludowig's motion for summary judgement, the Severance Agreement does not absolve Mr. Ludowig from liability because (1) Mr. Ludowig obtained the release in the Severance Agreement through fraud, rendering it void; (2) Mr. Ludowig materially breached the Severance Agreement first, excusing Empower from its obligations under the agreement; and (3) Mr. Ludowig is still liable for conduct he engaged in after August 13, 2023, the effective date of the release. Indeed, the fact that neither Mr. Ludowig, a seasoned litigator, nor his experienced counsel at Hanszen Laporte LLP previously raised this defense demonstrates that it is pyrite, not gold.

Second, permitting Mr. Ludowig's counterclaims would not result in a more "efficient" trial because his counterclaims have no bearing on Empower's claims related to trade secret misappropriation. *See* Doc. 138 at 16—17. Mr. Ludowig makes no effort to explain how "all of the facts related to Empower's claims" for trade secret misappropriation and his "proposed Counterclaims," including claims for wrongful termination and intentional infliction of emotional distress, are "intertwined"—he just makes the statement, apparently hoping to manifest its truth. *See id.* That Mr. Ludowig's proposed counterclaims and Empower's claims are "largely based upon facts occurring during the same periods of time" is inapposite. Even if Mr. Ludowig was correct that his proposed counterclaims and Empower's claims are "largely based upon facts occurring during the same periods of time," that would still not support allowing Mr. Ludowig's proposed amendment here. *See Lopez*, 2018 WL 3609271, at *5–*6 (denying motion for leave to amend where the proposed amendment "addresses the same subject matter" as existing claims because "the proposed counterclaim significantly changes the scope of the litigation); see *also Cole v. Sandel Medical Industries, L.L.C.*, 413 Fed. App'x 683, 688–89 (5th Cir. 2011) (affirming

denial of motion to amend, despite proposed amendment being "based on the same set of facts as" other claims because "there [was] no reason [plaintiff] could not have asserted them" earlier). Nor would the road to trial, assuming the addition of Mr. Ludowig's counterclaims, be smooth and "efficient." Mr. Ludowig himself admits that these counterclaims would require at least three months of additional discovery if not more, *see* Doc. 138 at 20 ("Mr. Ludowig . . . would agree to further extension if Empower sought one"), which would almost certainly lead to additional expert discovery and motion practice, further risking utter derailment of this case. Mr. Ludowig, apparently concerned about what transpired at the hearing on Empower's Motion for Spoliation, is now keen on uncovering any allegation he can make about Empower's employees and business.

Finally, Empower is unaware of, nor does Mr. Ludowig cite, any authority in the 5th Circuit that makes the "prospect of recovery" a salve for untimely counterclaims. For example, in *Feldman*, the court allowed the Plaintiff to amend its existing complaint to cure pleading defects that the other side had challenged as insufficient. *Feldman v. Stryker Corp.*, 2020 WL 2507684, at *2 (N.D. Tex. May 15, 2020). Neither *Feldman*, nor any other case in the Fifth Circuit stands for the proposition that late-breaking claims should be injected into a case because they would benefit the moving parties' "prospect of recovery." Mr. Ludowig has not demonstrated that this factor supports his request, further supporting denial of his Motion.

### iii. Allowing amendment would prejudice Empower by unnecessarily complicating and expanding the scope of the litigation.

The third factor weighs against a finding of good cause because Mr. Ludowig's proposed amended pleading would significantly change the scope of litigation and impose undue prejudice on Empower. Courts have denied amending a scheduling order—and found prejudice to the nonmovant—when it "significantly change[s] the scope of litigation." *Lopez*, 2018 WL 3609271

at *5. Courts have also found prejudice when an amendment "result[s] in an increase in the expenses of [the] litigation". *Curtis v. State Farm Lloyds*, 2004 WL 1621700, at *7 (S.D. Tex. Apr. 29, 2004); see also *Ruiz v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, 291 F.R.D. 170, 172 (S.D. Tex. 2013) (finding prejudice when nonmovant would be forced to "reconsider its own case strategies and theories and would undoubtedly result in additional motions, responses, and delay in this case"). Mr. Ludowig's proposed amended pleading would do both.

Allowing Ludowig to convert this case into a wrongful termination and IIED lawsuit at the eleventh hour would "significantly change the scope of the litigation," thereby prejudicing Empower. *See Lopez*, 2018 WL 3609271 at *5; see also *Ruiz*, 291 F.R.D. at 172. Even though Empower has diligently litigated and sought discovery within the confines of the existing case, Empower will incur significant additional expenses were it required to litigate Mr. Ludowig's proposed new defenses and counterclaims, including conducting additional discovery, deposing Mr. Ludowig (again) as well as any relevant new witnesses or any newly-designated expert witnesses, and potentially having to designate its own additional experts in response.

Mr. Ludowig's Motion essentially ignores the significant prejudice to Empower, arguing instead that, because Empower should not be "surprised" by the claims, Empower "cannot claim any prejudice," and even if it could, the amendments should still be allowed "because Empower does not have clean hands." Doc. 138 at 19–20. The sole case Mr. Ludowig cites for his argument, *Thomas v. St. Joseph Health System*, is inapposite, and involved an amendment that movant specifically raised prior to seeking leave to amend. *See* 2022 WL 4349319, at *10–*11 (N.D. Tex. Sept. 19, 2022) (granting leave to amend where plaintiff "put [defendant] on notice of his RICO claim" over eighteen months prior to seeking leave and where the amendment related to claims at issue in the case). Unlike *Thomas*, Mr. Ludowig *never* put Empower on notice that he might seek

to bring claims for wrongful termination and IIED, and those claims are entirely untethered from Empower's trade secret misappropriation claims. Mr. Ludowig simply cannot overcome that his proposed amendments are highly prejudicial to empower. *See Lopez*, 2018 WL 3609271 at *5; *Curtis*, 2004 WL 1621700, at *7; *see also Ruiz*, 291 F.R.D. at 172. Thus, this factor too weighs against modifying any deadlines.

### iv. A continuance would not cure Empower's prejudice and would improperly reward Ludowig's delay.

The fourth factor weighs against a finding of good cause because a continuance would not cure the prejudice of an amendment, but would actually exacerbate Empower's prejudice. The Fifth Circuit has noted that although prejudice to a party could be "ameliorated by a continuance ... delaying ...trial never is ideal." *Rushing v. Kansas City Southern Railway Co.*, 185 F.3d 508, 509 (5th Cir. 1999); *Mathis v. Exxon Corp.*, 302 F.3d 448, 459 n.16 (5th Cir. 2002). Courts have denied leave to amend when the amendment would "result in an increase in the expenses of [the] litigation and delay the court-imposed schedule." *Curtis*, 2004 WL 1621700, at *7; *see also Ruiz*, 291 F.R.D. at 172 (finding continuance insufficient to cure prejudice when it would result in substantial expense and delay). Courts have also found a continuance insufficient to cure prejudice when discovery would have to be reopened, and the trial date rescheduled. *Prevmed, Inc. v. MNM-1997, Inc.*, 2016 WL 3773399 at *10 (S.D. Tex. July 8, 2016) (finding continuance insufficient to cure prejudice when discovery would have to be reopened and trial be pushed to a later date).

Here, a continuance would not cure the prejudice Empower would suffer if leave to amend is granted. In reality, it would exacerbate Empower's prejudice because it would thwart Empower's trial preparation and strategy, and subject it to needless expense and delay. Empower would have to conduct more discovery, redirect time and effort away from its trial preparation and towards

litigating the wrongful termination and IIED claims, and the August 18, 2025 trial date would have to be moved, all to Empower's detriment due to unavoidable expense and delay. The fourth factor weighs against a finding of good cause. Because Mr. Ludowig has not shown that a single "good cause" factor is met here, his Motion should be denied.

### B. Justice does not require granting leave to amend under Rule 15(a)(2).

The Court need not address Rule 15(a)(2) because Ludowig has failed to demonstrate good cause to amend the Scheduling Order. *See Ruiz*, 291 F.R.D. at 172. But even if the Court finds good cause to amend under Rule 16(b)(4), it should still deny Ludowig's Motion under Rule 15(a)(2). *See Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (affirming district court's denial of motion to amend under Rule 15 when facts underlying claim were available to movant, but movant unreasonably delayed in raising them).

If the movant demonstrates good cause to modify the scheduling order, then Rule 15(a)'s standard still applies. *Olivarez v. T-Mobile USA, Ltd.*, 997 F.3d 595, 602 (5th Cir. 2021). In deciding whether to grant leave to file an amended pleading under Rule 15(a), a district court may consider factors, such as bad faith or dilatory motive on the part of the movant. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Courts have denied motions to amend under Rule 15(a)(2) when movants were aware of the facts underlying their proposed counterclaims long before they filed a motion to seek the amendment. *See Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 644 (5th Cir. 2007) (affirming the district court's denial of leave to amend under Rule 15 because the plaintiffs "had been aware of the factual underpinnings of the [new] fraud claim for some time, and ... they had not been diligent in pursuing the claim"); *see also Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993) (affirming district court's denial of leave to amend under Rule 15 for bad faith

and dilatory motive when plaintiff had "ample opportunity to investigate claims and seek leave to amend" but failed to do so).

As described above, Mr. Ludowig was well aware of the alleged conduct that support his claims long before (in some instances, years) before he filed his Motion. He has had an ample opportunity to investigate these claims and seek leave to amend his pleadings but failed to do so. Such late requests amount to nothing more than dilatory tactics in an attempt to shift the scope of the litigation. Moreover, reopening the floodgates of discovery would immensely prejudice Empower at this late stage of the litigation. Justice is not on Mr. Ludowig's side.

### C. Unable to establish any of the good cause factors, Mr. Ludowig resorts to false statements and attacks on Empower and its counsel.

In addition to his other failing arguments that were disposed of above, Mr. Ludowig alleges he should be permitted to add new claims and defenses because (1) he claims a witness—Michael Lambert—lied in a declaration; and (2) Empower is allegedly selectively enforcing its non-compete agreements and manipulating the media. These allegations are unsupported by both law and evidence and do not support good cause.

#### i. The Lambert developments do not support good cause.

Mr. Ludowig's arguments regarding the Lambert settlement may be easily dispatched because they are unsupported by law or evidence. Mr. Ludowig accuses Empower's counsel of suborning perjury, *see* Doc. 138 at 11, which counsel for Empower vehemently denies. This serious accusation is an attack on Empower's counsel that was made without any evidence or the professional courtesy of a conference on the matter. Looking past his bluster and salacious allegations, Mr. Ludowig does not identify a single fact contained within Mr. Lambert's declaration—which is in Mr. Ludowig's possession—that he contends is false. *Id.* Nor does he

express any basis for contending any statement is false. *Id.* Even if Mr. Ludowig allegedly did not know the contents of Lambert's declaration until March 26, 2025, he still had could have immediately moved to amend his lawsuit at that time. But Mr. Ludowig chose not to take *any* action until filing his Motion on April 11, 2025. As Mr. Lambert's counsel noted in his letter to the Court, "Mr. Ludowig's latest actions highlight a trial strategy that is both disjointed and aimed at disrupting the disposition of this litigation. The collateral damage of Mr. Ludowig's strategy of obfuscation over resolution is that Mr. Lambert is dragged back into this lawsuit with baseless allegations of defamation and perjury that serve only Mr. Ludowig's desire to avoid being held responsible for his actions." Doc. 145-5.  Mr. Ludowig does not address any of the good cause factors to show why Mr. Lambert's declaration, supports the injection of any new claims in this case.

### ii. Purported selective enforcement of contractual obligations and alleged media manipulation—without evidence—do not establish good cause.

Instead of analyzing any of the four factors related to establishing good cause, Mr. Ludowig instead opts for a wide array of ethical accusations that are demonstrably false and derogatory. Before making his attacks, Mr. Ludowig suggests—without evidence—that Empower selectively enforces its confidentiality agreements and that is somehow sufficient to show good cause for a continuance. *See, e.g.*, Doc. 138 at 5, 14–15. Not so. Mr. Ludowig cites no authority for this assertion. *See id.* And he does not explain why he did not explore Empower's alleged selective enforcement from the moment he was sued in December 2023 (perhaps because his former counsel knew this discovery had no bearing on the issues in the case). *See id.* Mr. Ludowig presents no evidence suggesting he was precluded from discovering and developing this theory earlier, instead relying on an argument that ultimately amounts to either "I changed my mind" or "I did not think

about it sooner." *See id.* at 14–15. And as to Mr. Ludowig's allegations that Empower has engaged in a "media campaign", that allegation is a sideshow that is irrelevant to the parties' claims and defenses. *Id.* at 12. These attacks are baseless, and are not good cause for injecting new claims just a few months before trial.

### D. Mr. Ludowig's (in)actions do not constitute excusable neglect.

In his Motion for Continuance (but, for some reason, not the Motion this Response addresses), Mr. Ludowig concedes that a party must show that it did not timely act to meet a deadline because of excusable neglect. Doc. 133 at 16. Relevant factors used to assess "excusable neglect" include: (1) the danger of prejudice to the non-movant; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the movant's reasonable control; and (4) whether the movant acted in good faith. *Graham v. HRchitect, Inc.*, No. 4:16-CV-743, 2017 U.S. Dist. LEXIS 118549, at *4 (E.D. Tex. 2017). Mr. Ludowig fails to provide any evidence to show excusable neglect and all factors of the test weigh against granting the relief he seeks.

#### i. The danger of prejudice to the non-movants is apparent.

As described above, the danger of allowing these new claims, would necessarily cause Empower to expend more time and financial resources to litigate a case that has already completed substantial discovery. Mr. Ludowig compares this request to the *Canal Indem. Co.* case, Doc. 138 at 2, but that case is inapposite. There, a defendant was granted leave to file additional crossclaims against a co-defendant after the pleadings deadline. *Canal Indem. Co. v. Caljet, II, LLC*, 2023 WL 3695623, at *1 (S.D. Tex. Jan. 12, 2023) (Bennett, J.). In response, the co-defendant was similarly granted an extension to file a motion for summary judgment on the new claims. *Id.* Fundamental fairness required this extension because there was no way the co-defendant could have moved for

partial summary judgment on the new claims by the existing motions deadline. *Id.* Those are not the circumstances presently before the Court. Empower *timely* amended its lawsuit in December 2024 to add one Defendant (Mr. Lambert; not doubling the number of Defendants as Mr. Ludowig's Motion represents) and to add a single additional claim against Mr. Ludowig.[1] Unlike in *Canal*, these claims were added months before Mr. Ludowig's deadline to file a dispositive motion and, in response to the amended Complaint, Mr. Ludowig had the right to raise any new claim or defense he so desired. That is exactly what he did when he filed an answer to the Second Amended Complaint, choosing not to raise any counterclaims or the myriad affirmative defenses he now seeks to inject into this case. Doc. 99. That Mr. Ludowig changed his mind does not nullify the prejudice that will befall Empower if the Court allows Mr. Ludowig's amendment.

### ii. The impact of the delay Mr. Ludowig seeks is not minimal.

Mr. Ludowig contends any prejudice to Empower can be cured by a continuance. This is not so. Mr. Ludowig has not sought leave to conduct limited, targeted discovery, nor does he demonstrate that the discovery he seeks has anything to do with the claims and defenses that have been on file for months. Instead, Mr. Ludowig has sought extra time to explore theories he had not previously considered (that Empower might selectively enforce its noncompetes), to cross-examine former co-workers he's known about since before he was sued in 2023 (Messrs. Samudre, Lambert, Noorian, and Abrarpour), and to depose a witness with whom he has personally carried on dozens of conversations with regarding Empower and this litigation (Mr. Nicholas). Doc. 133 at 8, 12-13. His strategy would create an entirely new stream of litigation not previously

---

[1] Mr. Ludowig complains that Empower did not seek leave of Court when it filed its Second Amended Complaint but Empower was not required to seek leave in connection with its timely amendment. Tellingly, Mr. Ludowig did not object to the timeliness of the amendment.

contemplated by the parties or the pleadings, and penalize Empower for its comparative diligence. The Court should not endorse Mr. Ludowig's approach and should not grant his request.

### iii. Mr. Ludowig's prior litigation strategy was within his reasonable control, and second guessing that chosen strategy does not justify prejudice to Empower and does not constitute excusable neglect.

Mr. Ludowig retained and possessed competent counsel since appearing on January 22, 2024. Doc. 32. At all times, the trial strategy was advanced and according to his wishes. This includes Mr. Ludowig's decision to proceed with his former law partner at Hanszen Laporte representing Mr. Ludowig jointly with the other defendants. It was a foreseeable consequence of that joint representation—and Mr. Ludowig knew or should have known—that new counsel could be required if a conflict arose between Mr. Ludowig and his other defendants. Mr. Ludowig assumed that risk when he did not initially proceed with separate counsel. This intentional decision by Mr. Ludowig was totally within his control. Any change of heart Mr. Ludowig may now have is not a sufficient basis to reopen all deadlines and delay trial.

### iv. Mr. Ludowig cannot be prejudiced by proceeding with deadlines he agreed to, and he is not foreclosed from bringing a new lawsuit, should he deem it necessary.

Mr. Ludowig does not (and cannot) explain why he would be precluded from bringing a separate lawsuit against Empower for these new claims he alleges to have only recently discovered (to the extent they are not time barred or barred for some other legal reason that is unrelated to the matter before this Court). That is his burden, which he has not met.

### III. CONCLUSION

Mr. Ludowig's delay in this case is inexcusable. His late breaking decision to change counsel and change litigation strategy should not serve as a prejudice to Empower. Mr. Ludowig's Motion should be denied.

Respectfully Submitted,

**JACKSON WALKER L.L.P.**

*/s/ Michael H. Bernick*
Michael H. Bernick
State Bar No. 24078227
S.D. Tex. ID 1439062
mbernick@jw.com
Harris J. Huguenard
State Bar No. 24099615
S.D. Tex. ID 3007223
hhuguenard@jw.com
Michael A. Drab
State Bar No. 34115826
S.D. Tex ID 3665349
mdrab@jw.com
1401 McKinney, Suite 1900
Houston, Texas 77010
(713) 752-4200 – phone
(713) 752-4221 – fax

Benjamin A. Herbert
California State Bar No. 277356
Miller Barondess, LLP
2121 Avenue of the Stars, Suite 2600
Los Angeles, CA 90067
(310) 552-4400
*Pro Hac Application Pending*

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

    I hereby certify that service of a true and correct copy of the above and foregoing document will be automatically accomplished through notice of electronic filing and in accordance with the Federal Rules of Civil Procedure on May 9, 2025, to the following:

                                         */s/ Michael H. Bernick*
                                         Michael H. Bernick