**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| Empower Clinic Services, L.L.C., | |
|      Plaintiff, | |
| v. | Case No. 4:23-cv-4123 |
| Bio Filling Solutions Inc. f/k/a Bio42 Clinical Filling Solutions, Inc., Hanson Irwin Group LLC, David Teer, Lisa Hudanich, Matthew Ludowig, Marc Hanson, Jerry Irwin, and Michael Lambert, | |
|      Defendants. | |

**DEFENDANT MATTHEW LUDOWIG'S OPPOSED MOTION FOR LEAVE TO FILE
AN AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO SECOND AMENDED
<u>COMPLAINT AND TO ASSERT COUNTERCLAIMS</u>**

Defendant Matthew Ludowig ("Mr. Ludowig" and/or "Defendant"), pursuant to Rules 13, 15(a), and 16(b) of the Federal Rules of Civil Procedure, respectfully seeks leave to file an Amended Answer and Affirmative Defenses with Counterclaims to Plaintiff Empower Clinic Services, LLC's d/b/a Empower Pharmacy ("Empower") Second Amended Complaint, a proposed copy of which is attached as <u>Exhibit A</u>.

## I.    <u>INTRODUCTION</u>

Empower initiated this complex case (against just four defendants) in October 2023 with a twenty-six page, eleven count complaint alleging everything from theft of trade secrets to civil conspiracy. Empower then took fourteen (14) months to develop and *expand* its claims, during which it substituted new counsel, asked for and received time for them to get up to speed, and filed two amended complaints, culminating with the Second Amended Complaint that doubled the original number of defendants and filled six more pages with allegations. Significantly, Empower filed its Second Amended Complaint on the last possible day under the Scheduling Order,

December 16, and then, having run out the clock, dropped one of those new defendants—apparently in exchange for his favorable purported testimony against Mr. Ludowig. Next, Empower sprung a spoliation motion on Mr. Ludowig and not only relied on the declaration exchanged for dismissal, but also leaked allegations from the *sealed* motion to the media, thereby disparaging Mr. Ludowig in direct violation of the non-disparagement clause of his Severance Agreement with Empower (and the Protective Order in this case).

Now, defying all notions of fundamental fairness and declining to identify any prejudice that it will suffer (much less unfair prejudice), Empower seeks to insulate itself from its blatant breaches of contract by opposing the Court granting Mr. Ludowig leave to amend, even as to the non-disparagement breach of contract claim that arose ***after*** the deadline to amend pleadings. *Cf. Canal Indem. Co. v. Caljet, II, LLC*, No. 4:19-CV-02945, 2023 WL 3695623, at *1 (S.D. Tex. Jan. 12, 2023) (Bennett, J.) (finding fundamental fairness dictated granting motion to extend deadline for summary judgment motion, where plaintiff had been granted extension to file additional claims after deadline, such that there was no way for defendant to have timely moved for summary judgment on those claims). Empower also hopes to sidestep Mr. Ludowig's dispositive defenses and claims based on ██████████████████████████████████████████ ████████████████████████████████████

Empower's opposition amounts to a technical procedural maneuver that runs counter to the Court's "strong preference for resolving disputes on the merits when possible, instead of determining the outcome solely on technical or procedural grounds." *Gray v. Killick Grp., LLC*, No. 4:21-CV-01673, 2022 WL 20688810, at *1 (S.D. Tex. Aug. 4, 2022) (Bennett, J.)(internal quotations omitted)(applying Rule 6(b) standard to motion for extension after deadline had passed).

In contrast, Mr. Ludowig and his new counsel seek to amend his Answer—which Mr. Ludowig filed while represented by former counsel less than ninety-five days ago—to add (i)

meritorious and dispositive affirmative defenses related to ███████████████████ ████████████████████████████████████████████████ ██████████████████████████, bad faith, and breach of the duty of good faith and fair dealing, (ii) a breach of contract counterclaim that accrued *subsequent to* the Scheduling Order's pleading amendment deadline and which arises from a contract integral to this litigation, (iii) a breach of contract claim based upon ███████████████████ █████████████████, (iii) an intentional infliction of emotional distress claim based upon recently learned extrajudicial attacks aimed and humiliating, degrading, and causing Mr. Ludowig and his family severe emotional distress and trauma, and (iii) a wrongful discharge claim related to Empower's termination of Mr. Ludowig solely because Mr. Ludowig ████████████ █████████████████ based upon the same.

Empower took 14 months to lock in its complaint, including an 8-month extension after it hired new counsel. Through this Motion and the Motion for Continuance filed last week, Mr. Ludowig is seeking just 3 months to allow his new counsel to develop, vet, assert, and litigate meritorious counterclaims and defenses that are wholly dispositive of Empower's claims. In these circumstances, there is more than good cause to permit Mr. Ludowig and his counsel a fair opportunity to present Mr. Ludowig's case, and it would promote both judicial and litigation economy to grant Mr. Ludowig leave to assert defenses compelling dismissal of Empower's complaint *in toto*. Additionally, the recent discovery of Empower's strategy to offer settlements to Mr. Ludowig's co-defendants (as well as other parties embroiled with Empower in litigation), in exchange for false and defamatory testimony against Mr. Ludowig, creates additionally grounds for Mr. Ludowig's requested extension of time and continuance of trial so that he can adequately present his case.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

██ ██████████████████████████████████████

3

Empower advertises that it is our nation's "most advanced 503A compounding pharmacy and 503B outsourcing facility."[1]



Empower hired Mr. Ludowig in August 2020. (ECF 92 at ¶ 22.) Mr. Ludowig was excited about the opportunity and confident that he could learn to excel in the position, but by any reasonable measure, he was going to have a significant learning curve to be the sole in-house attorney for all of the "nation's largest human drug compounding pharmacy's" legal needs.

Eventually, Mr. Ludowig came to understand why Empower hired him—

---

[1] Empower Pharmacy, *About Us*, https://www.empowerpharmacy.co/about/ (last visited Apr. 9, 2025).

[2] Empower Pharmacy, *Our 503A Facility*, https://www.empowerpharmacy.com/about/technology-innovation/facilities/503a/ (last visited Apr. 9, 2025); *see also Eli Lilly v. Empower Clinic Services, LLC*, No. 2:25-cv-02183, ECF 1 at ¶¶ 63–79 (D.N.J. Apr. 1, 2025) (outlining Empower's long history of failing to comply with state and regulatory agencies).



████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

For Mr. Ludowig, after his demotion, the situation became so toxic that Mr. Ludowig could not stay. ████████████████████████████████████████

████████████████████████, knowing that he was likely going to be a target after he left Empower. It turns out his fears were justified.

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██  ████████████████████████████████████████
████████████████████████████████



████████████████████████████████████████ Shortly thereafter he was finally fired.

Just a couple of weeks later Mr. Ludowig and Empower ██████████████████████ ████████████████████ Notably, in addition to releasing Mr. Ludowig from ███████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████ Empower also ████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████ (emphasis added). ██████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████

**D.    Procedural Posture: Empower Amends Its Pleading Without Seeking Leave of Court**

Despite this ████████████████, Empower filed its original complaint in this case in October 2023 and then amended to add Mr. Ludowig in December 2023, bringing claims against him which are based on matters that arose by reason of Mr. Ludowig's employment and/or cessation of employment, and which were almost exclusively based upon facts that occurred before ████████████████████████████████████████████████ (ECF 1, 92.) After Mr. Ludowig prevailed at the preliminary injunction hearing, Empower enlisted new counsel, who entered its notice of substitution in June 2024 and immediately moved for an enlargement of the Scheduling Order to allow them time to familiarize themselves with the case.

(ECF 70–71, 76, 79.) Mr. Ludowig did not oppose this request, and the Court granted Empower's Motion for Continuance and set the amendment of pleadings deadline on December 16, 2024. (ECF 78.) On the last day to amend its pleading under the Amended Scheduling Order, Empower filed its second amended complaint—without seeking leave of court. (ECF 92.) Mr. Ludowig answered the amended pleading on January 8, 2025.  (ECF 99.)

Prior to this motion, Mr. Ludowig had not requested any continuance of the pleadings deadlines but did agree to Empower's requested extensions.[5]

## E.    Subsequent to the Pleadings Amendment Deadline, Empower Disparages Mr. Ludowig and Deploys Tactics Designed to Defame Mr. Ludowig

On February 26, 2025, Empower settled with a co-defendant, Michael Lambert, and had Mr. Lambert execute a declaration in support of Empower's case. While the declaration is riddled with false statements and other facts that Mr. Lambert purportedly "learned" during litigation (which Mr. Ludowig understands to be statements that Empower prepared and told him to sign), the declaration shifted the landscape of the case. Mr. Ludowig recognized that Empower's true goal in this litigation is to target him. Mr. Ludowig then learned that Empower was also offering settlement to other co-defendants (who were represented by Mr. Ludowig's former counsel) if the co-defendants would provide similar declarations. Empower creating this ethical and strategic conundrum forcing Mr. Ludowig to retain the new, undersigned counsel, who entered its substitution of counsel on April 1, 2025.

Meanwhile, Mr. Ludowig also became aware of an article published in the Texas Lawyer that directly quotes and discusses at length Empower's "SEALED MOTION" for sanctions (ECF No. 105).[6] Given that no one else had access to the sealed motion, it appears Empower made and

---

[5] Mr. Ludowig filed a Motion for Enlargement of the Scheduling Order and continuance of trial for 90 days on April 11, 2025. (ECF 133).

[6]    *See*    https://www.law.com/texaslawyer/2025/01/31/general-counsel-accused-of-destroying-evidence/?slreturn=20250408-32442 (last visited April 7, 2025). A copy is attached hereto as Exhibit B**.**

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████ Other articles reporting on the sealed

motion for sanctions list a public relations firm as the "media contact" for inquiries about the

motion for sanctions—*i.e.*, it appears Empower hired a PR firm to coordinate a disparaging media

campaign against Mr. Ludowig and disclose the sealed motion, knowing that Mr. Ludowig was

hamstrung by the Protective Order and the Court's Order sealing the motion. The PR firm

Empower deployed as a hired gun does not hide its goal, as it boasts:

> Fortune magazine has called our founder and Chairman "***one of the most
> accomplished practitioners of the dark arts of public relations***." The Financial
> Times called him, "***The spin doctor's spin doctor***. The Editor of Los Angeles
> Magazine said, "Sitrick is a pure product of the 24-hour news cycle, of a culture
> dominated and defined by newspapers, magazines, TV, radio, the Internet of the
> never-ending noise streaming into our lives. Beyond his aggressiveness, beyond his
> toughness, ***what distinguishes Sitrick is his ability to play the media to his client's
> advantage***."

https://www.sitrick.com/ (last accessed April 10, 2025) (emphasis added).

Accordingly, based on these developments—████████████████████

███████████████████████████████████████████

██████████████████████ and Mr. Ludowig realizing that Empower's ████████████

███████████████████████████████████████████

████████████████████████ —Mr. Ludowig respectfully requests leave to amend

its Answer to add equitable defenses and assert counterclaims for breach of contract, intentional

infliction of emotional distress, and ████████████████████████

### III.     MEMORANDUM OF LAW

---

[7] Out of an abundance of caution, the undersigned clarifies that it does not intend to accuse
Empower's *counsel* of any ethical violations. Rather, it appears Empower—and its CEO's
infatuation with disparaging Mr. Ludowig and other employees who confront him about the sham
business that Empower operates—is behind the inappropriate tactics deployed in this matter.

## A.    Legal Standard

Rule "16(b) governs [the] amendment of pleadings after a scheduling order's deadline to amend has expired." *Marathon Fin. Ins., Inc. v. Ford Motor Co.*, 591 F.3d 458, 470 (5th Cir. 2009). "Once a scheduling order deadline to amend a pleading has expired, the party seeking to amend is effectively asking the court for leave to amend both the scheduling order and the pleading." *RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC*, 655 F. Supp. 2d 679, 694 (S.D. Tex. 2009). Rule 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "The good cause standard requires the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *S & W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003) (cleaned up).

In the Fifth Circuit, to determine whether good cause exists, district courts are required to consider four factors: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Marathon Fin. Ins., Inc.*, 591 F.3d at 470 (cleaned up). When a movant has demonstrated good cause to amend the scheduling order under Rule 16(b), then the more liberal standard of Rule 15(a) will apply to the district court's decision to grant or deny leave.

Federal Rule of Civil Procedure 15(a)(2) allows a district court to give leave to amend a pleading and leave to amend should be freely given "when justice so requires." *See* Fed. R. Civ. P. 15(a)(2). Although the decision rests within the sound discretion of the district court, the Rule "evinces a bias in favor of granting leave" and thus a district court should possess a "substantial reason" for denying a request for leave to amend. *Jamieson v. Shaw*, 772 F.2d 1205, 1208 (5th Cir. 1985) (cleaned up). Accordingly, a motion for leave to amend should not be denied unless there is undue delay, undue prejudice to the nonmoving party, or if the movant is acting in bad faith or

with a dilatory motive or has otherwise previously failed to cure deficiencies in his pleadings by prior amendments. *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.,* 786 F. Supp. 2d 1202, 1206 (S.D. Tex. 2009).

**B.      Good Cause Exists to Allow Mr. Ludowig to Modify the Scheduling Order**

All four factors that the Fifth Circuit considers in determining good cause to amend a scheduling order weigh in favor of Mr. Ludowig. *See Marathon Fin. Ins., Inc. v. Ford Motor Co.,* 591 F.3d 458, 470 (5th Cir. 2009).

1.      There Is a Legitimate Explanation for the Failure to Timely Move for Leave to Amend

First, Mr. Ludowig has sound reasons for the timing of this Motion to Amend. He could not have amended to add a counterclaim for breach of contract ▮▮▮▮▮▮▮▮▮▮ before the pleadings deadline, because the facts underlying this claim had yet to be discovered or even occur. *See N. Am. Co. for Life & Health Ins. v. Sedlmair*, No. 4:19-cv-00802-O, 2020 WL 13490843, at *1 (N.D. Tex. Sept. 30, 2020) (parties cannot "be expected to amend pleadings alleging new facts and claims before learning of the new facts."). Accordingly, Mr. Ludowig should be granted leave to amend because Empower's own actions subsequent to the pleadings deadline give rise to the claim.  If parties like Mr. Ludowig were not allowed to amend their pleadings under these circumstances, deep-pocketed parties like Empower would be incentivized to simply wait until after pleadings deadlines to engage in smear tactics that give rise to new claims and create leverage in the litigation, leaving individuals like Mr. Ludowig at a disadvantage in trying to adequately pursue the claims through separate, piecemeal litigation.

Second, although some of Empower's retaliatory actions took place long ago, Mr. Ludowig has only recently learned of new facts that caused him (and his new counsel) to recognize the basis for the proposed amended claims—*i.e.*, Empower's selective enforcement of noncompetition agreements, Empower's harassment and outrageous efforts to not only terminate him for ▮▮▮▮▮



Finally, Empower's

Mr. Ludowig was unaware of these facts at the time of his most recent Answer that he filed less than ninety-five days ago; he recently learned of these new facts that demand real-time strategic adjustments. *See Thomas v. St. Joseph Health Sys.*, No. 5:20-cv-028-H, 2022 WL 4349319, at *6 (N.D. Tex. Sept. 19, 2022) (stating courts find good cause where a "movant has recently learned of new facts through discovery that demand real-time strategic adjustments") (citing *Robles v. Archer W Contractors, LLC*, No. 3:14-cv-1306-M, 2015 WL 4979020, at *3 (N.D. Tex. Aug. 19, 2015) (sufficient explanation for amendment where party based amendment on information he found in a contract during discovery).

Therefore, because Mr. Ludowig became aware of these new facts alerting him to facts and circumstances that support his claim, he should be granted leave to assert his breach of contract, IIED, and wrongful discharge claims. These claims are not only supported by new evidence, but

---

[8] As noted, Empower's material breach of the agreement excuses Ludowig's performance under the agreement, including █████████████████████████████ and it also appears that any attempt ███████████████████████████████████████ Moreover, to the extent the Court finds that Mr. Ludowig knew about the facts giving rise to the █████████████████████ but did not bring them in his pleading three months ago, the Court should not weigh this factor against Mr. Ludowig, because he has otherwise diligently litigated this case. *See, e.g.*, *Maynard v. PayPal, Inc.*, No. 18-cv-0259-D, 2018 WL 5776268, at *3–4 (N.D. Tex. Nov. 2, 2018) (finding diligence factor weighed in movant's favor where movant at least exercised some diligence in litigating his case); *Howard v. Medicredit, Inc.*, No. 3:17-cv-3224-D, 2018 WL 3752366, at *2-3 (N.D. Tex. Aug. 8, 2018) (finding good cause where movant was litigating case during delay before moving to amend as discovery shed light on new cause of action).

also provide relevant support and context to why Empower is seeking to disparage and discredit

Mr. Ludowig in violation of ███████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████████████

       ██████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████

2.     <u>The Importance of the Amendment</u>

The second good-cause factor focuses on the importance of the amendments to the broader

litigation. *Thomas*, 2022 WL 4349319, at *8. Courts deem an amendment to be important when it

directly impacts a party's prospect of recovery. *Feldman v. Stryker Corp.*, No. 3:18-cv-1416-S,

2020 WL 2507684, at *2 (N.D. Tex. May 15, 2020). Here, Mr. Ludowig's proposed claims provide

grounds for him to recover *and* dispositive defenses. Therefore, the requested amendments are

exceedingly important. *See Kouzbari v. Health Acquisition Co., LLC*, No. 3:18-cv-0126-D, 2018

WL 6514766, at *3 (N.D. Tex. Dec. 1, 2018) (holding amendments are important where

amendment provides grounds to recover); *Drerup v. Consolidated Nuclear Security, LLC*, No.

2:19-cv-106-BR, 2020 WL 13608059, at *1–2 (N.D. Tex. Oct. 6, 2020) (finding amendments

important where affirmative defenses may absolve defendant from liability). Here, amending to

add Empower's ████████████████████████████████████████████████████

██████, would not only allow Mr. Ludowig a claim for damages, but also completely absolve him.

Moreover, all of the facts related to Empower's claims, Mr. Ludowig's Affirmative

Defenses, and the proposed Counterclaims are intertwined and based largely upon facts occurring

during the same periods of time, so having them all before the trier of fact at one time is efficient

and, more importantly, just. For example, the facts underlying Mr. Ludowig's breach of contract

disparagement claim relate to Empower's credibility, bias, and motive in pursuing this action,

which are already at issue. Further, facts relating to Empower disregarding provisions in contracts with Mr. Ludowig, disparaging him, and targeting him for other reasons (such as malice and █████████████████████████████) cuts directly against any claim by Empower that Mr. Ludowig breached any fiduciary duty or compromised any of Empower's trade secrets or confidential information. Meanwhile, despite ███████████████████ clearly superseding the contracts upon which Empower apparently relies, Empower is alleging Mr. Ludowig is the only party that breached any contract, which is categorically false and, again, impacts Empower's credibility. These facts also relate to Mr. Ludowig's existing defenses to Empower's restrictive covenant claims:  Empower is seeking to punish Mr. Ludowig ████████████ by precluding him from earning a livelihood in any capacity in the pharmaceutical industry for three years—a vastly overbroad noncompetition covenant that is not remotely tailored to any legitimate business interests, and engaging a PR firm to further disparage, harass, and harm him. Mr. Ludowig should be allowed to present all of these facts in one proceeding where the jury has the benefit of all facts relevant to all of the claims and defenses by both parties.

Indeed, the retaliation and wrongful discharge claim is *crucial* to the underlying litigation, because it (i) provides background on the relationship between Mr. Ludowig and Empower, such that it informs why Empower is ████████ and maliciously targeting Mr. Ludowig, and (ii) relates to Empower's unclean hands and why Empower—███████████████████████████ ████████████████████████—should not be allowed to enforce grossly overbroad restrictive covenants as a matter of public policy. The wrongful discharge and retaliation claim is also important because it adds a claim—which Mr. Ludowig only recently became aware of—upon which Mr. Ludowig can recover. *See Maynard v. PayPal, Inc.*, No. 3:18-cv-0259-D, 2018 WL 5776268, at *4 (N.D. Tex. Nov. 2, 2018) (finding an amendment important when it adds claims upon which the party can recover); *accord Mid-Continent Cas. Co. v. Eland Energy, Inc.*, 2009 WL 3074618, at *37 (N.D. Tex. Mar. 30, 2009);

*The Richards Group, Inc. v. Brock*, 2008 WL 1722250, at *2 (N.D. Tex. Apr. 14, 2008). Similarly, Mr. Ludowig's recent discovery of Empower's hiring of Sitrick and Company to publicly disparage Mr. Ludowig further justifies this request.

Finally, Mr. Ludowig seeks to add affirmative defenses that (i) clarify his defenses based on the Severance Agreement to ensure Empower does not argue there was a waiver of these defenses that absolve him from liability, (ii) add defenses based on E███████████████████ ██████, which will similarly absolve him from liability, and (iii) add defenses related to any claim that he misappropriated any of Empower's trade secrets or confidential information. These affirmative defenses are critical to Mr. Ludowig presenting a complete defense and will absolve Mr. Ludowig from any and all liability, as the Severance Agreement specifically prohibits any action against Mr. Ludowig based "by reason of his employment and/or cessation of employment" or "otherwise involving facts that occurred prior to" him signing it.

Mr. Ludowig should not be precluded from sharpening his affirmative defenses related to this Severance Agreement to ensure Empower does not raise technical grounds to circumvent the Severance Agreement's impact. As the Court is surely aware, the law favors resolution of matters on the merits, not by technicality. But if Mr. Ludowig is denied leave to amend, Empower may be able to escape these dispositive defenses with a technical waiver argument. *Drerup*, 2020 WL 13608059, at *1–2 (finding good cause existed to add affirmative defenses where defenses may absolve defendant of liability). Such a result would be patently unfair to Mr. Ludowig.

3.   <u>The Potential Prejudice in Allowing the Amendment, If Any, Can Be Cured by a Continuance</u>

The third and fourth factors focus on prejudice to the nonmovant if the amendment is allowed, and, if there is any prejudice, whether a continuance would cure that prejudice. *Thomas*, 2022 WL 4349319, at *8. This factor typically focuses on a *plaintiff's*—not defendant's— amendment that seeks to avoid summary judgment, which is not present here. *Id.* at *9. Courts

also look to whether the amendments will prolong the litigation, delay resolution of the case, or drastically reframe the suit. *Id.* Here there can be no prejudice or surprise to Empower and if there is, Ludowig has already sought a continuance and would be amenable to further extension if sought by Empower.

Additionally, there is significant discovery burden on the parties outside what should have been anticipated based on what was already known. For instance, the same facts underlying the wrongful discharge and retaliation claim and affirmative defense amendments relate to Mr. Ludowig's existing defense of whether Empower— ███████████████████████████ ██████████████████████████████████ —can come to the Court to request enforcement of three-year, nationwide prohibitions on working in the pharmaceutical industry in any capacity to protect its market share and profit margin. *See Marsh USA, Inc. v. Cook*, 354 S.W.3d 764, 776 (Tex. 2011) (if the covenant "is merely to restrain competition, and enhance or maintain prices," there is no primary and lawful purpose of the relationship "to justify or excuse the restraint."). Empower seeks to enforce contracts and thus can claim no surprise related to the very "Contract" which is controlling—and is central to Mr. Ludowig's defenses to Plaintiff's claims. Moreover, the recent discovery of the Lambert situation and Sitrick and Company involvement impact witness bias, Plaintiff's credibility, and whether or not Plaintiff's claims are for a proper purpose or motivated by malice. Empower cannot be surprised that the Lambert situation might require inquiry into bias of witnesses secured by them to provide false testimony against Ludowig. Indeed, there is substantial overlap between the issues in the current litigation and the amendments sought by Ludowig. *See Kouzbari*, 2018 WL 6514766, at *4 (granting leave to amend where substantial overlap existed between facts in litigation and requested amendments). Here, Empower cannot claim any prejudice but even if it could, justice requires that Mr. Ludowig be permitted to present all of his defenses and counterclaims because Empower does not have

clean hands. *Cf. Thomas*, 2022 WL 4349319, at \*9–10 (allowing amendment even where prejudice existed to non-movant)

In fact, the addition of these counterclaims promotes overall judicial economy by avoiding piecemeal litigation and allowing these claims to be adjudicated at the same time. *See Def. Distributed v. Bruck,* 30 F.4th 414, 427 (5th Cir. 2022) (holding that "[u]nder the [Federal Rules of Civil Procedure], the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties") *(*quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)) (cleaned up).

Finally, to the extent any prejudice exists, Mr. Ludowig has proposed a very modest three-month continuance of discovery to allow plenty of time for Empower to conduct discovery on these claims and would agree to further extension if Empower sought one. Thus, the availability of a continuance supports granting this request.

## C.     Justice Requires Granting Leave to Amend

Having demonstrated good cause exists to extend the deadline for amending pleadings, justice requires the Court to freely grant leave under Fed. R. Civ. P. 15(a) for Mr. Ludowig to file an amended Answer and counterclaims. Indeed, where a party satisfies the stricter "good cause" standard to extend an expired deadline, courts find that justice requires the amendment. *E.g., Thomas*, 2022 WL 4349319, at \*11; *Kouzbari*, 2018 WL 6514766, at \*4.

## IV.     CONCLUSION

For these reasons, Mr. Ludowig respectfully requests that the Court grant this Motion and give Mr. Ludowig leave to file the attached First Amended Answer and Counterclaims. Mr. Ludowig submits the attached proposed order for the Court's consideration.

                    **KABAT CHAPMAN & OZMER LLP**

                    */s/ Aaron A. Wagner*
                    Aaron A. Wagner
                    Texas Bar No. 24037655

S.D. Texas Bar No. 3813191
KABAT CHAPMAN & OZMER, LLP
171 17th Street NW, Suite 1550
Atlanta, Georgia 30363
Tel: (404) 370-7300
Fax: (404) 400-7333
Email: awagner@kcozlaw.com

*Attorney for Defendant,*
*Matthew Ludowig*

## <u>CERTIFICATE OF CONFERENCE</u>

Pursuant to Local Rule 7.1(D), I hereby certify that on April 4, 2025, undersigned counsel conferred (by way of a video teleconference meet-and-confer) with Plaintiff's counsel about this request, and Plaintiff's counsel indicated they needed to confer with their client on the request first. The undersigned discussed this request again on April 17th during a conference on Ludowig's anticipate motion to seal this filing and confirmed that Empower would not agree to this request. Again, on April 18, I offered to confer further with Plaintiff's counsel, Mike Bernick, if he thought further conference might allow Empower to agree with this relief. In response, Mr. Bernick indicated that Empower was opposed to this relief and did not seek further conference.

Dated: April 18, 2025.


*/s/ Aaron A. Wagner*
Aaron A. Wagner

<u>**CERTIFICATE OF SERVICE**</u>

This certifies that on April 18, 2025, a true and correct copy of the foregoing **DEFENDANT MATTHEW LUDOWIG'S OPPOSED MOTION FOR LEAVE TO FILE AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO SECOND AMENDED COMPLAINT AND TO ASSERT COUNTERCLAIMS** was forwarded to all counsel of record pursuant to the Federal Rules of Civil Procedure.


*/s/ Aaron A. Wagner*
Aaron A. Wagner

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| Empower Clinic Services, L.L.C., | |
| Plaintiff, | |
| v. | Case No. 4:23-cv-4123 |
| Bio Filling Solutions Inc. f/k/a Bio42 Clinical Filling Solutions, Inc., Hanson Irwin Group LLC, David Teer, Lisa Hudanich, Matthew Ludowig, Marc Hanson, Jerry Irwin, | |
| Defendants. | |

**DEFENDANT/COUNTERCLAIM PLAINTIFF MATTHEW LUDOWIG'S AMENDED ANSWER TO SECOND AMENDED COMPALINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

Defendant/Counterclaim Plaintiff Matthew Ludowig ("Ludowig") hereby submits the following Amended Answer to the Second Amended Complaint and Affirmative Defenses and Counterclaims against Plaintiff/Counterclaim Defendant Empower Clinical Services, L.L.C. ("Plaintiff" or "Empower Pharmacy").

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now, Defendant Matthew Ludowig ("Ludowig") and serves his Amended Answer and Affirmative Defenses in response to Plaintiff Empower Clinic Services, L.L.C.'s Second Amended Complaint and would show the Court as follows:

## RESPONSIVE PARAGRAPHS TO PLAINTIFF'S PLEADINGS

### I.    NATURE OF THE ACTION

1.    Ludowig admits that Plaintiff brings this action; Ludowig denies all other allegations contained in Paragraph 1 of the Second Amended Complaint.

2.    Ludowig denies the allegations of misconduct contained in Paragraph 2 of the Second Amended Complaint and denies Plaintiff is entitled to the relief sought. Ludowig admits that Plaintiff is seeking the relief it desires.

3.    Ludowig denies the allegations contained in Paragraph 3 of the Second Amended Complaint and denies Plaintiff is entitled to the relief sought. Ludowig admits that Plaintiff is seeking the relief it desires.

4.    Ludowig admits that there is an Agreed Preliminary Injunction Order (Dkt. 13) and Agreed Expedited Discovery Order (Dkt. 18). Ludowig denies that these Orders apply to him. Further, Ludowig denies that these Orders need modification.

5.    Ludowig denies generally the allegations contained in Paragraph 5 of the Second Amended Complaint and denies Plaintiff is entitled to the relief sought.

### II.    PARTIES

6.    Ludowig admits the allegations in Paragraph 6 of the Second Amended Complaint.

7.    Ludowig admits that Defendant BFS is already before the Court but notes that Defendant Bio Filling Solutions Inc. is no longer an active entity and has been wound down in accordance with Texas law.

8.    Ludowig admits that Defendant HIG is already before the Court but notes that Defendant Hanson Irwin Group LLC ("HIG") is no longer an active entity and has been wound down in accordance with Texas law.

9.     Ludowig admits the allegations in Paragraph 9 of the Second Amended Complaint.

10.     Ludowig admits the allegations in Paragraph 10 of the Second Amended Complaint.

11.     Ludowig admits the allegations in Paragraph 11 of the Second Amended Complaint.

12.     Ludowig admits the allegations in Paragraph 12 of the Second Amended Complaint.

13.     Ludowig admits the allegations in Paragraph 13 of the Second Amended Complaint.

14.     Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14 of the Second Amended Complaint, and, on that basis, denies the allegations.

### III.     JURISDICTION AND VENUE

15.     Ludowig admits the allegations in Paragraph 15 of the Second Amended Complaint.

16.     Ludowig admits that the Court has personal jurisdiction over Ludowig. Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 16 of the Second Amended Complaint, and, on that basis, denies the allegations.

17.     Ludowig admits that venue is proper in this forum but denies that Plaintiff has any causes of action against Ludowig or is entitled to any relief whatsoever against Ludowig.

3

## IV.   FACTUAL BACKGROUND

**A.   Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in heading "A" of the Second Amended Complaint, and, on that basis, denies the allegations.**

18.   Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18 of the Second Amended Complaint, and, on that basis, denies the allegations.

19.   Ludowig admits that David Teer, Lisa Hudanich, Matthew Ludowig, and Michael Lambert were employees of Empower at one time; otherwise, Ludowig denies the remainder of the allegations in Paragraph 19.

**B.   Ludowig admits that David Teer, Lisa Hudanich, Matthew Ludowig, and Michael Lambert were employees of Empower at one time, but otherwise denies that these Defendants agreed to terms of employment.**

20.   Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20 of the Second Amended Complaint, and, on that basis, denies the allegations.

21.   Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21 of the Second Amended Complaint, and, on that basis, denies the allegations.

22.   Ludowig admits that he began his employment with Empower on August 31, 2020 as in-house counsel. Ludowig admits that he reported to Shaun Noorian, Empower's CEO. Ludowig denies the remaining allegations in Paragraph 22 of the Second Amended Complaint.

23.   Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23 of the Second Amended Complaint, and, on that basis, denies the allegations.

**C.    Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in heading "C" of the Second Amended Complaint, and, on that basis, denies the allegations.**

24.    Ludowig denies the allegations contained in Paragraph 24 of the Second Amended Complaint.

25.    Ludowig denies the allegations contained in Paragraph 25 of the Second Amended Complaint.

26.    Ludowig denies the allegations in Paragraph 26 of the Second Amended Complaint.

27.    Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27 of the Second Amended Complaint, and, on that basis, denies the allegations.

28.    Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28 of the Second Amended Complaint, and, on that basis, denies the allegations.

29.    Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29 of the Second Amended Complaint, and, on that basis, denies the allegations.

30.    Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30 of the Second Amended Complaint, and, on that basis, denies the allegations.

31.    Ludowig denies the allegations in Paragraph 31 of the Second Amended Complaint.

**D.    Ludowig denies the allegations contained in heading "D" of the Second Amended Complaint.**

32.     Ludowig denies the allegations contained in Paragraph 32 of the Second Amended Complaint.

33.     Ludowig admits to communicating with the other defendants but denies the allegations in Paragraph 33 of the Second Amended Complaint.[1]

34.     Ludowig admits to meeting telephonically and via videoconference with defendants but denies the remaining allegations in Paragraph 34 of the Second Amended Complaint.

35.     Ludowig denies the allegations in Paragraph 35 of the Complaint.

36.     Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36 of the Second Amended Complaint, and, on that basis, denies the allegations.

37.     Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 37 of the Second Amended Complaint, and, on that basis, denies the allegations.

38.     Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 38 of the Second Amended Complaint, and, on that basis, denies the allegations.

39.     Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 39 of the Second Amended Complaint, and, on that basis, denies the allegations.

---

[1] Mr. Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in footnote 1 of the Second Amended Complaint, and, on that basis, denies the allegations.

40.     Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 40 of the Second Amended Complaint, and, on that basis, denies the allegations.

41.     Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41 of the Second Amended Complaint, and, on that basis, denies the allegations.

42.     Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42 of the Second Amended Complaint, and, on that basis, denies the allegations.

43.     Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43 of the Second Amended Complaint, and, on that basis, denies the allegations.

44.     Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 44 of the Second Amended Complaint, and, on that basis, denies the allegations.

45.     Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 45 of the Second Amended Complaint, and, on that basis, denies the allegations.

46.     Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 46 of the Second Amended Complaint, and, on that basis, denies the allegations.

47.     Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 47 of the Second Amended Complaint, and, on that basis, denies the allegations.

48.     Defendants deny the allegations contained in Paragraph 48 of the Second Amended Complaint.

**E.     Ludowig denies the allegations contained in heading "E."**

49.     Ludowig denies the allegations contained in Paragraph 49 of the Second Amended Complaint.

50.     Ludowig admits the registration for Bio42 Clinical Filling Solutions Inc. was filed on August 23, 2023, and identified Defendant Ludowig and Mr. Stephen Burrows as Directors. Ludowig further admits that Ludowig was involved in the leadership of Defendant BFS. Ludowig denies the remaining allegations contained in Paragraph 50 of the Second Amended Complaint.

51.     Ludowig denies the allegations contained in Paragraph 51 of the Second Amended Complaint.

52.     Ludowig admits the allegations contained in Paragraph 52 of the Second Amended Complaint and note that Defendant Bio Filling Solutions Inc. has been dissolved.

53.     Ludowig admits that Empower sent notice letters to Defendants. Ludowig denies the remaining allegations in Paragraph 53 of the Second Amended Complaint.

54.     Ludowig admits that Hanszen Laporte LLP was retained to represent defendants and that Hanszen Laporte had previously represented Empower. Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54 of the Second Amended Complaint, and, on that basis, denies the allegations.

55.     Ludowig admits the allegations contained in Paragraph 55 of the Second Amended Complaint.

56.     Ludowig admits to exploring other employment or business options in the summer of 2023. Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 56 of the Second Amended Complaint, and, on that basis, denies the allegations.

57.     Ludowig admits that draft investor decks exist, which speak for themselves. Ludowig denies the remaining allegations in Paragraph 57 of the Second Amended Complaint.

58.     Ludowig denies the allegations contained in Paragraph 58 of the Second Amended Complaint.

59.     Ludowig denies the allegations contained in Paragraph 59 of the Amended Complaint.

## V.     CLAIMS

### Count I: Violation of the Defend Trade Secrets Act

58.[2]     Ludowig incorporates his responses to the above paragraphs of the Second Amended Complaint as if fully restated herein.

59.     Ludowig denies that defendants are engaged in interstate commerce in the funding, development, marketing, and/or sale of their pharmaceutical products. Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the whether Empower engages in interstate commerce, and, on that basis, denies the allegations.

---

[2] Ludowig notes that this is the second paragraph 58, and the off numbering continues for twenty-seven more paragraphs and then reverts back to a third paragraph 60. For consistency, Ludowig is following Plaintiff's numbering in its Second Amended Complaint.

60.    Ludowig denies the allegations contained in Paragraph 60 of the Second Amended Complaint.

61.    Ludowig denies the allegations contained in Paragraph 61 of the Second Amended Complaint.

62.    Ludowig denies the allegations contained in Paragraph 62 of the Second Amended Complaint.

63.    Ludowig denies the allegations contained in Paragraph 63 of the Second Amended Complaint.

64.    Ludowig denies the allegations contained in Paragraph 64 of the Second Amended Complaint.

65.    Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 65 of the Second Amended Complaint, and, on that basis, denies the allegations.

66.    Ludowig denies the allegations contained in Paragraph 66 of the Second Amended Complaint.

67.    Ludowig denies the allegations contained in Paragraph 67 of the Second Amended Complaint.

68.    Ludowig denies the allegations contained in Paragraph 68 of the Second Amended Complaint.

69.    Ludowig denies the allegations contained in Paragraph 69 of the Second Amended Complaint.

70.    Ludowig denies the allegations contained in Paragraph 70 of the Second Amended Complaint.

10

71.     Ludowig denies the allegations contained in Paragraph 71 of the Second Amended Complaint.

72.     Ludowig denies the allegations contained in Paragraph 72 of the Second Amended Complaint.

**Count II: Violation of the Texas Uniform Trade Secrets Act**

73.     Ludowig incorporates his responses to the above paragraphs of the Second Amended Complaint as if fully restated herein.

74.     Ludowig denies the allegations contained in Paragraph 74 of the Second Amended Complaint.

75.     Ludowig denies the allegations contained in Paragraph 75 of the Second Amended Complaint.

76.     Ludowig denies the allegations contained in Paragraph 76 of the Second Amended Complaint.

77.     Ludowig denies the allegations contained in Paragraph 77 of the Second Amended Complaint.

78.     Ludowig denies the allegations contained in Paragraph 78 of the Second Amended Complaint.

79.     Ludowig denies the allegations contained in Paragraph 79 of the Second Amended Complaint.

80.     Ludowig denies the allegations contained in Paragraph 80 of the Second Amended Complaint.

81.     Ludowig denies the allegations contained in Paragraph 81 of the Second Amended Complaint.

82.    Ludowig denies the allegations contained in Paragraph 82 of the Second Amended Complaint.

83.    Ludowig denies the allegations contained in Paragraph 83 of the Second Amended Complaint.

84.    Ludowig denies the allegations contained in Paragraph 84 of the Second Amended Complaint.

85.    Ludowig denies the allegations contained in Paragraph 85 of the Amended Complaint and deny Plaintiff is entitled to the relief sought.

60.    Ludowig denies the allegations contained in Paragraph 60 of the Amended Complaint and deny Plaintiff is entitled to the relief sought.[3]

**Count III: Breach of Contract – Confidentiality and Non-Disclosure Agreement**

61.    Ludowig incorporates his responses to the above paragraphs of the Second Amended Complaint as if fully restated herein.

62.    Ludowig admits he signed a non-compete agreement with Empower but specifically denies that it was a condition of his employment, denies that it is enforceable, denies that it was ancillary to an otherwise enforceable agreement, and denies that there was any consideration. Ludowig denies the remaining allegations in Paragraph 62 of the Second Amended Complaint.

63.    Paragraph 63 is blank and does not require a response.

64.    Ludowig denies the allegations contained in Paragraph 64 of the Second Amended Complaint.

---

[3] Ludowig notes that this is the second Paragraph 60 and there are a number of other paragraph numbers that Plaintiff misnumbers or repeats. For consistency, Ludowig follows the numbers set forth in Plaintiff's Second Amended Complaint.

65.     Ludowig denies the allegations contained in Paragraph 65 of the Second Amended Complaint, as the agreements speak for themselves, are not enforceable, and Empower does not have confidential or trade secret information.

66.     Ludowig denies the allegations contained in Paragraph 66 of the Second Amended Complaint, as the agreements speak for themselves, are not enforceable, and Empower does not have confidential or trade secret information.

67.     Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 67 of the Second Amended Complaint, and, on that basis, denies the allegations.

68.     Ludowig denies the allegations contained in Paragraph 68 of the Second Amended Complaint.

69.     Ludowig denies the allegations contained in Paragraph 69 of the Second Amended Complaint.

70.     Ludowig denies the allegations contained in Paragraph 70 of the Second Amended Complaint.

71.     Ludowig denies the allegations contained in Paragraph 71 of the Second Amended Complaint.

**Count IV: Breach of Contract – Non-Solicitation**

72.     Ludowig incorporates his responses to the above paragraphs of the Second Amended Complaint as if fully restated herein.

73.     Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 73 of the Second Amended Complaint, and, on that basis, denies the allegations.

74.    Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 74 of the Second Amended Complaint, and, on that basis, denies the allegations.

75.    Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 75 of the Second Amended Complaint, and, on that basis, denies the allegations.

76.    Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 76 of the Second Amended Complaint, and, on that basis, denies the allegations.

**Count V: Breach of Contract – Non-Competition**

77.    Ludowig incorporates his responses to the above paragraphs of the Second Amended Complaint as if fully restated herein.

78.    Ludowig admits he signed a non-compete agreement with Empower but specifically denies that it was a condition of his employment, denies that it is enforceable, denies that it was ancillary to an otherwise enforceable agreement, and denies that there was any consideration. Ludowig denies the remaining allegations in Paragraph 78 of the Second Amended Complaint.

79.    Ludowig denies the allegations contained in Paragraph 79 of the Second Amended Complaint, as the agreements speak for themselves, are not enforceable, and Empower does not have confidential or trade secret information.

80.    Ludowig denies the allegations contained in Paragraph 80 of the Second Amended Complaint, as the agreements speak for themselves, are not enforceable, and Empower does not have confidential or trade secret information.

81.    Ludowig denies the allegations contained in Paragraph 81 of the Second Amended Complaint, as the agreements speak for themselves, are not enforceable, and Empower does not have confidential or trade secret information.

82.    Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 82 of the Second Amended Complaint, and, on that basis, denies the allegations.

83.    Ludowig denies the allegations contained in Paragraph 83 of the Second Amended Complaint.

84.    Ludowig denies the allegations contained in Paragraph 84 of the Second Amended Complaint.

**Count VI: Unjust Enrichment**

85.    Ludowig incorporates his responses to the above paragraphs of the Second Amended Complaint as if fully restated herein

86.    Ludowig denies the allegations contained in Paragraph 86 of the Second Amended Complaint.

87.    Ludowig denies the allegations contained in Paragraph 87 of the Second Amended Complaint.

88.    Ludowig denies the allegations contained in Paragraph 88 of the Second Amended Complaint.

89.    Ludowig denies the allegations contained in Paragraph 89 of the Second Amended Complaint.

**Count VIII: Tortious Interference[4]**

90.     Ludowig incorporates his responses to the above paragraphs of the Second Amended Complaint as if fully restated herein.

91.     Ludowig denies the allegations contained in Paragraph 91 of the Second Amended Complaint.

92.     Ludowig denies the allegations contained in Paragraph 92 of the Second Amended Complaint.

93.     Ludowig denies the allegations contained in Paragraph 93 of the Second Amended Complaint.

94.     Ludowig denies the allegations contained in Paragraph 94 of the Second Amended Complaint.

95.     Ludowig denies the allegations contained in Paragraph 95 of the Second Amended Complaint.

**Count IX: Breach of Fiduciary Duty**

96.     Ludowig incorporates his responses to the above paragraphs of the Second Amended Complaint as if fully restated herein.

97.     Ludowig denies the allegations contained in Paragraph 97 of the Second Amended Complaint.

98.     Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 98 of the Second Amended Complaint, and, on that basis, denies the allegations.

---

[4] Ludowig notes that Plaintiffs misnumbered their causes of action as well. There is no "Count VII." For consistency, Ludowig refers to the numbers Plaintiff references in its Second Amended Complaint.

99.     Paragraph 99 of the Second Amended Complaint requires the making of a legal conclusion which is not proper and does not require an admission or a denial. Ludowig denies the allegations contained in Paragraph 99 of the Second Amended Complaint.

100.    Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 100 of the Second Amended Complaint, and, on that basis, denies the allegations.

101.    Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 101 of the Second Amended Complaint, and, on that basis, denies the allegations.

102.    Ludowig denies the allegations contained in Paragraph 102 of the Second Amended Complaint.

103.    Ludowig denies the allegations contained in Paragraph 103 of the Second Amended Complaint.

104.    Ludowig denies the allegations contained in Paragraph 104 of the Second Amended Complaint.

**Count X: Aiding and Abetting Breach of Fiduciary Duty**

105.    Ludowig incorporates his responses to the above paragraphs of the Second Amended Complaint as if fully restated herein.

106.    Ludowig denies the allegations contained in Paragraph 106 of the Second Amended Complaint.

107.    Ludowig does not have knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 107 of the Second Amended Complaint, and, on that basis, denies the allegations.

108.    Ludowig denies the allegations contained in Paragraph 108 of the Second Amended Complaint.

109.    Ludowig denies the allegations contained in Paragraph 109 of the Second Amended Complaint.

110.    Paragraph 110 of the Second Amended Complaint requires the making of a legal conclusion which is not proper and does not require an admission or a denial. Ludowig denies the allegations contained in Paragraph 110 of the Second Amended Complaint.

111.    Ludowig denies the allegations contained in Paragraph 111 of the Second Amended Complaint.

112.    Ludowig denies the allegations contained in Paragraph 112 of the Second Amended Complaint.

113.    Ludowig denies the allegations contained in Paragraph 113 of the Second Amended Complaint. Further, the federal courts do not recognize an aiding-and-abetting claim because no such claim exists in Texas. *Christopher v. Depuy Orthopaedics, Inc. (In re Depuy Orthopaedics, Inc.)*, 888 F.3d 753, 782 (5th Cir. 2018); see also *Midwestern Cattle Mktg., LLC v. Legend Bank N.A.*, 800 Fed. Appx. 239, 250 (5th Cir. 2020); *Taylor v. Rothstein Kass & Co., PLLC*, Civil Action No. 3:19-CV-1594-D, 2020 WL 554583, at *5 (N.D. Tex. Feb. 4, 2020).

114.    Ludowig denies the allegations contained in Paragraph 114 of the Second Amended Complaint.

**Count XI: Civil Conspiracy**

115.    Ludowig incorporates his responses to the above paragraphs of the Second Amended Complaint as if fully restated herein.

116.    Ludowig admits that Defendants are two more persons, but denies the implications of any remaining allegations contained in Paragraph 116 of the Second Amended Complaint.

117.    Ludowig denies the allegations contained in Paragraph 117 of the Second Amended Complaint.

118.    Ludowig denies the allegations contained in Paragraph 118 of the Second Amended Complaint.

119.    Ludowig denies the allegations contained in Paragraph 119 of the Second Amended Complaint.

120.    Ludowig denies the allegations contained in Paragraph 120 of the Second Amended Complaint and deny Plaintiff is entitled to the relief sought.

121.    Ludowig denies the allegations contained in Paragraph 121 of the Second Amended Complaint and deny Plaintiff is entitled to the relief sought.

## VI.    JURY DEMAND

122.    Like Plaintiff, Ludowig demands a trial by jury.

## VII.    ATTORNEY FEES

123.    Ludowig denies that Plaintiff is entitled to attorneys' fees.

## VIII.    PLAINTIFF'S PRAYER

124.    Ludowig denies that Plaintiff is entitled to the relief requested.

## IX.    GENERAL DENIAL

125.    Ludowig denies each and every allegation, whether in numbered, misnumbered, or unnumbered paragraphs set forth in Plaintiff's Complaint that are not specifically admitted herein.

## X.    DEFENSES AND AFFIRMATIVE DEFENSES

1.      Ludowig contends that Plaintiff has suffered no damages as a result of Defendants' alleged conduct.[5]

2.      Ludowig's acts or omissions were not the actual or proximate cause of Plaintiff's damages, if any.

3.      The Non-Compete clause is unenforceable against Ludowig as it is overly broad, against public policy and an illegal restraint on trade, and lacks adequate consideration. Further Ludowig's non-compete clause, if any, was forgiven as part of a settlement of Ludowig's compensation and severance.

4.      Ludowig's claims are or may be barred in whole or in part by the doctrines of settlement, release, unclean hands, laches, and/or accord and satisfaction.

5.      Plaintiff's claims may be barred, in whole or in part, by the doctrines of waiver, promissory estoppel, equitable estoppel, and/or acquiescence.

6.      Plaintiff's claims are barred, in whole or in part, by its own fraud, illegality, bad faith, and breach of the duty of good faith and fair dealing.

7.      Plaintiff's claims are subject to set off and recoupment.

8.      Plaintiff's alleged damages, if any, are attributable in whole or in part to Plaintiff's own conduct or the conduct of other persons or entities beyond the control of Ludowig and not to the action or inactions of Ludowig.

---

[5] Due to Plaintiff's misnumbering of paragraphs throughout the Second Amended Complaint, Ludowig begins his affirmative defenses paragraphs at "1" to try to avoid confusion.

9.      The Non-Solicitation clause is unenforceable against Ludowig as it is overly broad and lacks adequate consideration. Further Defendant Ludowig's non-solicitation clause, if any, was forgiven as part of a settlement of Ludowig's compensation and severance.

10.      Ludowig alleges Plaintiff is not entitled to recover on its claims under the Defend Trade Secrets Act and the Texas Uniform Trade Secrets Act as the information at issue is not considered a trade secret. Further, the information has no independent economic value.

11.      To the extent that Ludowig acquired Plaintiff's trade secrets or other confidential information, Ludowig did not acquire them by improper means nor did they utilize same for any benefit nor did they intend to take or utilize Plaintiff's trade secrets.

12.      Plaintiff cannot recover on any of its claims relating to the taking or utilizing of trade secrets as the materials at issue do not constitute trade secrets or that were already known by any of the Defendants outside of their work with Plaintiff.

13.      Ludowig is excused from performance of any obligations under any agreement with Plaintiff, because Plaintiff materially breached its agreements with Ludowig and departed from their terms.

14.      Any alleged non-competition or non-solicitation agreement between Ludowig and Plaintiff is void as against public policy and an illegal restraint on trade.

15.      The covenants not to compete that Plaintiff seeks to enforce are unenforceable because they are not ancillary to or part of an otherwise enforceable agreement at the time the agreed was made, do not contain reasonable limitations as to time, geographical area, and scope of activity to be restrained, there are no legitimate business interests to protect, and any covenants impose a greater restraint than is necessary to protect the goodwill or other business interest of Plaintiff.

16.     The covenants not to compete are unenforceable and not binding on Ludowig because the provisions are unconstitutional under the Texas Constitution.

17.     The contracts are unenforceable and not binding on Ludowig because its terms are unconscionable.

18.     Plaintiff's claims are barred, in whole or in part, by the doctrine of mistake.

19.     Plaintiff's claims are barred because federal law, 16 C.F.R. § 910 *et seq.* preempts Texas's state laws to the extent Texas holds covenants not to compete are enforceable.

20.     Plaintiff cannot recover attorneys' fees against Ludowig.

21.     Ludowig is entitled to recover his attorneys' fees and costs for defending himself in this action.

22.     Any award of exemplary or punitive damages sought by Plaintiff would violate the due process and excessive fine clauses of the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution, as well as the Constitution of the State of Texas.

23.     Plaintiff cannot claim "trade secret" protection to any information, processes, procedures, or materials which Defendants already possessed prior to coming to work with of for Plaintiff.

24.     Plaintiff cannot recover on any breach of fiduciary claim or claim which relies on the imposition of a fiduciary relationship against Ludowig as they were not fiduciaries of Plaintiff.

25.     Plaintiff has failed to state a claim upon which relief can be granted.

26.     Plaintiff cannot recover on any of its claims relating to the taking or utilizing of trade secrets if they were provided by Plaintiff itself.

27.    Plaintiff cannot claim "trade secret" protection to any information which it ultimately abandons. Further, Plaintiff cannot recover on an unjust enrichment claim on information which does not enrich its recipient or possessor.

28.    Ludowig further asserts the defenses of:

a.    excessive demand;

b.    Plaintiff seeking recovery to which it is not entitled;

c.    abandonment;

d.    information that is common knowledge;

e.    information which is publicly available;

f.    information which is in the public domain;

g.    no breach of contract;

h.    no breach of fiduciary duty;

i.    no fiduciary duty;

j.    no conspiracy;

k.    no damages;

l.    excessive attorneys' fees;

m.    no demand;

n.    no presentment;

o.    failure of conditions precedent;

p.    no improper use; and,

q.    no intent - inadvertent or unintentional possession of materials.

## **PRAYER**

Wherefore, premises considered, Ludowig prays this Court to grant judgment in his favor against Plaintiff with regard to the allegations and claims contained in the Second Amended Complaint; that Plaintiff take nothing for damages from Ludowig; that Ludowig be awarded his costs, including reasonable attorney's fees; and for such other and further relief as this Court deems just and proper.

## COUNTERCLAIMS

## INTRODUCTION

1.      Empower Pharmacy, who purports to be our "nation's largest, most advanced 503A compounding pharmacy and 503B outsourcing facility," advertises that its "mission is to provide access to the best compound medication solutions for patients, practitioners, and pharmacies."[6]  In reality, however, Mr. Ludwig—Empower's former general ███████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████

█     ███████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████

3.      Empower does this for the sake of padding its profit margin, adding to its market share, and scaling its business to add to the weight-loss medication fad that created an unprecedented boon to the compounding pharmaceutical industry.

---

[6] Empower Pharmacy, *About Us*, https://www.empowerpharmacy.com/ (last visited April 11, 2025).



6.      Accordingly, Mr. Ludowig files these counterclaims to recover damages for Empower's breach of the ███████████████████████████████████████ ██████████ and to recover damages caused by Empower's intentional infliction of emotional distress ███████████████████████████████████████████

### JURISDICTION AND VENUE

7.      The Court has subject matter jurisdiction over all the claims alleged herein because they are part of the same case and controversy and derive from a common nucleus of operative facts as the Plaintiff's federal question claims in this case. *See* ECF No. 92 (alleging causes of action under a federal question pursuant to 28 U.S.C. § 1331).

8.      The Court has personal jurisdiction over Plaintiff/Counter-Claim Defendant Empower.

9.      Venue is proper in this forum under 28 U.S.C. 1391(b)(1)-(2) because a substantial part of the acts giving rise to the claims occurred in Houston, Texas.

## PARTIES

10.      Empower Clinic Services, L.L.C. d/b/a Empower Pharmacy ("Empower" or "Empower Pharmacy") is a Texas limited liability company with its principal place of business in Texas. Empower Pharmacy's headquarters is located at 7601 North Cam Houston Parkway, Suite 100, Houston, Texas 77064.

11.      Matthew Ludowig is an individual residing in Cypress, Texas.

## FACTUAL BACKGROUND

**A.      Empower Pharmacy Overview**

██   ████████████████████████████████████
██████████████████████████████████

13.      Empower Pharmacy is a 503A compounding pharmacy and 503B outsourcing facility—████████████████████████████████████
████████████████████████████████████
██████████████████

██   ████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
██████████████████

██   ████████████████████████████
████████████████████████████████████

---

[7] *E.g.*, Empower Pharmacy, *What is a Compounding Pharmacy? 503A vs 503B*, https://www.empowerpharmacy.com/compound-medication/news/what-is-a-compounding-pharmacy/ (last visited April 15, 2025).

████████████████████████████████████████████████

████████████████████████████

16.     In addition to selling GLP-1 weight loss drugs, Empower dispenses medically necessary drugs, like acne or rosacea creams.

17.     Although Empower Pharmacy does not directly receive reimbursement from Medicare, Tricare, or Medicaid programs, Empower dispenses compounded medications to patients and practitioners and distributes compounded medications to physicians and pharmacies, causing those individuals or entities in some instances to seek reimbursement from Medicare, Medicaid, or Tricare for the cost of the medications.[8]

18.     Empower also accepts flexible spending account (FSA) and health savings account (HSA) payments for its products.[9]

19.     As shown below, however, upon information and belief, Empower Pharmacy

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████ Indeed, only weeks ago, Eli Lilly sued Empower for its blatantly false and misleading advertisements throughout its website.[10] Similarly, Empower has

---

[8] *E.g.,* DOJ, Ageless Men's Health, LLC to Pay $1.6 Million to the Government for Overbilling Medicare and Tricare, https://www.justice.gov/usao-wdtn/pr/ageless-men-s-health-llc-pay-16-million-government-overbilling-medicare-and-tricare (last visited April 15, 2025).

[9]     Empower,     *FAQs*,     https://www.empowerpharmacy.com/who-we-serve/faqs/, https://www.empowerpharmacy.com/who-we-serve/faqs/ (last visited April 15, 2025)

[10] *See Eli Lilly and Company v. Empower Clinic Services, LLC d/b/a Empower Pharmacy, Empower Clinic Services New Jersey LLC d/b/a Empower Pharma*, No. 2:25-cv-02183 (D.N.J. Apr. 1, 2025).

filed and maintained several lawsuits against former employees and competitors for the express



**B.** **Compounding Pharmaceutical Companies' History of Creating Public Health Outbreaks Leads to New Legislation**

21.     Compounding Pharmacies like Empower have a tortured history of creating public

health epidemics.

22.     By way of example, in 2007, three people died from multiple organ failure after a

Texas compounding pharmacy sold extremely potent colchine that was as much as 640 percent

labeled strength.[11]

23.     In 2011, a Texas compounding pharmacy associated with contaminated total

parenteral nutrition products was linked to 19 cases of serratis marcescens bacterial infections,

which caused nine deaths.[12]

24.     In 2012, one of the worst public health outbreaks connected to the compounding

pharmaceutical industry occurred. A fungal meningitis outbreak associated with a New England

compounding pharmacy caused hundreds of infections and over one-hundred deaths.

---

[11] DOJ, *Dallas Compounding Pharmacy Owner Pleads Guilt in Connection with Misbranded Drug Shipment*, https://www.justice.gov/archives/opa/pr/dallas-compounding-pharmacy-owner-pleads-guilty-connection-misbranded-drug-shipment (last visited April 15, 2025).

[12] National Institute of Health, *Outbreak of Serratia Marcescens Bloodstream Infections in Patients Receiving Parenteral Nutrition Prepared by a Compounding Pharmacy*, https://pubmed.ncbi.nlm.nih.gov/24729502/ (last visited April 15, 2015).

25.    This 2012 outbreak triggered Congress to enact legislation, which Empower describes as "new standards," requiring compounding pharmacies to track and report the supply chain of their ingredients, as well as seeking to lower drug prices and avoid drug shortages.[13]



26.    Empower represents that it sources all medications and active pharmaceutical ingredients (API) from FDA-registered suppliers and manufacturers.[14]

Where are your ingredients sourced from?

We source all our medications and active pharmaceutical ingredients from FDA-registered suppliers and manufacturers.

---

[13] Empower Pharmacy, *Who We Are*, https://www.empowerpharmacy.com/about/our-story/ (last visited April 15, 2025).

[14]    Empower    Pharmacy,    *FAQs*,    https://www.empowerpharmacy.com/who-we-serve/faqs/?faq=practitioners (last visited April 15, 2025).

27.    Empower Pharmacy's website purports that Empower "adheres to stringent regulations" set by State Boards of Pharmacy, the FDA, and USP, is accredited by the Pharmacy Compounding Accreditation Board (PCAB), FDA registered, and cGMP compliant; and that Empower prioritizes "safety and quality in all its practices."[15] It even claims that it conducts voluntary quality testing and "ensures that each product meets high quality standards."[16]



■ ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████

[15]    Empower    Pharmacy,    Safety    and    Quality,    available    at: https://www.empowerpharmacy.com/compound-medication/news/empower-pharmacy-compounding-personalized-healthcare/#:~:text=Safety%20and%20Quality,product%20meets%20high%20quality%20standards. (last viewed April 10, 2025).

[16] *Id.*



### D.    Empower Hires Ludowig, a Former Assistant District Attorney, as Empower's Sole In-House Attorney

33.    Empower hired Mr. Ludowig on August 30, 2020 as its General Counsel.

34.    At the time, Empower Pharmacy represented that it was the "nation's largest human drug compounding pharmacy, licensed in all 50 states, had broken ground on the "largest and most advanced 503A pharmacy in the nation," and was operating a 503B outsourcing facility at current Good Manufacturing (cGMP) standards.



35.    Mr. Ludowig, formerly an Assistant District Attorney in Bexar County, Texas, had no prior transactional, healthcare, regulatory, or compliance experience in the pharmaceutical industry.

36.    Yet, at the time, Empower Pharmacy was navigating COVID's impact on its operations, ████████████████████████████████████████████████████████ ████████████████████████████████ seeking to expand nationally and internationally, restructuring the company's management, and searching for outside sources of capital.

37.    Simply put, by any reasonable measure, Mr. Ludowig had a significant learning curve to function as the sole in-house attorney responsible for all of the "nation's largest human drug compounding pharmacy's" legal needs.







---

[20] *See In the Matter of: Empower Clinic Svcs, LLC*, Cal. Agency Case No. 7117 (commenced May 18, 2022) (available online at https://www.pharmacy.ca.gov/enforcement/fy2021/ac207117.)

[21] Empower Pharmacy, *Our Story*, https://www.empowerpharmacy.com/about/our-story/ (last visited April 16, 2025).

50.     This growth was due in large part to the FDA placing GLP-1 weight loss drugs, like Mounjaro, Wegovy and Ozempic, on the drug shortage list—*i.e.*, ███████████████

████████████████████████████████████ ██

███ ████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████

███ ████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████

███ ████████████████████████████████████████

████████████████████████████████████

███ ████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████

███ ████████████████████████████████████████

██████████████████████████████████████

_____

█ ████████████████████████████████████████████

███████████████████████████████████







■    ██████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████████

■    ██████████████████████████████

██████████████████████████████████████

████████████████████

## I.    Empower Pharmacy Files this Lawsuit

80.    In disregard for ████████████████████████

████████████████, Empower amended its Complaint to add Mr. Ludowig as a defendant in

December 2023.

81.    Empower's lawsuit against Mr. Ludowig cites to contracts that ████████████

██████████████████████████████████████

It also relies substantially on matters related to Ludowig's Employment with Empower and

involves facts that occurred on or prior the date Ludowig signed the Release.

82.    Absent from Empower's pleadings is any reference to ████████████████

██████████████████████████

■    ██████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████

**J.**    ████████████████████████████████████████

84.    After losing the preliminary injunction hearing and drawing out discovery on all clearly released claims for over a year, Empower decided to take a new tack to attack Mr. Ludowig.

85.    Upon information and belief, Empower coordinated a media campaign to disparage Mr. Ludowig.

86.    On January 30, 2025, Empower filed a SEALED Motion for Sanctions, alleging Mr. Ludowig destroyed evidence.

87.    To be clear, the filing of the sealed motion is not the basis for this counterclaim, but rather what came next—Empower leaking portions of the SEALED motion to the media in violation of this Court's Protective Order for the purpose of disparaging Ludowig and in violation of the Release's non-disparagement term.

88.    That very day, the Texas Lawyer magazine published an article that directly quotes and discusses at length Empower's SEALED MOTION for sanctions.

89.    The article titled "General Counsel Accused of Destroying Evidence," which, upon information and belief, was the result of Empower communicating to the Texas Lawyer Empower's allegations of Mr. Ludowig purportedly deleting electronic files and destroying computer equipment. In fact, it was not only the allegations that were reported, but also the Texas Lawyer directly "quoted" from the SEALED Motion itself.

90.    Other articles also highlight that Empower has coordinated a media campaign to disparage Ludowig.

91.    For example, one article lists a public relations firm as the media "contact" for articles discussing Empower's allegations against Mr. Ludowig.

92.     This PR firm, which, upon information and belief, Empower hired to disparage

Mr. Ludowig, makes no secret of its prejudice-imposing intent and tactics, as it openly boasts:

> Fortune magazine has called our founder and Chairman "***one of the most
> accomplished practitioners of the dark arts of public relations***." The
> Financial Times called him, "***The spin doctor's spin doctor***. The Editor of
> Los Angeles Magazine said, "Sitrick is a pure product of the 24-hour news
> cycle, of a culture dominated and defined by newspapers, magazines, TV,
> radio, the Internet of the never-ending noise streaming into our lives.
> Beyond his aggressiveness, beyond his toughness, ***what distinguishes
> Sitrick is his ability to play the media to his client's advantage***."

https://www.sitrick.com/ (last accessed April 4, 2025) (emphasis added).

93.     Upon information and belief, Empower is also paying for these disparaging articles

to remain at the top of Google searches and to populate on broader google searches about

Empower and Ludowig for the purpose of disparaging Mr. Ludowig.

94.     In sum, Empower has and continues to ███████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ by providing

the media and its public relations firm with a copy of its own sealed motion ███████████

████████████████████████████████████████████████████████████████████

███████████████████████████. *See* ECF No. 105. It has also gone so far as

to hire others, such as Sitrick and Company, to do the same on its behalf.

95.     This behavior breaches Empower's ██████████████████████████████

and also the Protective Order entered by this Court.  (ECF 19.)



██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████

██    ██████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████.

98.    Accordingly, Mr. Ludowig files these counterclaims to (1) recover damages resulting from Empower's breach of ███████████████████, (2) recover damages from Empower for the severe emotional distress caused by its extreme and outrageous conduct, and (3) ████████████████████████████████████████████████████

████████████████

### COUNTERCLAIM I:
### BREACH OF CONTRACT
**(Breach of Release)**

99.    Defendant/Counter-Claim Plaintiff Ludowig realleges and incorporates by reference the allegations contained in paragraphs 1 through 98 above of the Counterclaim, as if fully set forth herein.

100.    On September 1, 2023, Empower Pharmacy and Ludowig ████████████████

██████████████████████████████████████████████████

██████████████████████████ and which is made a part hereof and incorporated herein by reference.

101.    In exchange for Ludowig agreeing to ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████

102.    Mr. Ludowig performed and fulfilled his obligations under the Contract.

103.    On or about December 16, 2023, and again in 2024 and early 2025, Plaintiff Empower Pharmacy materially and substantially breached the Contract.

104.    Specifically, Plaintiff Empower Pharmacy initiated the instant case against Ludowig alleging claims it purports to have by reason of his employment and/or the cessation of his employment.  Empower also alleges claims based upon conduct that allegedly occurred during Ludowig's employment █████████████████████████████████

████████████

██    ██████████████████████████████████

███████████████████████, excused Mr. Ludowig's continued performance under the Contract. ███████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

violation of the Contract.

106.     As a result of Empower's breach, Mr. Ludowig has suffered damages in excess of $250,000.00, including suffering severe emotional distress such as anxiety, outrage, sleeplessness, mental distraction, loss of appetite, frustration, anger, and other associated symptoms. He has suffered economic damages in the form of lost business opportunities, clients, and wages in an amount to be proven at trial. He was also forced to leave his employer, Revive, and lost substantial income therefrom. He has also had to deal with anxiety related to his service in the military and potential impact on his service as a lawyer. He has also been forced to retain counsel and defend against these frivolous claims.

107.     Accordingly, Mr. Ludowig is entitled to recover his damages, and costs, including reasonable attorneys' fees.

## COUNTERCLAIM II:
### BREACH OF CONTRACT
**(Breach of Non-Defamation and Non-Disparagement Agreements)**

108.     Defendant/Counter-Claim Plaintiff Ludowig realleges and incorporates by references the allegations contained in paragraphs 1 through 107 above of the Counterclaim, as if fully set forth herein.

109.     ████████████████████████████████████████
████████████████████████████

110.     In exchange for Ludowig ████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████

111.     Ludowig performed and fulfilled his obligations under the Contract.

45

112.    At some point in late 2024 and early 2025, Empower Pharmacy breached the

contract by ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████ and agents of Sitrick and Company, the media, and eventually the public.

113.    ████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████

114.    As a result of Empower's breach, Mr. Ludowig has suffered damages in excess of

$250,000.00, including suffering severe emotional distress such as anxiety, outrage, sleeplessness,

mental distraction, loss of appetite, frustration, anger, and other associated symptoms. He has

suffered economic damages in the form of lost business opportunities, clients, and wages in an

amount to be proven at trial. He was also forced to leave his employer, Revive and lost substantial

income therefrom. He has also had to suffer severe anxiety related to his service in the military

and potential impact on his service as a lawyer. He has also been forced to retain counsel and

defend against these frivolous claims.

115.    Accordingly, Mr. Ludowig is entitled to recover his damages, and costs, including

reasonable attorneys' fees.

## <u>COUNTERCLAIM III:</u>
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

116.    Defendant/Counter-Claim Plaintiff Ludowig realleges and incorporates by references the allegations contained in paragraphs 1 through 115 above, as it fully set forth herein.

117.    Empower Pharmacy's conduct in publishing statements to multiple media outlets alleging that Mr. Ludowig knowingly destroyed evidence was reckless and intentional in that Empower Pharmacy intended the consequences of its act and intended such statements to cause Ludowig emotional distress.

118.    Similarly, ███████████████████████████████

███████████████████████████████████████████████

███  ███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

███  ███████████████████████████████████████

███████████████████████████████████████████

███  ███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████

███  ███████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████

123.    Mr. Ludowig is a lawyer and officer in the United States Air Force, two professions demanding the highest moral character, and Empower knew this. They hired a firm to target Mr. Ludowig in a manner designed to threaten both aspects of his livelihood and to do it in a manner that was harmful, impactful, and designed to cause severe and emotional distress and also sway the media and potential jury pool against him.

124.    

126.    Empower Pharmacy's conduct proximately caused severe emotional distress to Mr. Ludowig and Mr. Ludowig's mental anguish and severe emotional distress was the foreseeable result of Empower Pharmacy hiring a professional communications firm to publish news articles alleging that Mr. Ludowig destroyed evidence of his own alleged wrongdoing.

127.    Upon information and belief, Empower went so far as to provide sealed court records to news reporters, in violation of the Court's own protective order, for the purpose of causing emotional harm to and discrediting Mr. Ludowig. Never once has Empower disclosed that Mr. Ludowig was **<u>not</u>** "caught" destroying evidence, but instead that Mr. Ludowig voluntarily explained that the evidence at issue was discarded at a time when Mr. Ludowig was under no

suspicion for any illicit conduct and Empower had released him from any claims of wrongdoing. It was also after Mr. Ludowig had already departed Empower and uploaded any of Empower's information on the hard drive to Empower which was accessible. In other words, not only did Mr. Ludowig not have anything to hide or anticipate that a lawsuit would require him to preserve evidence but Empower also had no proper means to bring any of this information into the public domain due to the Release—but did so anyway. And in doing so, they mischaracterized the situation to make Ludowig appear to be a villain, which he is not, rather than the Air Force officer and attorney cleared by the Board of Discipline that he actually is.

128.    The emotional distress that Mr. Ludowig suffered was so severe and extreme that it could not properly be remedied under any other cause of action. Mr. Ludowig not only suffered his own severe distress, but additional distress as he observed the impact that the conduct had on Mr. Ludowig's wife, children, and other family members. This too was Empower's intent—to cause as much emotional distress as possible by any means.

129.    Empower Pharmacy's wrongful conduct caused the following damages: general damages arising from past pain and suffering and past mental anguish and special damages arising from a loss of past earning capacity.

130.    As a result of Empower's breach, Mr. Ludowig has suffered damages in excess of $250,000.00, including suffering severe emotional distress such as anxiety, outrage, sleeplessness, mental distraction, loss of appetite, frustration, anger, and other associated symptoms. He has suffered economic damages in the form of lost business opportunities, clients, and wages in an amount to be proven at trial. He was also forced to leave his employer, Revive, and lost substantial income therefrom. He has also suffered extreme anxiety related to his service in the military and

potential impact on his service as a lawyer. He has also been forced to retain counsel and defend against these frivolous claims.

131.    Plaintiff seeks damages within the jurisdictional limits of this Court.

132.    Plaintiff's injury resulted from Empower's malice, which entitles Plaintiff to exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a)(2).

**COUNTERCLAIM IV:**
**RETALIATION AND WRONGFUL DISCHARGE UNDER *Sabine Pilot*[23]**

133.    Defendant/Counter-Claim Plaintiff Ludowig realleges and incorporates by references the allegations contained in paragraphs 1 through 132 above, as it fully set forth herein.

---

[23] *See Sabine Pilot Service, Inc. v. Hauck*, 687 S.W. 2d 733 (Tex. 1985).



████████████████████████████ Through Sean Noorian, Empower filed a baseless bar complaint designed to threaten Mr. Ludowig's career. This lawsuit is also an example of knowingly unlawful behavior in light of the Release which Empower provided to Mr. Ludowig, promising that it would Release him from any possible claim related to his employment at Empower or based upon conduct which occurred prior to him signing the Release.

144.    Empower has gone to great lengths to interfere with Ludowig's future employment, including causing him to lose employment with Revive and to suffer fear for his security clearance and position within the United States Air Force. These actions went well beyond a simple demotion or wrongful termination, but were malicious and intended to cause Mr. Ludowig serious harm far beyond the termination.

145.    This calculated, malicious, and intentional harassment and conduct by Empower entitles Mr. Ludowig to recovery of punitive damages.

146.    Mr. Ludowig suffered both economic damages in the form of lost employment opportunities with Revive and others, lost wages, and suffered severe emotional distress as a result of Empower's actions, including anxiety, worry, sleeplessness, frustration, despair, worry about the well-being of his family and livelihood, fear about the future of his license to practice law and serve in the military, along with the costs associated with defending against this lawsuit and all of Empower's other harassing behaviors.

147.    Mr. Ludowig seeks recovery of all damages available to him as a result of Empower's wrongful termination, including compensatory damages, exemplary damages, punitive damages, and attorney's fees and litigation costs.

## PRAYER FOR RELIEF

WHEREFORE, Defendant/Counterclaim Plaintiff Matthew Ludowig prays for judgment as follows:

1.      That Plaintiff take nothing from Mr. Ludowig by reason of its Second Amended Complaint and that judgment be entered in favor of Mr. Ludowig;

2.      For dismissal of Plaintiff's claims with prejudice;

3.      That the Court award Mr. Ludowig damages, costs, and reasonable attorneys' fees caused by its breaches of contract;

4.      The Court award Mr. Ludowig all damages available to him, including actual, exemplary and punitive damages, attorneys' fees and costs for his other causes of action; and

5.      For such other relief as the Court deems just and proper.

Dated:  April 18, 2025.

*/s/ Aaron A. Wagner*
Aaron A. Wagner
Texas Bar No. 24037655
KABAT CHAPMAN & OZMER LLP
171 17th Street NW, Suite 1550
Atlanta, Georgia 30363
Telephone: (404) 400-7300
Facsimile: (404) 400-7333
awagner@kcozlaw.com

*Attorneys for Defendant Matthew Ludowig*

## <u>CERTIFICATE OF SERVICE</u>

This certifies that on April 18, 2025, a true and correct copy of the foregoing **DEFENDANT MATTHEW LUDOWIG'S AMENDED ANSWER TO SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES AND TO ASSERT COUNTERCLAIMS** was forwarded to all counsel of record pursuant to the Federal Rules of Civil Procedure.

Dated:  April 18, 2025

*/s/ Aaron A. Wagner*
Aaron A. Wagner